ORSUS GATE LLP
Denis Shmidt (Bar No. 267987)
Nabil Bisharat (Bar No. 270305)

16 N. Marengo Ave., Suite 316
Pasadena, CA 91101
Telephone: (415) 326-3558
Email: DShmidt@OrsusGate.com
Email: NBisharat@OrsusGate.com

*Attorneys for Yida Gao, Sand Hill Advisors
PR LLC, Shima Capital Management LLC,
and Shima Capital GP LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(Western Division – Los Angeles)

| | |
|---|---|
| ADAM STRUCK, individually and doing business as STRUCK CAPITAL, and STRUCK CAPITAL MANAGEMENT LLC, a Delaware Limited Liability Company,<br><br>        Plaintiffs,<br><br>v.<br><br>YIDA GAO, an individual, SAND HILL ADVISORS PR LLC, a Puerto Rican limited liability company, SHIMA CAPITAL MANAGEMENT LLC, a Puerto Rican limited liability company, SHIMA CAPITAL GP LLC, a Puerto Rican limited liability company, and Does 1-50,<br><br>        Defendants. | Case No. 2:22-cv-02415-FMO-MAA<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR STAY THE PROCEEDINGS PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**<br><br>Complaint Filed:  April 11, 2022<br><br>Hearing Date:  June 30, 2022<br>Hearing Time: 10:00 a.m.<br>Courtroom:     6D<br><br>**[FED CIV. PROC. R. 12(B)(1) & (6)]**<br><br>Hon. Judge Fernando M. Olguin |

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on June 30, 2022, at 10 a.m., or as soon thereafter as the matter may be heard, before the Honorable Fernando M. Olguin, in Courtroom 6D of the United States Courthouse for the Central District of California, Western Division, 350 W. 1st Street, 6th Floor, Los Angeles, California, Defendants Yida Gao, Sand Hill Advisors PR LLC, Shima Capital Management LLC, and Shima Capital GP LLC will and hereby do move the Court to dismiss the Complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6), and to stay the proceedings pending resolution of the concurrent action under state law pursuant to the court's exercise of its own discretion.

This motion is made following extensive meet and confer efforts, including a teleconference between counsel pursuant to Local Rule 7-3, which took place on May 17, 2022. [Shmidt Decl. ¶ 23].

As set forth in the accompanying Memorandum of Points and Authorities, there is good cause for the relief requested. The parties lack complete diversity, accordingly this Court lacks diversity jurisdiction over the state law claims raised. Those claims predominate over the single question of federal law raised in the Complaint, accordingly the Court should decline to exercise supplemental jurisdiction over the state law claims. Further, the Complaint was brought during the pendency of extended state court and arbitration proceedings on substantially identical claims against substantially identical parties and demonstrates extraordinary circumstances in which it would be appropriate for the Court to abstain from considering the proceedings pending their resolution in state court. Finally, the Complaint has failed to plead facts that would support a ruling against Sand Hill Advisors PR LLC, Shima Capital Management LLC, and Shima Capital GP LLC and should accordingly be dismissed as against those parties, with

1    prejudice.

2          This Motion is based on this Notice of Motion and Motion; the

3    accompanying Memorandum of Points and Authorities; the Declarations of Mr.

4    Shmidt and Mr. Gao, the pleadings and papers filed in this action, and such further

5    argument and matters as may be offered at the time of the hearing of this Motion.

6

7    Dated:  June 1, 2022                    Respectfully submitted,

8
                                            ORSUS GATE LLP
9                                           Denis Shmidt
                                            Nabil Bisharat
10

11                                   By: /s/ Denis Shmidt

12                                          Denis Shmidt
                                            *Attorneys for Yida Gao, Sand Hill*
13                                          *Advisors PR LLC, Shima Capital*
                                            *Management LLC, and Shima*
14                                          *Capital GP LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# **TABLE OF CONTENTS**

3   **I.**   **INTRODUCTION** ..................................................................................1

4   **II.**   **BACKGROUND** ..................................................................................3

5     **A.**  **The LASC Action and the Arbitration** ...................................3

6     **B.**  **The Claims In the Federal Action Overlap Entirely With the Claims In the LASC Action and the Arbitration** ..................5

7

8     **C.**  **Mr. Struck Has Been Using The Federal Lawsuit As A Publicity Stunt To Harm Mr. Gao Through Extra-Judicial Means** ...................................8

9   **III.**  **ARGUMENT** .....................................................................................9

10     **A.**  **Federal Jurisdiction Over State Claims is Inappropriate** ..........9

       1.   The State Court Claims Lack Complete Diversity................9
11        2.   The State Court Claims Substantially Predominate

12           Over the Federal Question Claim.......................................11

13     **B.**  **Abstention is Appropriate Under The Present Circumstances.** ..............12

       1.   Jurisprudence on Abstention ................................................12
14        2.   Application to This Case ......................................................17

15   **IV.**  **Claims Against The Entity Defendants Should be Dismissed** .................19

16     **A.**  **Courts Are Not Required To Accept Conclusory Allegations** .................19

17     **B.**  **Argument** ..........................................................................20

       1.   The Complaint Fails to Make Any Factual Allegations
18           Specific To The Entity Defendants ......................................20

19        2.   Plaintiffs' Alter-Ego Allegations Are Insufficient ...............22

       3.   California Does Not Allow Outside Reverse Veil Piercing.................23
20   **V.**   **CONCLUSION** ..................................................................................25

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

3
**CASES**

4
*Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir. 1997) .................................11

5
*Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
   988 F.2d 1157 (Fed. Cir. 1993) ..................................................................19

6
*Aetna State Bank v. Altheimer*, 430 F.2d 750 (7th Cir. 1970). ..................................12

7
*Am. Int'l Underwriters (Phillippines), Inc. v. Cont'l Ins. Co.*,
8    848 F.2d 1253, 1258 (9th Cir. 1988). ..........................................................15

9
*Arlington Valley Solar Energy II LLC v. Fluor Enterprises Inc.*,
   No. CV-19-05595-PHX-DLR, 2020 WL 1969534 (D. Ariz. Apr. 24, 2020).......10

10
*Ashcroft v. Iqbal*,
11    556 U.S. 662, 129 S.Ct. 1937 (2009) ...........................................................20

12
*Attwood v. Mendocino Coast Dist. Hosp.*,
13    886 F.2d 241 (9th Cir. 1989) ......................................................................14

14
*Bass v. Bennett*, No. CV201081FMOJEMX,
   2020 WL 4032466 (C.D. Cal. Apr. 10, 2020)...................................................9

15
*Boulder Creek Co. v. Maruko Inc.*,
16    772 F. Supp. 1150 (C.D. Cal. 1991) .............................................................11

17
*Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942)....................................13

18
*Buckley v. Control Data Corp.*, 923 F. 3d 96 (8th Cir. 1991) .....................................9

19
*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) .........................................................................20

20
*Dumas v. Kipp*,
21    90 F.3d 386 (9th Cir. 1996) ...................................................................19, 25

22
*F.D.I.C. v. CoreLogic Valuation Servs., LLC,* No. SA CV 11-0704 DOC,
   2011 WL 5554324 (C.D. Cal. Nov. 14, 2011) ...........................................22, 23

23
*Fadal Machining Centers, LLC v. Mid-Atl. CNC, Inc.*,
24    464 F. App'x 672 (9th Cir. 2012) ................................................................10

25
*Gill v. Shakib (In re Shakib)*, No. 2:13-bk-26638-TD,
   2014 WL 3865232 (Bankr. C.D. Cal. Aug. 6, 2014) ..........................................24

26
*Goodin v. Vendley*, 356 F.Supp. 3d 935 (N.D. Cal. 2018) ............................13, 16, 17

27
*Goodrich v. Briones (In re Schwarzkopf)*,
28    626 F.3d 1032 (9th Cir. 2010) ...............................................................22, 24

*Ileto v. Glock Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ...................................................................20

*In re Mihranian*, No. AP 2:15-AP-01665-BR,
   2017 WL 2775043 (B.A.P. 9th Cir. June 29, 2017)..................................24

*In re Shapow*, 599 B.R. 51 (Bankr. C.D. Cal. 2019) .................................23, 24

*Greiling v. Zahoudanis*, No. CV 08-06467 ODW (ANx),
   2009 WL 700049 (C.D. Cal. Mar. 13, 2009) .........................................24

*Johnson v. Columbia Properties Anchorage, LP*,
   437 F.3d 894 (9th Cir. 2006). .................................................................9, 11

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
   342 U.S. 180 (1952) ................................................................................12

*Klaehn v. Cali Bamboo, LLC*, No. 19CV1498-LAB (KSC),
   2020 WL 3971518 (S.D. Cal. July 13, 2020)............................................9

*Lee v. American Nat. Ins. Co.*, 260 F.3d 997 (9th Cir. 2001)....................................9

*Leek v. Cooper*, 194 Cal. App. 4th 399 (2011);.......................................................23

*McClellan v. Carland*, 217 U.S. 268 (1910).........................................................12

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) .................................................................20

*MH Pillars Ltd. v. Realini*, No. 15-CV-1383-PJH,
   2017 WL 916414 (N.D. Cal. Mar. 8, 2017) .........................................22

*Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*,
   969 F.2d 769 (9th Cir.1992). ................................................................22

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983). ...............................................................................14, 18

*Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989).................................................15

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) .............................................19

*Neitzke v. Williams*,
   490 U.S. 319, 109 S. Ct. 1827 (1989) ...................................................19

*Postal Instant Press, Inc. v. Kaswa Corp.*,
   162 Cal. App. 4th 1510 (2008).........................................................23, 24

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984) .............................................................19

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .............................................................11

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
  56 F.Supp.3d 1121 (C.D. Cal. 2014) ....................................................17

*Soward v. The & Tr.,* No. C-07-3894 MMC,
  2007 WL 2947425 (N.D. Cal. Oct. 9, 2007) .......................................11

*Telesaurus VPC, LLC v. Power*,
  623 F.3d 998 (9th Cir. 2010) ..............................................................19

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)...................22

*Whalen v. Carter*, 9554 F.2d 1087 (5th Cir. 1992)...................................9

*Will v. Calvert Fire Ins. Co.*, 437 U.S. 655 (1978)..................................13

*Wise v. DLA Piper LLP*, 220 Cal. App. 4th 1180 (2013) .........................24

*Zafer v. Spengler*, No. 4:20-CV-00197-DCN,
  2020 WL 5549151 (D. Idaho Sept. 15, 2020) ....................................10

**STATUTES**

28 U.S.C. § 1331 .......................................................................................12

28 U.S.C. § 1332 .........................................................................................9

28 U.S.C. § 1367.....................................................................................9, 11

42 U.S.C. § 1983 .......................................................................................14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This is the third judicial body being asked to review the exact same facts and make the exact same determinations.  At heart, this is a dispute between Adam Struck and Yida Gao related to the ownership of Struck Capital as well as multiple organizations that Mr. Struck and Mr. Gao co-founded as 50/50 partners.  The dispute came to a head in early 2021 when Mr. Struck—a licensed attorney— revealed that because he had setup the legal structures in a way to benefit himself he was now disavowing Mr. Gao's involvement in their joint ventures.  In response, in March 2021, Mr. Gao filed a lawsuit in the Los Angeles Superior Court against Mr. Struck, Struck Capital Management LLC (the plaintiffs in this case), as well as numerous of the companies they co-founded (the "LASC Action").  In May 2021, Mr. Struck filed a cross-complaint in the LASC Action against Mr. Gao, Sand Hill Advisors LLC, Shima Capital LLC, Shima Capital Management LLC, and Shima Capital GP LLC—alleging many of the same causes of action he alleges in this case and relying on the exact same underlying facts.

In July 2021, Mr. Struck filed a motion to stay the LASC Action and compel arbitration.  Mr. Gao opposed and, in August 2021, the LASC Court split the case into two, ordering a subset of the dispute into Arbitration and staying the remaining case. The Arbitration commenced in late August 2021 with Struck and Gao filing demands and counterclaims in September 2021.  However, by January 2022, Mr. Struck apparently changed his mind and now argued that the scope of the arbitration (which he himself sought) should be further limited.  Briefing ensued and, in late January 26, 2022, the Arbitrator found against Mr. Struck's position, refusing to limit the arbitration beyond the LASC Court Order.  Within ten days of the Arbitrator's order, Mr. Struck fired his attorney and replaced him with his present counsel.  The Arbitration has been continuing steadily since then with discovery having been exchanged and with a hearing date set for July 2023.

In April 2022, without the courtesy of notifying counsel, Mr. Struck filed the present lawsuit, alleging the same claims based on exactly the same set of facts that have been in dispute and under judicial and arbitral review for the past year.  On the same date the present lawsuit was filed, an article came out, quoting heavily from the lawsuit and making racist, solacious, unfair, and completely untrue accusations, going so far as to connect Mr. Gao to "Chinese espionage".  Based on the fact that the article was published on the same date of the federal lawsuit filing, and that Mr. Struck's counsel was quoted in it, it is clear that the Struck team worked together with the article's author prior to filing.

Not being satisfied with the existence of the article, Mr. Struck spent months contacting anyone and everyone associated with Mr. Gao, including his investors and employees, sending them unsolicited copies of this lawsuit and the article in what is undoubtedly an attempt to interfere with Mr. Gao's livelihood and an improper extrajudicial attempt to force Mr. Gao into a disadvantageous settlement of a legitimate grievance.  As such, the present lawsuit is nothing more than an attempt to forum shop after having received unfavorable rulings in both the LASC Action and the Arbitration and a publicity stunt intended to harm Mr. Gao.  Neither is proper and the Court should exercise its authority to either stay the case pending the resolution of the Arbitration and the LASC Action, or dismiss it outright.[1]

Additionally, Plaintiffs have failed in their burden to establish diversity jurisdiction and will ultimately be unable to establish said jurisdiction because Mr. Gao is a member of Struck Capital Management LLC and Shima Capital GP LLC is a resident of California.  Finally, allegations against Defendants Sand Hill Advisors PR LLC, Shima Capital Management LLC, and Shima Capital GP LLC (the "Entity Defendants") must be dismissed for failure to state a claim: as there are absolutely no factual allegations leveled directly against them and the single-sentence alter-ego

---

[1] Depending on the outcome of this Motion, Defendants reserve the right to move to compel portions of this case to arbitration.

claim is insufficient (even at this stage of the pleadings) and cannot be cured because outside reverse alter ego is not allowed.  As such, even if the entire case is not stayed/dismissed, the Entity Defendants should at the very least be dismissed.

## II.     BACKGROUND

### A.     The LASC Action and the Arbitration

On March 25, 2021, Mr. Gao filed the LASC Action against Mr. Struck and multiple affiliated entities, including Struck Capital Management LLC.  [Shmidt Decl. Ex. L].  The LASC complaint explained that Mr. Gao and Mr. Struck had formed a 50/50 partnership beginning in 2015 with the goal of raising funds and investing them in various enterprises, including early-stage technology companies.  [*Id.* Ex. L ¶¶ 28-80].  Struck Capital Management LLC was the main entity through which Mr. Gao and Mr. Struck organized their numerous businesses for purposes of collecting and distributing to the partners the management fees paid by the various investment funds and the carried interest payments made from special purpose vehicles structured to invest in technology companies.  [*Id.* Ex. L ¶ 16].  Mr. Struck, a licensed attorney, was responsible for ensuring that the legal formalities for the partnership would be observed, but instead of doing so, he placed everything in his own name and subsequently took the position that a partnership never existed.  [*Id.* Ex. L ¶¶ 5-8].  Mr. Gao, trusting in the promises made to him by Mr. Struck, quit his job, left his MBA program at Stanford, and moved to Los Angeles to build a presence in the Southern California market.  [*Id.* Ex. L ¶ 6].  Mr. Gao was held out to be a partner of Struck Capital to members of the public and paid for partnership expenses, including taxes.  [Gao Decl. ¶¶ 5-15, Exs. A-G].  The relationship faltered when Mr. Struck unilaterally reneged on his partnership obligations.

In 2019, Mr. Struck began to withhold funds owed to Mr. Gao and to lock him out of participation in their joint funds.  He then purported to "terminate" Mr. Gao from their joint venture.  [Shmidt Decl. Ex. L ¶ 9].  Mr. Gao brought the LASC Action to establish his right to extensive management fees and carried interest

associated with the venture, as well as a judicial determination of his rights as a partner.  [*Id.* ¶ 12].

Mr. Struck answered Mr. Gao's Complaint on May 28, 2021 and cross-complained alleging that Mr. Gao had embezzled funds and stole trade secrets. [Shmidt Decl. ¶ 4 Ex. M].  Mr. Struck's cross-complaint named four entities, Sand Hill Advisors LLC, Shima Capital LLC, Shima Capital Management LLC, and Shima Capital GP LLC as defendants.  [*Id.*]  The factual allegations in Mr. Struck's cross-complaint are nearly identical to the allegations in the Federal Action. [*Compare* Shmidt Decl. Ex. M *with* Complaint (Dkt. 1)].  In essence, Mr. Struck alleges that Mr. Gao stole information from the Struck Capital and then used the information to his own benefit.  [*Compare* Complaint (Dkt. 1) ¶¶ 57-60 *with* Shmidt Decl. Ex. L ¶¶ 70-81, 104-109].  At the same time as filing his cross-complaint, Mr. Struck also served extensive discovery requests and sent multiple subpoenas to third parties.  [Shmidt Decl. ¶ 5].

Then, after receiving verified interrogatory responses and documents from third parties, in July of 2021, Mr. Struck filed a motion to compel arbitration in the LASC Action.  [Shmidt Decl. ¶¶ 6-7, Ex. N].  One of the only entities which actually acknowledged Mr. Gao's ownership (although incorrectly so), was the partners' blockchain fund known as Divergence Digital Currency ("DDC").  [*Id.* Ex. M ¶¶ 38-39]. The DDC Operating Agreements contain arbitration provisions and Mr. Struck relied on those provision to attempt to move the entire LASC Action into arbitration. [*Id.* Exhibit N].  Mr. Gao opposed [*id.* Ex. O] and the LASC court concluded that the DDC dispute only covered a small portion of the overall dispute and that the only parties bound by the arbitration provision were Mr. Gao, Mr. Struck, and the two DDC entities.  [*Id.* Decl. Ex. P].  The LASC court then decided that the most appropriate approach would be to order arbitration among the parties who had agreed to arbitrate and stay the case pending the outcome of the arbitration proceedings.  [*Id.*].

Mr. Gao and Mr. Struck then entered arbitration proceedings, pursuant to Mr. Struck's desires.  Arbitration commenced on August 31, 2021.  [Shmidt Decl. ¶ 10]. The Case was assigned to former Federal District Court Judge James Ware.  [*Id.*]. Once in arbitration, Mr. Struck apparently determined that court proceedings would have been preferable, and took the position that the arbitration did not cover claims raised by or against the DDC entities.  [*Id.* ¶ 12, Ex. R].  Mr. Gao again opposed [*id.* Ex. S] and in late January 2022 the Arbitrator (Judge Ware) ruled against Mr. Struck, concluding that the "broadly worded arbitration provisions" covered claims by members against the DDC Entities and claims by the DDC Entities against members.  [*Id.* ¶ 13, Ex. T].  Discovery has now commenced in the Arbitration, a protective order has been entered, the parties have exchanged requests, responded to those requests, exchanged thousands of pages of documents, and the Arbitrator has scheduled an arbitration hearing.  [Shmidt Decl. ¶ 15].

## B.     The Claims In the Federal Action Overlap Entirely With the Claims In the LASC Action and the Arbitration

Both the claims—as well as the allegations underlying those claims—brought by Mr. Struck in this case are essentially identical to claims and allegations he brought in the LASC cross-complaint and in the Arbitration counterclaims. [Shmidt Decl. Ex. M, (LASC); Exhibit U (Arbitration)].

Specifically, the Complaint in this action alleges six causes of action, including: trade secret misappropriation under California law (claim 2, unfair competition (claim 3), conversion (claim 4), theft by false pretenses (claim 5) and constructive trust (claim 6).  [Complaint (Dkt. 1) at pg. 1].  Mr. Struck's LASC Cross-Complaint alleges twelve causes of action, the same five causes of action listed in the federal Complaint: trade secret misappropriation (claim 1), unfair competition (claim 4), conversion (claim 8), theft by false pretenses (claim 9) and constructive trust (claim 12).  [Shmidt Decl. Ex. M at pg. 1].  Mr. Struck's Arbitration counterdemand alleges fourteen causes of action, and also includes the

exact same five causes of action as in the federal Complaint: trade secret misappropriation (claim 8), unfair competition (claim 13), conversion (claim 5), theft by false pretenses (claim 10) and constructive trust (claim 7).  [*Id.* Ex. U at pg. 1].

The only "new" claim in the federal Complaint is one for trade secret misappropriation under Federal law.  However, it is based entirely on the same set of facts as Mr. Struck's Trade Secrets claims under California law.  [*Compare* Complaint (Dkt. 1) ¶¶ 68-73 *with* ¶¶ 77-78].  The facts underlying both claims are also identical to the facts underlying Mr. Struck's Trade Secret claims in the LASC Action and in the Arbitration.  [*See* Shmidt Decl. Ex. M (LASC) ¶¶ 111-114; Ex. U (Arbitration) ¶¶ 130-132].  All four trade secret claims stem entirely from a download from "Struck Capital's CRM and deal management databases" which allegedly occurred on February 16, 2021.  [*See* Complaint (Dkt. 1) ¶ 68, 77; Shmidt Decl. Ex. M (LASC) ¶ 111, Ex. U (Arbitration) ¶ 130].

The overall underlying facts of Mr. Struck's complaint are also nearly identical to the facts underlying his counterclaims in the LASC Action and in the arbitration.  Specifically, Mr. Struck claims that he and Mr. Gao were never partners in any joint venture, except for DDC.  [Complaint (Dkt. 1) ¶¶ 31-34; Shmidt Decl. Ex. M (LASC) ¶¶ 16-34, Ex. U (Arbitration) ¶¶ 14-25]. Mr. Struck touts how much Mr. Gao was paid through DDC.  [Complaint (Dkt. 1) ¶¶ 38-40; Shmidt Decl. Ex. M (LASC) ¶¶ 61-63, Ex. U (Arbitration) ¶¶ 52-54].  Mr. Struck alleges that Mr. Gao attempted to embezzle $150,000 from DDC.  [Complaint (Dkt. 1) ¶¶ 41-47; Shmidt Decl. Ex. M (LASC) ¶¶ 64-69, Ex. U (Arbitration) ¶¶ 155-160].  Mr. Struck claims that Mr. Gao improperly used his name to pursue his own deals.  [Complaint (Dkt. 1) ¶¶ 48-54; Shmidt Decl. Ex. M (LASC) ¶¶ 84-89, Ex. U (Arbitration) ¶¶ 68-73].  And finally, that on February 16, 2021 Mr. Gao downloaded Mr. Struck's trade secrets and has been using them ever since.

1  [Complaint (Dkt. 1) ¶¶ 57-60; Shmidt Decl. Ex. M (LASC) ¶¶ 70-81, 104-109, Ex.

2  U (Arbitration) ¶¶ 61-65, 84-88].[2]

3        To make perfectly clear the duplicative nature of this federal action, on May

4  16, 2022—over a month after filing the federal Complaint—Mr. Struck directed

5  discovery in the Arbitration to actions taken by the Shima entities, despite the fact

6  that the Shima entities are not even in the arbitration.  [Shmidt Decl. Ex. V].  While

7  Mr. Gao vigorously denies all of the allegations leveled against him, they are nearly

8  identical in each of the three forums and he should not have to litigate the same

9  issues thrice-over.

10        This dispute is between Mr. Struck and Mr. Gao to determinate the scope of

11  their overall partnership (going back to 2015) and the claims that Mr. Struck has

12  against Mr. Gao with regard to actions allegedly taken by Mr. Gao in February of

13  2021. While Mr. Struck has added Shima and Sand Hill entities to maximize the

14  pressure on Mr. Gao, ultimately his claims come down to Mr. Gao, and Mr. Gao

15  alone.  This action is a duplication of the LASC Action and the Arbitration.

16        Mr. Struck's filing in this Court represents a bad faith effort to forum shop

17  his claims.  Having failed to obtain precisely the relief he sought from the LASC

18  court, and then from the Arbitrator, he has turned to this Court for a third bite at the

19  apple.  Mr. Struck's filing immediately followed a contrary ruling by the LASC

20  court, limiting the arbitration to those issues arising between Mr. Gao and Mr.

21  Struck with regards the DDC Entities, and then a contrary ruling by the Arbitrator,

22  confirming the LASC court's order and including within the arbitration claims

23  made by or against the DDC Entities.

24

25

26

27  [2] The only "new" allegations in the Complaint is a section titled "Gao's Widespread Misconduct"
    in which Mr. Struck makes racist illusions to China and names Mr. Gao's business partners

28  [Complaint (Dkt. 1) ¶ 64-66], without actually relying on any of these allegations in his causes
    of action.  Depending on the outcome of this motion, Mr. Gao reserves the right to move to
    strike these irrelevant, unsupported, and improper allegations.

### C.   <u>Mr. Struck Has Been Using The Federal Lawsuit As A Publicity</u> <u>Stunt To Harm Mr. Gao Through Extra-Judicial Means</u>

Mr. Struck is attempting to use the court of public opinion to apply pressure on Mr. Gao.  Prior to filing the Complaint, Mr. Struck arranged for the publication and dissemination of a libelous account of the parties' dealings, mischaracterizing Mr. Gao in the press and then distributing these lies to Mr. Gao's employees, investors, and associates.  This was done within days of the parties exchanging lengthy potential witness lists in the Arbitration.  [Shmidt Decl. ¶¶ 16-18].

Specifically, Mr. Struck worked with a reporter by the name of Oleg Ivanov, who dutifully regurgitated the claims in Mr. Struck's federal Complaint—without going into the details of any of the previous filings or Mr. Gao's claims to having co-founded numerous companies with Mr. Struck. [Shmidt Decl. ¶¶ 18-21].  Not stopping there, Mr. Ivanov's articles speculated about Mr. Gao's alleged ties to China, identified a publicly traded company with whom Mr. Gao was involved and that has nothing to do with the dispute, and ultimately included the subheading: "The alleged  swindler is linked to China's Communist Party and its investment houses."  [*Id.* ¶ 19].  The fact that the article came out on the exact same day as the Complaint, and that it quotes Struck's counsel, makes it a foregone conclusion that Mr. Struck began working with Mr. Ivanov prior to filing the Complaint—a detail which gives light to the reason for Mr. Struck's inclusion of the more solacious and entirely irrelevant portions of the Complaint.  [*Id.* ¶ 21, Ex. U ¶¶ 64-66].

Not satisfied with the mere existence of the Complaint and article, Mr. Struck has spent the last two months peddling it to anyone remotely associated with Mr. Gao.  Specifically, he has targeted Mr. Gao's investors and employees by sending them unsolicited emails and LinkedIn messages attaching a copy of his federal Complaint and linking to Mr. Ivanov's article. [Gao Decl. ¶ 16, Exs. H-K].

Mr. Struck's efforts to subvert the legal processes and tamper with potential witnesses should not be rewarded, and this Court should decline to exercise

jurisdiction over the state court claims, stay proceedings in this case pending resolution of the state court claims, and/or dismiss the claims altogether for failure to state a claim upon which relief may be granted.

## III.   ARGUMENT

### A.   Federal Jurisdiction Over State Claims is Inappropriate

Mr. Struck's Complaint in this action raises primarily state court claims, including trade secret misappropriation under the California Uniform Trade Secrets Act, unfair competition, conversion, theft by false pretenses, and constructive trust. Jurisdiction of these claims depends on diversity of the parties under 28 U.S.C. § 1332 or on supplemental jurisdiction under 28 U.S.C. § 1367.  No diversity exists here and the State Court claims substantially predominate over the federal question. As such, this case should be dismissed. *See* Fed. Civ. Proc. R. 12(b)(1).

#### 1.   The State Court Claims Lack Complete Diversity.

"[T]o bring a diversity case in federal court against multiple defendants, each plaintiff must be diverse from each defendant." *Lee v. American Nat. Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001).  An LLC is a citizen of every state of which its owners/members are citizens.  *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Accordingly, partners cannot assert diversity jurisdiction in a suit against the partnership, and vice versa.  *See Whalen v. Carter*, 9554 F.2d 1087, 1095 (5th Cir. 1992); *see also Buckley v. Control Data Corp.*, 923 F. 3d 96, 97 (8th Cir. 1991).

"The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." *Bass v. Bennett*, No. CV201081FMOJEMX, 2020 WL 4032466, at *1 (C.D. Cal. Apr. 10, 2020).  To establish diversity, a Plaintiff must adequately plead each parties' citizenship. *See Klaehn v. Cali Bamboo, LLC,* No. 19CV1498-LAB (KSC), 2020 WL 3971518, at *3, fn. 3 (S.D. Cal. July 13, 2020) ("Cali correctly points out that Plaintiffs do not adequately plead subject matter jurisdiction because Plaintiffs fail

to plead the citizenship of Cali. This defect is grounds for dismissal without prejudice" (internal citation omitted)); *see also Zafer v. Spengler*, No. 4:20-CV-00197-DCN, 2020 WL 5549151, at *2 (D. Idaho Sept. 15, 2020) ("if a party has been joined in the action, that party's citizenship must be considered for purposes of determining whether subject matter jurisdiction exists").

To the extent that an LLC is partly owned by another LLC, the Court's inquiry "continues until the court reaches an entity that is not a passthrough for jurisdictional purposes." *Arlington Valley Solar Energy II LLC v. Fluor Enterprises Inc.*, No. CV-19-05595-PHX-DLR, 2020 WL 1969534, at *1 (D. Ariz. Apr. 24, 2020) (citing cases). "[T]he rules governing subject matter jurisdiction are 'inflexible and without exception'" and "the character of [a] membership interest is irrelevant to the determination of [an LLC's] citizenship." *Fadal Machining Centers, LLC v. Mid-Atl. CNC, Inc.*, 464 F. App'x 672, 673 (9th Cir. 2012).

Here, the Complaint contains four LLCs (one Plaintiff and three Defendants). Aside from listing each of their States of incorporation and principal places of business—neither of which establishes an LLC's citizenship—Mr. Struck has provided no information as to any of the LLCs' members or their citizenships. This would require identifying all four LLCs' owners, and to the extent those owners are also LLCs, continue until Plaintiff can identify each entity that is not a passthrough for jurisdictional purposes. *See Arlington Valley Solar Energy II*, 2020 WL 1969534, at *1; *see also Fadal Machining Centers*, 464 F. App'x at 673.  Until Plaintiff meets this burden, the Court cannot assume diversity jurisdiction.

However, even if Plaintiff identified the LLCs' citizenships, it would be determined that no diversity exists. Specifically, Mr. Gao himself is a member of Struck Capital Management LLC.  [Shmidt Decl. Ex. L ¶ 16; Gao, Decl. ¶ 5]. "Where a partner in a partnership sues the partnership itself, the plaintiff partner's citizenship is attributed to both the plaintiff and the defendant partnership." *Soward v. The & Tr.,* No. C-07-3894 MMC, 2007 WL 2947425, at *2 (N.D. Cal. Oct. 9,

2007); *see also Boulder Creek Co. v. Maruko Inc.*, 772 F. Supp. 1150, 1153 (C.D. Cal. 1991).  While Mr. Struck disputes this, there is substantial evidence of Mr. Gao's partnership, including Mr. Struck's own acknowledgement to Mr. Gao and third parties and Mr. Struck's request that Mr. Gao contribute to tax payments and promise to issue K-1 forms.  [Gao Decl. ¶¶ 5-15, Exs. A-G].[3]  Since the Court would be asked to determine Mr. Gao's partnership interest, it would be placed in the position of potentially losing jurisdiction based on its determination.

In addition, one of the members of defendant Shima Capital GP LLC resides in California. [Gao Decl. ¶ 4; Veradittakit Decl. ¶¶ 3-4].  Shima Capital GP LLC is itself therefore a resident of California.  *Johnson,* 437 F.3d at 899.  Since Plaintiffs are also California residents [Complaint (Dkt. 1) ¶¶ 9-10], the case lacks complete diversity and therefore diversity jurisdiction.

## 2.     The State Court Claims Substantially Predominate Over the Federal Question Claim.

In the absence of diversity jurisdiction, this Court should decline to exercise supplemental jurisdiction over the state law claims.  Pursuant to 28 U.S.C. § 1367, while the district court may exercise supplemental jurisdiction over related state claims, a district court may decline to exercise such jurisdiction if state court claims "substantially predominates over the claim or claims over which the district court has original jurisdiction." *Id.*  The decision to decline to exercise supplemental jurisdiction should be informed by the values of "economy, convenience, fairness, and comity." *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (internal citations omitted).

---

[3] "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction…. In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citations omitted).

In this case, Mr. Struck has raised a single federal claim, namely the claim that Defendants engaged in trade secret misappropriation under the Defend Secrets Act. [Complaint (Dkt. 1) ¶¶ 67-75].  However, this claim is overshadowed by the state court claims raised in the same Complaint, including a claim for trade secret misappropriation under California law.  [*Id.* ¶¶ 76-84].  These exact claims are currently being considered in both the LASC Action and in the Arbitration. [Shmidt Decl. Exs. M, U].  Principles of economy, convenience, fairness and comity weigh heavily against the Court exercising supplemental jurisdiction over the state law claims raised in the federal Complaint. To the extent this Court may exercise federal jurisdiction pursuant to 28 U.S.C. § 1331 over the single federal cause of action, it should exercise its discretion to abstain from consideration until the state court case has been resolved, for reasons described below.

## B.   Abstention is Appropriate Under The Present Circumstances.

### 1.   Jurisprudence on Abstention

The Supreme Court has long recognized that principles of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" warrants the abstention of federal courts in cases where there is already a state court action pending, even if the pendency of the state court action does not bar simultaneous federal proceedings.  *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952); *McClellan v. Carland*, 217 U.S. 268, 282 (1910).  Although two cases involving the same cause of action may proceed in both state and federal court simultaneously, courts have also recognized that "discretion should be exercised by the courts in abstaining from exercising jurisdiction in appropriate cases."  *See Aetna State Bank v. Altheimer*, 430 F.2d 750, 755 (7th Cir. 1970).

In *Colorado River Water Conservation Dist. v. U.S.*, the Supreme Court clarified that it would be appropriate to dismiss or stay a federal action because of concurrent state proceedings in exceptional circumstances.  *See* 424 U.S. 800, 818

1   (1976).  Such circumstances are informed by factors that include "the order in

2   which jurisdiction was obtained by the concurrent forums," the "inconvenience of

3   the federal forum," and "the desirability of avoiding piecemeal litigation."  *Id.*

4   Because "[n]o one factor is necessarily determinative[,]" a court considering a

5   motion to stay or dismiss a federal action should "tak[e] into account both the

6   obligation to exercise jurisdiction and the combination of factors counselling

7   against that exercise."  *Id.*

8          As an example, the Supreme Court has recognized that "ordinarily it would

9   be uneconomical as well as vexatious for a federal court to proceed in a declaratory

10  judgment suit where another suit is pending in a state court presenting the same

11  issues, not governed by federal law, between the same parties."  *Brillhart v. Excess*

12  *Ins. Co. of America*, 316 U.S. 491, 495 (1942).  Even outside the context of a

13  declaratory judgment, the Supreme Court has upheld the decision of a district court

14  to stay a federal action when substantially identical proceedings were occurring

15  between the same parties in state court.  *See Will v. Calvert Fire Ins. Co.*, 437 U.S.

16  655, 657 (1978).  In *Calvert Fire*, the district court had found that a tentative trial

17  date had already been set by the state court at the time the federal proceeding was

18  filed, and that federal litigation of the same issues "would therefore be duplicative

19  and wasteful."  *Id.* at 659.  The federal plaintiff had brought only one claim subject

20  to the exclusive jurisdiction of the federal court, which the court deferred until the

21  state court claims could be resolved.  *Id.*  The Court noted that "a district court's

22  decision to defer proceedings because of concurrent state litigation is generally

23  committed to the discretion of that court."  *Id.* at 665.

24         When the federal claims run concurrent to claims over which states also have

25  jurisdiction, this factor has less significance, and other factors may weigh in favor

26  of abstention.  *See Goodin v. Vendley*, 356 F. Supp. 3d 935, 946 (N.D. Cal. 2018)

27  (finding abstention appropriate where the federal courts' jurisdiction is concurrent

28  with that of the state courts).  Of particular note, "the vexatious or reactive nature of

13

either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n. 20 (1983).

The Ninth Circuit has recognized eight factors to be considered when reviewing a district court's decision regarding the *Colorado* abstention doctrine. These factors are:

(1) which court first assumed jurisdiction over any property at stake;

(2) the inconvenience of the federal forum;

(3) the desire to avoid piecemeal litigation;

(4) the order in which the forums obtained jurisdiction;

(5) whether federal law or state law provides the rule of the decision on the merits;

(6) whether the state court proceedings can adequately protect the rights of the federal litigants;

(7) the desire to avoid forum shopping; and

(8) whether the state court proceedings will resolve all issues before the federal court.

*Montanore Minerals Corporation v. Bakie,* 867 F.3d 1160, 1166 (9th Cir. 2017). Not all of the factors need be met in order to find for abstention and "[s]ome factors may not apply in some cases." *Id.*

Applying these standards, the Ninth Circuit has upheld abstention based on a pending state court action on multiple occasions. For example, in *Attwood v. Mendocino Coast Dist. Hosp.*, the plaintiff had filed a complaint in state court, then a year later, filed a second action in federal court with the same substantive claims as found in the state court complaint and an added claim under 42 U.S.C. § 1983. 886 F.2d 241, 242 (9th Cir. 1989). The district court, citing *Colorado River*, dismissed the federal action without prejudice pending resolution of the state court action. *Id.* at 243. The Ninth Circuit affirmed the district court's discretion to

abstain when parallel court proceedings would "provide complete and prompt resolution of the issues" in the case, noting the desirability of "avoid[ing] the waste of judicial resources from duplicative litigation in two courts." *Id.* at 243-44.

The Ninth Circuit has also found that a district court can abuse its discretion in failing to stay a federal action where a state court action runs concurrently.  In *Monatore Minerals Corporation v. Bakie*, the plaintiff first initiated an action in Montana state court, then following a disfavorable ruling, brought an action in federal district court.  867 F.3d 1160, 1163 (9th Cir. 2017).  In finding that the district court should have stayed the federal action pending resolution of the state court case, the Ninth Circuit considered each factor under the *Colorado River* analysis.  It noted that the state court had first exercised jurisdiction over the property at issue.  *Id.* at 1167.  It noted that having both tribunals consider the same issues would result in piecemeal litigation, "thereby duplicating efforts and possibly reaching different results."  *Id.* (quoting *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 848 F.2d 1253, 1258 (9th Cir. 1988)).  It also found that the extensive state law issues at play favored a stay, insofar as the state court was "in a better position to address these issues" than the federal court.  *Id.* at 1169.  The Court also observed that, although the state and federal actions were not exactly parallel, the cases were sufficiently parallel to justify a stay and that the plaintiff was forum shopping by filing in federal court.  *Id.* at 1169-70.

In another similar case to the present fact pattern, the Ninth Circuit again upheld the district court's grant of a motion to stay.  In *Nakash v. Marciano*, two individual parties, along with their corporations and wholly owned subsidiaries, were engaged in a business dispute over the ownership of Guess?, a clothing designer.  882 F.2d 1411, 1412 (9th Cir. 1989).  One party, the Marcianos, filed a complaint in California state court, raising allegations of unfair competition, trademark infringement, fraud, and breach of fiduciary duty, among others.  *Id.* Following extensive litigation, the other party, the Nakashes, filed suit in federal

1   court, containing substantially identical allegations raised in the cross-complaint the

2   Nakashes had brought in state court.  *Id.*  The district court stayed the Nakashes'

3   federal action, and the stay was upheld by the Ninth Circuit.  In upholding the

4   district court's decision, the court observed that a majority of relevant factors

5   supported the stay, insofar as "[p]ermitting this suit to continue would undeniably

6   result in piecemeal litigation[, . . .] it would be highly inefficient to allow the

7   federal litigation to proceed[, and] Nakash has not suggested any reason why the

8   state court cannot adequately protect his rights." *Id* at 1416.

9   The *Goodin v. Vendley* case provides yet another apt example of how this

10  Court should apply the doctrine of abstention.  In that case, the plaintiff (Goodin)

11  owned a cannabis business and had developed particular marks to use in association

12  with marketing and sales.  356 F. Supp. 3d 935, 941 (N.D. Cal. 2018).  The

13  defendant (Vendley) was a previous member of the board of directors for the

14  business, but was forced to resign his position.  *Id.*  When he left, Vendley re-

15  registered domain names associated with the business under his own name, which

16  resulted in Goodin and the business losing access and control to their business

17  websites.  *Id.*  Goodin filed an action in state court alleging breach of fiduciary duty

18  and misappropriation of trade secrets.  *Id.* at 942.  Five months later, Goodin filed

19  an action in federal court alleging computer fraud and abuse and cybersquatting

20  under federal statutes.  *Id.*  Vendley moved to stay or dismiss the federal action

21  given the pendency of the state court action, and the court concluded that the

22  *Colorado River* doctrine required deference to the state court jurisdiction.

23  In applying the *Colorado River* factors, the court noted the substantial

24  similarity between the state and federal actions, recognizing that "proceedings are

25  substantially similar when substantially the same parties are contemporaneously

26  litigating substantially the same issues in another forum." *Id.* at 944 (internal

27  quotation marks omitted).  The Court concluded that even though the claims were

28  distinct, they were predicated upon identical factual claims and sought to vindicate

the same rights.  *Id.* In light of that, the Court concluded, "there is (1) an inherent risk of inconsistent results if both courts proceed with these claims at the same time, and (2) likelihood that whichever court decides the issue first will have a preclusive effect on the claims and/or issues pending before the other court."  *Id.* at 945.  The Court also noted that "the state action was filed about five months before the federal action," and "[w]hile both actions are in relatively early stages, some discovery has occurred in the state action and Defendant has posted his non-refundable jury fees." *Id.* at 946.  There was no argument that the state forum would be inadequate to protect the plaintiff's federal rights, accordingly the court concluded that this factor also weighed in favor of a stay.  *Id.* at 947.  Finally, the court considered whether the state court action could resolve all the issues, and concluded that "[r]esolution of Plaintiffs' state court claims based on the same allegations alleged in this action will resolve the legal question of whether Defendant's conduct amounts to misappropriation and unauthorized use under state law.  As such there is no doubt . . . that resolution of the state claims will resolve the federal claims in this action." *Id.* at 948.  The Court disregarded factors irrelevant to the inquiry, noting that there was no property over which the court had assumed jurisdiction and both federal and state forums were convenient.  *Id.* at 945, n. 5.[4]

## 2.    Application to This Case

All eight factors enunciated in *Montanore* either favor a stay or are neutral on the subject.  Both LASC Action and the Arbitration assumed jurisdiction prior to the present action. Collectively, the parties have brough dozens of claims against one another, all of which are based on state law.  Permitting this suit to continue would undeniably result in piecemeal litigation and would be highly inefficient because the federal Complaint contains substantially identical allegations raised in

---

[4] Cases in the Central District have similarly found cause to apply Colorado River and stay federal proceedings pending the resolution of state cases.  *See ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F.Supp.3d 1121 (C.D. Cal. 2014) (staying contract claims pending state resolution).

1   the cross-complaints of both the LASC Action and the Arbitration.  Mr. Struck's

2   single distinct claim is predicated upon identical factual allegations and seeks to

3   vindicate the same rights as those raised in the LASC Action and the Arbitration.

4   There is nothing to suggest that the LASC Action and Arbitration combined would

5   be inadequate to address the entirety of the parties' disputes.  However, if both

6   courts proceed with these claims at the same time, there is a significant inherent risk

7   of inconsistent results, and a significant likelihood that whichever court decides the

8   issue first will have a preclusive effect on the claims and/or issues pending before

9   the other court.  Progress has been made in both the LASC Action and the

10   Arbitration, including the exchange of discovery and a scheduling order with the

11   Hearing date in the Arbitration.

12       Additionally. the procedural history in this case strongly suggests that Mr.

13   Struck is engaging in forum shopping, insofar as Mr. Struck first attempted to move

14   the case away from state court into arbitration, and when he was unsuccessful in

15   either expanding or limiting the arbitration in the way he wished, brought this

16   action in an effort to engage what he hoped would be a more favorable court.  His

17   federal complaint comes only after extensive litigation efforts have been made in

18   state and arbitration proceedings, a year after the original complaint was filed in the

19   LASC Action and eight months after the case was moved to arbitration.  The LASC

20   Action is currently stayed at Mr. Struck's request and allowing him to choose a new

21   forum based on that stay and have the federal action create case law which would

22   become preclusive in the LASC Action would be the very definition of

23   impermissible gamesmanship and forum shopping.  Not to mention Mr. Struck's

24   use of the federal action as a means to sway public opinion and continue to damage

25   Mr. Gao's business relationships, which demonstrates the vexatious and reactive

26   nature of his decision to file this case. *See Moses H. Cone*, 460 U.S. at 17 n. 20.

27       Finally, there is no question that the state court and arbitrator are able to

28   resolve all the issues pending before this court.  Accordingly, the court should stay

the federal proceedings pending resolution of the outstanding issues in the LASC Action and the Arbitration.

## IV.   Claims Against The Entity Defendants Should be Dismissed

If the Court finds it has jurisdiction over this case, it should dismiss the case as to the Entity Defendants under Federal Rules of Civil Procedure ("CCP") Rule 12(b)(6). A motion to dismiss under CCP Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory, or where it presents a cognizable legal theory yet fails to plead essential facts to support that theory. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S. Ct. 1827, 1832 (1989); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). The purpose of a Rule 12(b)(6) motion to dismiss is "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

If the Court decides to dismiss a complaint, it must also decide whether to grant leave to amend, and "[a] district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency…." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). Thus, when it would be futile to amend the complaint, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

### A.   Courts Are Not Required To Accept Conclusory Allegations

In evaluating a motion to dismiss, a court accepts a plaintiff's factual allegations in the complaint as true but is not required to accept as true conclusory allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Pleadings that contain nothing more than legal conclusions or "a formulaic recitation of the elements of a cause of action" are insufficient. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citations and quotation marks omitted).  "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (italics added); *see also Iqbal*, 556 U.S. at 677-79 (explaining that pleadings must contain more than labels and unsupported conclusions and emphasizing that conclusory allegations are *not* entitled to be assumed true).

Courts are not required to "accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, *supra*, 556 U.S. at 678 (alteration in original; internal quotation marks omitted).  Additionally, a complaint must "state a claim to relief that is plausible on its face," [*Twombly*, 550 U.S. at 570], meaning the complaint must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

### B.    Argument

#### 1.    The Complaint Fails to Make *Any* Factual Allegations Specific To The Entity Defendants

Mr. Struck has brought six claims in this action, five identical to the crossclaims raised in the LASC Action and the Arbitration, with the sixth (a federal claim) relying entirely on the same factual basis as in the crossclaims in the LASC

Action and Arbitration.  Each of these claims has been brought against all Defendants, not just against Mr. Gao.  However, the allegations in the Complaint deal only with Mr. Gao's conduct, and most of the allegations deal with facts which occurred prior to the Entity Defendants' formation/existence. [Complaint (Dkt. 1) ¶¶ 12-14].  Mr. Struck has failed to identify or allege any actions taken by any of the Entity Defendants.  Accordingly, the claims against the Entity Defendants should be dismissed.

Specifically, Mr. Struck has alleged that, in February of 2021, Mr. Gao had engaged in an inappropriate attempt to wire funds from a company bank account. [Complaint (Dkt. 1) ¶ 41].  Mr. Struck has also alleged that during this same time period, Mr. Gao wrongly downloaded information from databases on the same day. [*Id.* ¶ 45].  Mr. Struck has made no allegations that the Entity Defendants have taken any steps to misappropriate, steal, or convert Mr. Struck's property—nor could he because, as Mr. Struck admits, the Entity Defendants were not even formed until either December 2021 or January 2022 [*id.* ¶¶ 12-14], nearly a year after the alleged misconduct described in the Complaint took place.

Mr. Struck's only reference to the Shima Entities' participation in the alleged wrongdoing is to say that they "on information and belief, are engaging in the same violations that Gao's prior Shima Capital Delaware Entities engaged in – namely, using Struck's proprietary business information to launch a competing blockchain, venture capital fund." [Complaint (Dkt. 1) ¶ 63].  Mr. Struck provides no factual allegations, but rather resorts to general conclusions about what the Shima Entities may be doing.  Such general conclusions are manifestly inadequate.

The allegations against Sand Hill Advisors PR LLC are even flimsier.  Aside from claiming that Mr. Gao incorporated the company in Puerto Rico, almost nothing is said about it at all.  Mr. Struck does mention Sand Hill Advisors LLC, a Delaware Corporation, which did exist in February 2021, but strategically does not include it as a defendant in this litigation.  [*Id.* pg. 8 fn. 1].

### 2.     Plaintiffs' Alter-Ego Allegations Are Insufficient

To the extent that Mr. Struck relies entirely on a single sentence generically alleging, without any facts, that all Defendants are alter-egos of one another [*id.* ¶ 17], this too is misplaced.  As a primary matter, California law applies to the alter ego analysis.  *See Goodrich v. Briones (In re Schwarzkopf)*, 626 F.3d 1032, 1037 (9th Cir. 2010) ("In determining whether alter ego liability applies, we apply the law of the forum state."); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (in diversity cases involving state law claims, federal courts apply the law of the forum state).[5]  California law recognizes alter ego liability when there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased to exist. *In re Schwarzkopf*, 626 F.3d 1038. Further, the adherence to the fiction of the separate existence of the corporation must result in the sanctioning of fraud or promotion of injustice.  *Id.*

"Factors suggesting an alter ego relationship include the commingling of funds and other assets, the failure to segregate funds of separate entities, the disregard of legal formalities, or the manipulation of assets between entities so as to concentrate the assets in one and the liabilities in another."  *F.D.I.C. v. CoreLogic Valuation Servs., LLC,* No. SA CV 11-0704 DOC, 2011 WL 5554324, at *9 (C.D. Cal. Nov. 14, 2011).  "[T]he plaintiff must plead an inequitable result for each claim asserted in the complaint. That is, for each claim, the plaintiff must allege facts showing why permitting an individual and a corporation (or two corporations) to 'maintain their separate corporate existenc[s]' would result in inequity."  *MH Pillars Ltd. v. Realini*, No. 15-CV-1383-PJH, 2017 WL 916414 at *14 (N.D. Cal. Mar. 8, 2017) (internal citations omitted).

---

[5] There is separate federal law on alter ego liability, which generally is applied when determining whether the court can exercise personal jurisdiction over a party based on alter ego theory. Ultimately, this may be a distinction without a difference because California alter ego law is substantially similar to federal law. *See Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.,* 969 F.2d 764, 769 (9th Cir.1992).

In *Leek v. Cooper*, the California Court of Appeals reviewed alter-ego allegations substantially similar to the ones in the Complaint—including allegations that the defendants were employees of one another and acted within one another's scope, consent and permission—and found such allegations to be insufficient. 194 Cal. App. 4th 399, 415 (2011); *see also CoreLogic Valuation Servs.,* 2011 WL 5554324 at *10 ("Like Leek, where plaintiff did not allege facts showing an inequitable result, Plaintiff completely fails to allege facts showing how treating the allegedly negligent appraisals provided by EA to WaMu as EA's acts alone would cause an inequitable result. Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief.").  Plaintiffs' alter ego allegations against the Entity Defendants are therefore insufficient to support a claim for relief.

### 3.     California Does Not Allow Outside Reverse Veil Piercing

"There are three methods of disregarding the corporate form to 'pierce the corporate veil.'"  *In re Shapow*, 599 B.R. 51, 72 (Bankr. C.D. Cal. 2019) (*citing Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510 (2008)). Traditionally, a court may apply the alter ego doctrine and pierce the corporate veil so that a "shareholder [is] held liable for the debts or conduct of the corporation." *Postal Instant Press,* 162 Cal. App. at 1518.  Second, "[s]ome courts recognize [that] the corporate veil may be pierced in reverse so that a corporation may be held liable for the debts or conduct of a shareholder." *Id.* Reverse piercing typically involves a "corporate insider ... attempting to pierce the corporate veil from within so that the corporate entity and the individual will be considered one and the same." *Id.* (internal quotations omitted). This is referred to as "inside reverse piercing." *Id.*

The third method, relevant here, is "sometimes called 'outside' or 'third party' reverse piercing, [and it] occurs when a third party outsider seeks to reach corporate assets to satisfy claims against an individual shareholder." *Id.*  "California courts reject outside reverse piercing. Under California law, 'a third party creditor may not pierce the corporate veil to reach corporate assets to satisfy a shareholder's

23

1    personal liability." *Gill v. Shakib (In re Shakib)*, No. 2:13-bk-26638-TD, 2014 WL

2    3865232, at *2 (Bankr. C.D. Cal. Aug. 6, 2014) (*citing Postal Instant Press*).  This

3    is because "[t]he same abuse of the corporate form does not exist when the

4    defendant is the shareholder. In that situation, the corporate form is not being used

5    to evade a shareholder's personal liability, because the shareholder did not incur the

6    debt through the corporate guise and misuse that guise to escape personal liability

7    for the debt." *Postal Instant Press*, 162 Cal. App. 4th at 1522; *see Wise v. DLA*

8    *Piper LLP*, 220 Cal. App. 4th 1180, 1193 (2013).  "Other courts have followed

9    *Postal Instant Press*, including a federal district court from this district…."  *In re*

10   *Shapow*, 599 B.R. at 73; *Greiling v. Zahoudanis*, No. CV 08-06467 ODW (ANx),

11   2009 WL 700049, at *3 (C.D. Cal. Mar. 13, 2009) (granting a motion to dismiss

12   because "California courts recognize that such a remedy is 'an unacceptable

13   shortcut' because 'conversion and fraudulent conveyance already afford judgment

14   creditors [an adequate remedy].'"); *In re Shakib*, 2014 WL 3865232 at *2; *In re*

15   *Schwarzkopf*, 626 F.3d at 1038 (applying *Postal Instant Press*); *In re Mihranian*,

16   No. AP 2:15-AP-01665-BR, 2017 WL 2775043, at *6 (B.A.P. 9th Cir. June 29,

17   2017) (holding that "*Postal Instant Press* is carefully reasoned and persuasive.")

18           Here, Mr. Struck attempts to do exactly what the Courts have forbidden.  As

19   an outsider, he is attempting to reach the corporate assets of the Entity Defendants

20   based entirely on the alleged actions of Mr. Gao.  What makes this attempt

21   particularly improper is the fact that the Entity Defendants did not even *exist* at the

22   time of Mr. Gao's alleged actions, meaning that Mr. Gao could not have possibly

23   "incurred [liability] through the corporate guise or misuse that guise to escape

24   personal liability".  Accordingly, the claims against the Entity Defendants should be

25   dismissed in their entirety, without leave to amend, as there is no way an entity

26   should be responsible for actions taken a year prior to its *existence*.  Since all of the

27   claims stem from allegations which took place prior to the Entity Defendants'

28   existence and outside reverse veil piercing is neither available nor appropriate in

this case, the Court should dismiss the Entity Defendants with prejudice. *See Dumas*, 90 F.3d at 393 .

## V.   <u>CONCLUSION</u>

Mr. Struck filed this lawsuit in an effort to forum shop and to create a sensationalized news article for the sole purpose of harming Mr. Gao. The case has arrived in federal court without complete diversity, and with only the barest of claims to federal jurisdiction, based on rights that run concurrent to those granted by state law.  The factual allegations made and the issues raised in the case are substantially identical to those allegations and issues already under consideration in two other actions.  It would run contrary to notions of fairness and judicial economy for this Court to consider Mr. Struck's claims at this time.  Furthermore, the claims made by Mr. Struck against the Entity Defendants lack any factual support and those entities are not subject to alter-ego liability.

Accordingly, this Court should find that it has no diversity jurisdiction, decline to exercise supplemental jurisdiction, dismiss the Entity Defendants, with prejudice, and stay the proceedings with regards to the sole remaining count pending resolution of the LASC Action and the Arbitration.


Dated:  June 1, 2022                            ORSUS GATE LLP
                                                Denis Shmidt
                                                Nabil Bisharat

                                                By: /s/ Denis Shmidt
                                                Denis Shmidt

                                                *Attorneys for Yida Gao, Sand Hill Advisors PR LLC, Shima Capital Management LLC, and Shima Capital GP LLC*

1

## **CERTIFICATION OF SERVICE**

2          The undersigned hereby certifies that on the June 1, 2022, all counsel of

3    record who are deemed to have consented to electronic service are being served

4    with a copy of this document via the Court's CM/ECF system.

5

6                              By:  /s/ Denis Shmidt
                                   Denis Shmidt

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28