```
                   UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
                  (WESTERN DIVISION - LOS ANGELES)



ADAM B. STRUCK, ET AL,        ) CASE NO: 2:22-cv-02415-SPG-MAA
                              )
               Plaintiffs,    )              CIVIL
                              )
      vs.                     )       Los Angeles, California
                              )
YIDA GAO, ET AL,              )      Wednesday, June 7, 2023
                              )
               Defendants.    )    (10:09 a.m. to 10:32 a.m.)
_____  (10:45 a.m. to 12:48 p.m.)



                  INFORMAL DISCOVERY CONFERENCE

             BEFORE THE HONORABLE MARIA A. AUDERO,
                 UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

```
For Plaintiffs:          ROBBY S. NAOUFAL, ESQ.
                         Miller Barondess
                         2121 Avenue of the Stars, Suite 2600
                         Los Angeles, CA 90067
                         424-278-2271


For Defendants:          JENNIFER HAIDAR, ESQ.
                         NABIL A. BISHARAT, ESQ.
                         Orsus Gate
                         16 N. Marengo Ave., Suite 316
                         Pasadena, CA 91101
                         213-674-9042


Court Reporter:          Recorded; CourtSmart

Courtroom Deputy:        Narissa Estrada

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988
Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

1      <u>Los Angeles, California; Wednesday, June 7, 2023; 10:09 a.m.</u>

2                       **(Call to Order)**

3             **THE CLERK:**  Calling Case Number CV22-02415; Adam B.

4   Struck, et al, v. Yida Gao, et al.

5             Counsel, please state your appearance, beginning with

6   the Plaintiff.

7             **MR. NAOUFAL:**  Good morning, Your Honor.  Robby

8   Naoufal, of Miller Barondess, on behalf of Plaintiff Adam

9   Struck.

10            **THE COURT:**  Good morning, Mr. Naoufal.

11            **MR. BISHARAT:**  Good morning, Your Honor.  Nabil

12  Bisharat on behalf of the Defendants.

13            **MS. HAIDAR:**  Good morning, Your Honor.  Jennifer

14  Haidar, from Orsus Gate, also on behalf of Defendants.

15            **THE COURT:**  Good morning, Mr. Bisharat.

16            Good morning, Ms. Nadar -- Haidar.  Sorry about that

17  -- Haidar.

18            **MS. HAIDAR:**  That's correct.  Thank you.

19            **THE COURT:**  All right.  Well, we're here on a Motion

20  to Compel, brought by Mr. Gao, seeking to compel Mr. Struck to

21  respond to Mr. Gao's Requests for Admissions Number 69.

22            Just to kind of set the record, after a few informal

23  discovery conferences on a number of issues, one of which was

24  Request for Admission Number 69, the parties have agreed to

25  have the Motion to Compel adjudicated still via the informal

1   discovery process and have my order, whatever it is, be binding

2   and constitute a Rule 37(a) order, such that non-compliance

3   would -- could be sanctionable under Rule 37(b).

4            That's my understanding of the parties' agreement.

5   The parties also have agreed that, rather than issuing a

6   written order, I can rule from the bench.  And, of course, you

7   folks can obtain a transcript.

8            So let me just make sure that the parties are still

9   interested in proceeding in this manner.

10           Can I hear from Plaintiff?

11           **MR. NAOUFAL:**  Yes, Your Honor, on behalf of Adam

12   Struck.

13           **THE COURT:**  Okay.  Thank you.

14           And from Defendant?

15           **MS. HAIDAR:**  Yes, Your Honor, that's correct.

16           **THE COURT:**  All right.  Proceeding under this

17   approach, I have received the parties briefs.  Thank you very

18   much.  They were very helpful, very informative.  Of course,

19   they weren't filed on the docket because this is an informal

20   discovery conference.

21           Nevertheless, because we are having a hearing, we're

22   going to have to make a very clear record.  So that may take a

23   little bit of time that otherwise, if there are motions on the

24   docket, we might not have to spend.  But we need to make sure

25   that you folks have a clear record.  So we'll be doing that.

4

1          Before we do that, I want to make a record of the

2   fact that Defendant Gao has requested to take advantage of my

3   program that grants junior more -- or less senior attorneys an

4   opportunity to do oral argument for motions that they have

5   either researched intensively or even probably written.

6          So I'm delighted that Mr. Gao has taken this

7   opportunity.  I want to make a record that, first of all, the

8   details of my program are on my webpage.

9          And also Mr. Gao has requested specific areas of

10  leniency, which are that he be -- that his more senior Counsel

11  be permitted to argue on his behalf on -- yeah, on his behalf

12  alongside the more junior Counsel, to provide additional

13  argument or context as needed.

14         In addition, Mr. Gao graciously has agreed to -- to

15  the extent this allows Mr. Gao more time of argument -- to have

16  Mr. Struck have the equal amount of time for argument as well.

17         So with that request on the record, I want to say I

18  applaud Mr. Gao for taking advantage of this opportunity.  This

19  is how we develop the new generation of lawyers; and especially

20  lawyers who have been practicing for a few years, but thanks to

21  Covid, haven't had an opportunity to even walk into the

22  courthouse.

23         So on this basis, Mr. Gao's request is granted in

24  full.  Ms. Haidar will be the primary attorney, making argument

25  on behalf of Mr. Gao, with the assistant -- assistance of

5

1  Mr. Bisharat.  And Counsel for Mr. Struck will be granted equal

2  opportunity of time.

3          Okay.  All right.  We need to create a record, as I

4  said earlier, for the background of why we're here and what is

5  at issue.  So give me some time to do that.  And I'll ask you

6  if I've created an appropriate record, to make sure we're all

7  on the same page.

8          So we are here on a Motion to Compel Mr. Struck to

9  respond beyond his objections to Mr. Gao's Request for

10  Admissions Number 69.

11          Specifically that request asks Mr. Struck to admit

12  that you -- which is defined as Mr. Struck and a number of his

13  agents -- provided information to Ivanov, who is a reporter,

14  for that reporter's use in publishing a news article.

15          I guess Zenger is the publication?

16          **MS. HAIDAR:**  Yes, that's correct, Your Honor.

17          **THE COURT:**  Okay.  So for use in publishing the

18  Zenger News article.  Mr. Struck's objections initially, to the

19  responses, were to incorporate general objections by reference.

20          He also objected on the grounds that the request

21  doesn't seek information that is relevant to the claims in the

22  case or likely to lead to the discovery of admissible evidence;

23  that the request is overly broad in scope; that it is unduly

24  burdensome and oppressive and that it is not reasonably calc --

25  not reasonably particularized.

1          Mr. Gao, in response, brings a Motion to Compel,

2     arguing that the information is relevant to a number of issues,

3     which I'm going to detail here.

4          Number one, Mr. Gao's first claim for relief for

5     declaratory relief, that a fifty-fifty partnership was formed.

6          Mr. Gao's second claim for relief for breach of oral

7     contract.  And the contract would be the partnership agreement.

8          Mr. Gao's third through fifth claims for relief,

9     which are his argue -- his claims for breach of fiduciary duty

10    and various good-faith duties under the alleged partnership

11    agreement.

12         Mr. Struck's -- it's relevant to Mr. Struck's claims

13    against Mr. Gao and Mr. Gao's defenses to those claims, and

14    then also relevant to Mr. Gao's credibility and Mr. Struck's

15    credibility.

16         Mr. Struck opposes the Motion to Compel on various

17    grounds -- which I'm going to detail.

18         The Request for Admissions does not seek information

19    that's relevant to the claims or defenses in the case because

20    Mr. Gao has dismissed the speech-based claims and has agreed

21    not to pursue any liability claims for comparable claims

22    arising out of the same alleged actions, omissions, and events.

23         And that is pursuant to a stipulation, which is ECF

24    Number 48, at pages 3 and 4.

25         Also, Mr. Struck argues that Mr. Gao's RFA 69 is not

1    relevant to the dec -- the declaratory relief claim or the oral

2    partnership claim; also not relevant to the fiduciary duty or

3    good-faith duties, because Mr. Struck claims not to owe such a

4    duty to Mr. Gao; and then also not relevant to Mr. Struck's

5    credibility.

6            In addition, Mr. Struck seeks affirmative relief

7    through his opposition; and, specifically, that if the Court

8    were to grant the Motion to Compel, then Mr. Struck would like

9    an oppor -- would like the Court to stay discovery and grant

10   him leave to file an anti-SLAPP motion on this discovery.

11           Okay.  Taking a breath, making sure we're all on the

12   same page.  Have I accurately stated Mr. Gao's arg --

13   positions?  We'll deal with the argument later.

14           **MS. HAIDAR:**  That's correct, Your Honor.  Yes.

15           **THE COURT:**  Okay.  And have I accurately stated

16   Mr. Struck's request and positions?

17           **MR. NAOUFAL:**  Yes, Your Honor, accurately.  One

18   additional point.  I would say, with respect to the breach of

19   fiduciary duty, the -- the RFA does not relate to any act that

20   would constitute a breach even if any duty exists.

21           **THE COURT:**  Got it.  Okay.

22           Okay.  So here's what I'm going to -- here's how

23   we're going to proceed.  I'm going to give you my tentative

24   ruling orally.  And then the parties will argue their

25   positions.

8

```
 1              All right.  My tentative ruling is to deny the Motion
 2    to Compel for multiple reasons.  And I'm going to label them as
 3    "Issues."  And the reason I'm going to do that is because then
 4    I'm going to take argument on an issue-per-issue basis.  Okay?
 5              So Issue Number One is one that I raise sua sponte.
 6    But I think it's a necessary issue to address.  And that is
 7    that the Request for Admissions is not a proper use of a
 8    Request for Admissions because it seeks to establish disputed
 9    facts.  And I emphasize "plural facts" because it seeks to
10    establish two facts.
11              One, that Mr. Struck or his Counsel or his agents --
12    specifically his Counsel I think is the issue -- even spoke to
13    the reporter in the first instance.
14              And, two, even if he did speak with the reporter in
15    the first instance, that that discussion or that communication
16    was for purposes of writing the article that is at issue.
17              Request for Admissions are not intended to obtain
18    facts that are in dispute.  And we'll take -- I'll take
19    argument on that.  But that's my tentative on that.  For that
20    reason alone, I could deny the Request for Admissions.  But I'm
21    also going to deny for lack of relevance.
22              Issue Number Two.  I do not believe that the Request
23    for Admissions provides any information that is relevant to the
24    declaratory relief claim, which seeks a declaration that a
25    fifty-fifty partnership was formed and exists.
```

```
1            Also, Issue Number Two -- or I guess the declaratory

2    relief claim is part of the contract claim.  And I do not

3    believe that -- that the -- the response to RFA 69 would

4    provide any information that informs any of the elements needed

5    to be established or defended against in a contract claim,

6    which is contract formation.

7            Mr. Gao's participate -- Mr. Gao's -- what's the word

8    that I want?  I'll find it in my notes.  Oh, "performance."

9            Mr. Gao's performance under the contract,

10   Mr. Struck's breach of the contract, or any resulting damages;

11   I just don't see that the answer to RFA 69 informs any of those

12   elements.

13           Issue Number Three.  I do not see that the answer to

14   RFA 69 informs any of the elements of fiduciary duty or good

15   faith and fair dealing in Claims Three through Five because,

16   pursuant to the parties' stipulation and resulting first

17   amended counterclaim, those claims and allegations related

18   specifically to the communication with the reporter no longer

19   exist in the first amended counterclaim.

20           And so to the extent that those originally were part

21   of the allegations regarding Mr. Struck's alleged smear

22   campaign against Mr. Gao, they no longer exist.

23           Issue Number Four, which -- and I'm taking these, by

24   the way, as -- as Mr. Gao's various theories of relevance, as

25   provided in the letter brief.
```

1          So Issue Number Four.  Mr. Gao argued that the answer

2   to the request for -- RFA 69 would inform Mr. Struck's claims

3   against Mr. Gao and Mr. Gao's defenses thereto.

4          I am not persuaded by that argument because I -- as I

5   look at the first amended complaint -- that is the operative

6   complaint here by Mr. Struck -- I don't see any claims or any

7   facts that have anything to do with whether Mr. Gao had a

8   conversation with this reporter for purposes of the article.

9          The final issue is that -- is Mr. Gao's argument that

10  the answer to RFA 69 would inform Mr. Gao's credibility or

11  Mr. Struck's credibility in general.

12          And the reason is that because -- whether Mr. Struck

13  or his Counsel actually spoke to the reporter for purposes of

14  the article, I am not persuaded that that informs the question

15  of either parties' credibility.

16          Mr. Gao's credibility theory, as I understand it,

17  appears to be -- excuse me -- that, if his theory is correct,

18  that Mr. Struck did speak with the reporter, then he is right,

19  and if he is right, he is more credible than Mr. Struck.

20          And that credibility is what is necessary for Mr. Gao

21  to prevail on the oral partnership claim because Mr. Gao will

22  then be believed in his allegations that an oral partnership

23  was created, and Mr. Struck will either not be believed or will

24  be believed less than Mr. Struck -- than Mr. Gao on that.

25          You know, I have to say, neither -- neither parties'

11

1  credibility -- I'm not persuaded that either parties'

2  credibility is going to be informed by the answer to this

3  particular Request for Admission.

4       I don't deny that -- that there is -- that it may be

5  a he-said-he-said argument with respect to the oral

6  partnership.  I just don't see that the answer to this

7  particular Request for Admission is going to inform any cred --

8  anybody's credibility.

9       Moreover, I see Mr. Gao's credible -- general

10 credibility theory of relevance as basically undermining the

11 entire intent of Rule 26(b), which tells us that something is

12 relevant if it informs the claims or defenses in the case.

13      Mr. Gao's general credibility theory seems to be, "If

14 I am more believable on anything, then -- then I win and -- or,

15 at the very least, it will inform something else."  And I just

16 don't see that as a -- as a proper credibility theory because

17 it undermines Rule 26(b)(1).

18      Moreover, credibility is not an element of any claim

19 or defense here.  There is no credibility element in contract

20 formation or performance or -- or breach or damages.  So that

21 takes care of the contract claims that Mr. Gao raises as his

22 basis for credible -- sorry -- for relief.  And it also doesn't

23 inform the fiduciary duty claims.

24      So for those reasons, my tentative is to deny

25 Mr. Gao's Motion to Compel a response from Mr. Struck as to RFA

1   69.

2            My tentative also is to deny Mr. Struck's Request for

3   a Stay for multiple reasons.  And I want to clarify.  Mr. Gao

4   requests a stay of discovery so that he can bring an anti-SLAPP

5   motion if I grant the discovery and also leave to file such a

6   motion.

7            So, number one, it is not permissible to request

8   affirmative relief in an opposition.  So for that reason, I

9   wouldn't grant it.  And I won't grant it.

10           Either way, though, I have no authority to stay

11   discovery.  That is a request that you have to make to the

12   Judge who issues the scheduling order.  And for that, you can

13   take a look at Central District Local Civil Rule 16-14.

14           I also have no authority to grant leave for a party

15   to file a non-discovery motion that would be heard by Judge

16   Garnett, the District Judge presiding over the case.  That's a

17   request that you would have to make to Judge Garnett.  And I'm

18   not even going to opine on whether there is good cause for such

19   a request.

20           And then, ultimately, because my tentative is to deny

21   the Motions to Compel, those requests of Mr. Struck become

22   moot.

23           So that's my tentative.  I would like to hear

24   argument from the parties.  I want to emphasize that is my

25   tentative.  We are here on a hearing because I want to hear

1   from the parties whether I got it right or wrong and so I can

2   be convinced.

3            So please don't -- nobody throw in the towel.  We are

4   here for you folks to convince -- for Mr. Gao, since this is

5   going against him, to convince me otherwise.

6            I would like -- as I mentioned, I'm going to as --

7   just because my mind is very linear, I'm going to take each of

8   the issues that I discussed one by one, and we're going to kind

9   of ping-pong back and forth.  But we're going to address one

10  issue at a time.

11           And because we're going to be ping-ponging, feel free

12  to stay seated.  Just use your mics at your table.  No need to

13  go to the lectern.  I think we may be here for a bit of time.

14  And so everybody get comfy, and we'll proceed.

15           Ms. Haidar, you will lead us off.

16           However, I know that what I just said was a lot.  And

17  you may need some time to kind of gather your thoughts.  So I

18  propose to the parties that we take a ten-minute recess so that

19  the parties can gather their thoughts about the issues that

20  they have to address.

21           Can I hear from Mr. Gao's team on that?

22           **MS. HAIDAR:**  Thank you, Your Honor.  That's much

23  appreciated.

24           **THE COURT:**  Okay.  Can I hear from Mr. Struck's --

25           **MR. NAOUFAL:**  No object to the break.

14

1          **THE COURT:**  Okay.  All right.  Would it be helpful --

2     because I know I said a lot.  Would it be helpful for me to

3     repeat the issues very briefly?

4          **MS. HAIDAR:**  Yes, please.  Thank you, Your Honor.

5          **THE COURT:**  All right.

6          Issue Number one is one that RFA 69 is not a proper

7     use of a Request for Admission.

8          Issue Number Two is that I don't see the relevance to

9     the dec -- declaratory relief request action and to the

10    contract claim.

11         Issue Number Three is I don't see the relevance to

12    Mr. Gao's fiduciary duty and good-faith claims, which are his

13    Claim Numbers Three through Five.

14         Issue Number Four is that I don't see the relevance

15    to any of Mr. Struck's claims or Mr. Gao's -- against Mr. Gao

16    and Mr. Gao's defenses thereto.

17         And Issue Number Five is I am not persuaded that the

18    answer to RFA 69 is going to inform the question of either

19    Mr. Gao's credibility or Mr. Struck's credibility.

20         Okay?  Shall we break for -- is ten minutes enough?

21    Would 15 minutes work?

22         **MS. HAIDAR:**  Ten minutes is enough, Your Honor.

23    Thank you.

24         **THE COURT:**  Okay.  There are conference rooms at each

25    side of the double doors.  So if you want to step outside, but

15

 1   not -- but be in private, please feel free to use the

 2   conference rooms.

 3           You're here on your own.  Feel free to stay.  We're

 4   going to recess to my chambers and my courtroom deputy will

 5   call me back when you folks come back.

 6           But let's aim for ten minutes.  So let's say at

 7   10:40.

 8           **MS. HAIDAR:**  Thank you, Your Honor.

 9           **THE COURT:**  All right.  Thank you folks.

10           **THE CLERK:**  This Court is in recess.

11       **(Court is in Recess)**

12           **THE CLERK:**  Recalling Case Number CV22-02415; Adam B.

13   Struck, et al, v. Yida Gao, et al.

14           Counsel, restate your names for the record, please.

15           **MR. NAOUFAL:**  Robby Naoufal, of Miller Barondess, on

16   behalf of Plaintiff.

17           **THE COURT:**  Good morning again --

18           **MR. NAOUFAL:**  Good morning.

19           **THE COURT:**  -- Mr. Naoufal.

20           **MS. HAIDAR:**  Good morning, Your Honor.  Jennifer

21   Haidar, from Orsus Gate, representing Defendants.

22           **THE COURT:**  Good morning again, Ms. Haidar.

23           **MR. BISHARAT:**  Good morning, Your Honor.  Nabil

24   Bisharat, from Orsus Gate, on behalf of the Defendants as well.

25           **THE COURT:**  Good morning again, Mr. Bisharat.

1          Okay.  Well, I think we start with Issue Number One,

2     which is the RFA 69 is not a proper -- is not a proper use of

3     the -- the discovery tool of Request for Admission.

4          So I'd like to hear from Defendant.  Ms. Haidar?

5          **MS. HAIDAR:**  Thank you, Your Honor.  And may it

6     please the Court?

7          So from the offset, when we first propounded RFA

8     Number 69, we didn't think it would be a disputed fact when we

9     asked, "Did you provide information to Ivanov for his use in

10    publishing the Zenger News article?" -- primarily based for two

11    reasons.

12         One, because when you look at the definition of

13    "you," not only does it include Adam Struck as an individual,

14    it includes his agents, which, again, includes his attorneys.

15         So in the article, they specifically quote Mr. Amnon

16    Siegel, who, at the time and to this day, is Mr. Struck's

17    attorney.  So to the extent that the quote was properly

18    ascribed to Mr. Siegel, we were seeking confirmation.

19         Zenger News itself is not a commonly read

20    publication.  It's fairly minor.

21         And we wanted to establish, for the record, that this

22    was an accurate quote; that this quote was valid, it wasn't

23    coming, you know, out of left field, so to speak; and to

24    establish, for the record, not only did Mr. -- Mr. Struck,

25    within the you-umbrella, had a properly ascribed quote to him,

1   but, also, we wanted to establish that to -- to lead to our

2   other claims towards relevance and credibility.  And I know

3   that we're going to get to that later.

4            Such an admission would prove that confirmation that

5   the information coming from Mr. Struck was used in the article;

6   information that we know relates directly to our claims and our

7   counterclaim.

8            Now, specifically, we've noted, in paragraph 145,

9   159, 172, that we allege breach of the various fiduciary duties

10  based on these claims of embezzlement; that Mr. Gao was Chinese

11  spy, and that he had this unscrupulous conduct which continues

12  to this day and pushing back on that as a breach of

13  Mr. Struck's underlying fiduciary duties based on our

14  allegation of a partnership via oral agreement.

15           So from the outset, we just really wanted to

16  establish the record that this was an accurate quote, that it

17  was made by Mr. Struck.

18           And if it wasn't, he was free to admit or deny and

19  qualify that admission or denial.  He was free to say, "No.

20  This was not a proper quote.  This was made without my consent.

21  Mr. Siegel did so without my knowledge."

22           Just the fact that he -- that Mr. Siegel is quoted in

23  the article was -- was relevant for us.

24           **THE COURT:**  So here's the concern that I have -- and

25  help me out here.  Because I keep coming back to the fact that,

18

```
 1   fundamentally -- and this is going to be the theme for today.
 2   So heads up.
 3          But, fundamentally, there is a disconnect between the
 4   answer to the Request for Admission and your theories of
 5   relevance.
 6          The answer to, "Did you speak with this reporter for
 7   purposes of the article?" is either, "Yes, I did," or "No, I
 8   didn't."  Right?
 9          MS. HAIDAR:  Uh-huh.
10          THE COURT:  How does that inform what you are saying;
11   that you are trying to get from this discovery, which is that
12   this was an accurate quote?
13          How does, "Yes, I spoke with this reporter" tell you
14   that anything in the article is accurately quoted?
15          MS. HAIDAR:  Thank you, Your Honor.  So in terms of
16   the relevance to our claims and defenses, just having that --
17   that yes or no, it brings to light certain things based on some
18   contextual background information.
19          So we know that this article was published on the
20   same day that Mr. Struck filed his complaint in this Court.
21          We know that he quoted -- Mr. Ivanov, that is -- that
22   he quoted Mr. Siegel, Mr. Struck's Counsel, to say -- you know,
23   to discuss the complaint.
24          Now, importantly, when you look at the -- the
25   complaint that was filed -- I should say the amended complaint;
```

1   the operative complaint --

2           **THE COURT:**  Uh-huh.

3           **MS. HAIDAR:**  -- in this case, Mr. Struck notes that

4   Mr. Gao has engaged in continuous, unscrupulous duty.

5           And the only information that we are aware of that

6   has been produced in this litigation -- and it was from us

7   really -- is that Zenger News article, to go to any of this

8   claims or -- you know, and that informs our defenses.

9           **THE COURT:**  Okay.  Let me stop you.  Because we're

10  going to get to -- we're going to get to that.  You're getting

11  to how it's relevant to your claims.

12          **MS. HAIDAR:**  Okay.

13          **THE COURT:**  I am at a much higher level here.

14          **MS. HAIDAR:**  Okay.

15          **THE COURT:**  So let me kind of direct the discussion a

16  little bit better.

17          My concern, initially -- we'll go back to whether it

18  answer -- the answer is relevant or not.  But my concern is

19  that you're using an RFA -- which is a vehicle that the Ninth

20  Circuit had said serves only two purposes -- to obtain

21  discovery rather than an admission.

22          The Ninth Circuit has been very, very clear.  And for

23  this, I will point you to Conlon v. United States 474 F.3d 616,

24  at 622, which is Ninth Circuit, 2007.

25          The Ninth Circuit is very, very clear that the

1   vehicle of a Request for Admission is to be used for two

2   purposes only.  One -- both of which will serve to save time at

3   trial.  One, to authenticate documents, so you don't have to

4   authenticate a document at trial.  And, two, to establish facts

5   that the parties do not dispute.  Okay?

6          This is a hotly disputed issue.  So much so that --

7   that it's what lead to the stipulation, which in turn lead to

8   the first amended counterclaim deleting the allegations of

9   Mr. Struck even speaking with the -- with the reporter.

10          So in my mind, this is a very disputed issue.  This

11   is not something that, you know -- you know, "Admit that you

12   spell 'Struck' S-t-r-u-c-k."  Right?  That's the kind of thing

13   that Requests for Admissions are intended to be used for.

14          And the way I read RFA 69 is it's actually trying to

15   obtain information -- not just an admission, but information

16   apparently.  And we'll get to that in a minute -- but that

17   Struck disputes.  That shouldn't even be in this case.

18          **MR. BISHARAT:**  May I jump in --

19          **THE COURT:**  Yes.

20          **MR. BISHARAT:**  -- Your Honor?

21          **THE COURT:**  Absolutely.

22          **MR. BISHARAT:**  And please let me know if, as I jump

23   in, if it's kind of breaking the rule with respect to the new

24   lawyer's program.

25          **THE COURT:**  No, no.  That's okay.  Go ahead.

1        **MR. BISHARAT:**  I think the issue, with respect to

2  whether it's in contestation or not -- the description, as

3  we've just been discussion and as Your Honor has laid it out --

4  is describing it in the context of -- and correct me if I'm

5  wrong -- of a liability that attaches for purposes of having

6  made the comment or having provided this information for it to

7  be ultimately produced.

8          The debate as to whether or not liability can accrue

9  -- and as you saw, Your Honor, specifically with respect to

10  defamation related claims or speech related claims.  That was

11  where there was a debate that went back and forth.

12          The basis fact of whether or not information was

13  provided, so far as we are aware, is not actually being

14  contested.  We are unaware of the idea that Mr. Siegel or

15  Mr. Struck are claiming that they in fact never gave this

16  information.

17          The reason why the existence or non-existence of that

18  admission helps us -- and we'll get into it.  I don't want to

19  skip ahead, because I know Your Honor is focusing on just this

20  sua sponte ruling that we have right now -- is that it is -- it

21  will actually inform both facts fundamental to certain claims -

22  - elements of those claims; not liability, but elements of

23  those claims, as well as provide information that helps assist

24  us in understanding allegations have been made against Mr. Gao.

25          And if this information is indeed coming from

1   Mr. Struck, then that would be information that we would have

2   expect and that we would expect to get or receive or see or

3   have some debate over in the context of the allegations that

4   have been made against him in the complaint.

5          Because those allegations that inform that article

6   also are incorporated by a reference by way of their statements

7   in their counterclaim in each of their causes of action.

8          Now, we presume that the reason why these facts that

9   did make their way into that article are -- are relevant to

10  Mr. Struck's claims -- we presume that that's going to fit into

11  his UCL claim.

12         But because those allegations -- and I'm specifically

13  speaking about paragraphs 64 to 66 of Mr. Struck's complaint --

14  which starts with "This conduct continues today," meaning that

15  they are alleging that this is an ongoing activity.

16         **THE COURT:**  Hold on, hold on.

17         **MR. BISHARAT:**  Sure.

18         **THE COURT:**  Sixty four --

19         **MR. BISHARAT:**  Yes.  Paragraphs 64.  This is Doc

20  Number 76, paragraph 64.

21         **THE COURT:**  Yeah, I have that.  Okay.

22         **MR. BISHARAT:**  So these facts, this issue about the

23  SPAC, ZZ Ventures, these other random individuals that are

24  mentioned; all of these affiliations inform the actual article,

25  the Zenger News article itself.

23

1          And the reason why we're inquiring about that is

2     because, in this -- in their allegation, they claim that this

3     is conduct that continues today.  It's not something that

4     happened in the past; it's ongoing.

5          And they conclude, at the end of paragraph 66, by

6     claiming that, on information and belief, Gao may be using this

7     same information -- which they are claiming was misappropriated

8     -- to operate both the Shima entities and this Aurora SPAC that

9     is discussed in the article.

10          This article is, to the best of our knowledge, one of

11     the only things we have seen where any facts that would underly

12     these allegations have appeared.

13          And if this is being done contemporaneous to the

14     allegations that it's ongoing, that then makes the witness who

15     received that information a percipient witness to the

16     allegations.

17          So the admission is trying to get at, "Did you

18     actually give this information to this individual?"

19          **THE COURT:**  No.  But see -- let me stop you there.

20     That is not what the Request for Admission is doing.

21          The Request for Admission is asking one question

22     only.  "Did you speak to the reporter for purposes of this

23     article?"

24          It is not asking, "Did you provide X, Y, Z

25     information?"  That's the fundamental flaw that permeates

24

 1    Mr. Gao's arguments throughout.

 2            Mr. Gao is taking us down -- and I don't say this

 3    pejoratively -- but down a rabbit hole that doesn't belong in

 4    this analysis.

 5            Mr. Gao's argument throughout seems to be "The answer

 6    to this RFA tells us what Mr. Struck said to the reporter."

 7            And it doesn't.  The only thing that it tells you is

 8    if Mr. Struck or his Counsel or his agents spoke to the

 9    reporter.

10            And I don't know if a comma belongs here or not.  And

11    it doesn't matter.  For purposes of the article, let's say that

12    the answer is "Admit fully."  Let say.  That's the best you

13    could hope for, I think.  That's the worse that Mr. Struck --

14    the last thing he wants to admit.  Whether it's true or not, I

15    don't know.  It doesn't matter to me.

16            Let's say you get a full unqualified admission.  That

17    does not tell you what Mr. Struck said.  It does not tell you

18    what his lawyer said.

19            **MR. BISHARAT:**  We don't contest that that is -- in

20    terms of the details of that.  Yes.

21            **THE COURT:**  Okay.  But that's the point.  That's the

22    point that I'm making, is you're using an RFA to get facts

23    that, quite frankly, you should get through a deposition or a

24    through and interrogatory.

25            This RFA does not answer the question that Mr. Gao

1   keeps arguing is the basis of the relevance for the RFA.  It

2   just -- it doesn't get you there.

3            **MR. BISHARAT:**  May I make a offer of proof on that,

4   Your Honor?

5            **THE COURT:**  Of course.

6            **MR. BISHARAT:**  Okay.  So part of what we provided in

7   our -- in our brief were exemplars of the kinds of

8   communications that Mr. Struck himself personally sent to

9   Mr. Gao, to members of the investment community; the language

10  that they used in their investment decs that they would provide

11  to potential investors; and, most crucially to this discussion,

12  communications with another publication; in this instance, the

13  Forbes Magazine.

14           Our case hinges on our argument that there was this

15  existence of a partnership between the two men, that there was

16  an agreement that would then be -- have been breached by

17  Mr. Struck's refusal to acknowledge it to pay out, et cetera.

18  Okay.

19           In order to help establish those facts, we have the

20  burden to present to the trier of fact not just our argument

21  but actual evidence, be it testimony, be it documents, be it

22  whatever it is that would be admissible evidence at trial.

23           Part of that evidence involves being able to look at

24  the ways in which Mr. Struck communicated before and the ways

25  in which he's communicating after this dispute arose in order

26

1    to let the jury understand or help inform the trier of fact as

2    to whether or not the defense that it was never in existence,

3    whether there was no partnership, whether Mr. Gao's belief or

4    reliance on these statements is reasonable.  It informs a lot

5    of those issues.

6           But, fundamentally, one of the things that we would

7    have to establish for the jury is that when you're comparing

8    one set of articles with information provided to *Forbes* and

9    another article with information provided to *Zenger*, that that

10   was information that Mr. Struck was providing on both of those

11   fronts.

12          So the RFA is getting at something a bit foundational

13   for that purpose and, again, it's foundational to that purpose

14   for purposes of allowing us to present evidence to the jury

15   that shows, look, if at trial, Mr. Struck tends to back off and

16   say, no, I never provided information for this, we would be

17   able to use that RFA to say, no, in fact, you did.

18          And the jury can look at that and say, well, why was

19   he saying this in this year but not this previously?  They can

20   compare those two pieces.  And we bear that burden given the

21   fact that it is an oral agreement and we are trying to

22   construct that based on the circumstances of the relationship

23   and the way that the men conducted their business and

24   communicated with the public.

25          So, respectfully, I would push back but, again, the

1    admission of the fact that he provided information is relevant.

2    It is helpful and it is informative precisely because, as you

3    note -- as counsel has argued in their brief at the very end of

4    their brief, there's already starting to be this distance

5    that's being placed in between whether or not information was

6    provided by Mr. Struck or not.

7            There's already this sort of, well, you know what,

8    maybe the lawyer did it or maybe -- this is the only real

9    written piece of evidence that we have seen anywhere about

10   these allegations and we believe we should be allowed to

11   explore that and the admission provides that foundational step

12   to establish that we're not going down that rabbit hole, that

13   Mr. Struck did, indeed, provide that information.

14           That is, I think, the purpose of why we do believe

15   that it is a proper RFA in the sense that these should not be

16   contested issues.  Whether he did or did not speak to somebody,

17   provided information, that shouldn't be contested.  How it

18   might be used, it's admissibility later on down the line, that

19   could be subject to a motion in limine.

20           But the existence of the communication, the existence

21   of that information being provided, that we do not think is

22   contested unless there is now a claim that they never gave this

23   person information in the first instance in which case that

24   certainly then would be interesting to figure out how it is

25   that this article appeared on the same day as the filing of the

1    complaint.

2         **THE COURT:**  Okay.  Again, I'm at this level and a lot

3    of time has been spent on the relevance.  I promise you will

4    get there.  We are not there yet.  Right now I am saying, I am

5    persuaded that this is a disputed issue because you don't even

6    -- that's what led to the removal of the allegation of the

7    communication between Mr. Struck and the reporter.  You don't

8    even have that claim anymore.

9         You do have claims that Mr. Struck went and talked to

10   investors and talked to possible companies, mutual possible

11   investors and possible companies where each of the two

12   companies post-separation could invest in.  You have that

13   claim, right.  I get that.  But you no longer have a claim of

14   whether Mr. Gao -- Mr. Struck spoke to a reporter.

15        That is something that was taken out of the

16   counterclaim and I can point you to the paragraphs but thank

17   you, folks, for sending me the redline.  That was very helpful.

18   I'm sure you don't need me to point you to where that was

19   deleted.

20        But there is a huge dispute as to the propriety and

21   even the fact of that claim, number one.  Number two, that

22   claim no longer exists.  So Mr. Gao is using a request for

23   admission to obtain information that, number one, is not even

24   at issue here because it doesn't exist and -- because a claim

25   doesn't exist any longer and, number two, which is disputed, as

29

1    I understand it.

2            And let me hear from Mr. Struck but as I understand

3    it -- or Mr. Struck's counsel.  As I understand it, there is a

4    dispute as to whether you, which means an entire world of

5    people, as defined by Mr. Gao in the request for admissions,

6    spoke to the reporter.  So let me pause with Mr. Gao for a

7    moment and let me hear from Mr. Struck's counsel.

8            **MR. NAOUFAL:**  Thank you, Your Honor.  On behalf of

9    Mr. Struck, may it please the Court.  First, I would refer Your

10   Honor to the exhibit that Mr. Gao included which is at E that

11   tracks the long and conferred efforts the parties have engaged

12   in with respect to this latest set of discovery.

13           **THE COURT:**  Okay, hold on a second.  Mr. Gao's

14   Exhibit B?

15           **MR. NAOUFAL:**  Exhibit E.

16           **THE COURT:**  Oh, Exhibit E.  Got it.

17           **MR. NAOUFAL:**  Yes, Your Honor.

18           I refer the Court to that exhibit because, in part,

19   it illustrates the numerous RFAs and discovery requests in

20   general that were initially in dispute and that we have engaged

21   through numerous attempts to narrow the issues for the Court.

22           One particular issue that has arisen over time is the

23   -- with respect to the way RFAs have been written and the means

24   in which Mr. Gao has sought to obtain admissions.  A

25   reoccurring issue has been that the RFAs are deployed in a

1  manner that is inconsistent with the Ninth Circuit's

2  instruction on how RFAs may be used.

3         This issue arose in the IDC.  We spent hours -- and

4  we continue to thank Your Honor for efforts to resolve these

5  disputes.  And the rulings on previous RFAs did clearly state

6  that these RFAs are being propounded in a way that is -- does

7  not comport with Ninth Circuit precedent.

8         We have insisted on taking this specific RFA because

9  -- to this stage and is worthy of a hearing before Your Honor

10  because as propounded, there are many flaws to the RFA.  It is

11  very much in dispute whether the answer to this RFA goes

12  towards the relevance of any claims.

13         There is a dispute -- and that's reflected in the

14  objections that were incorporated from the general objections

15  and stated in the specific objections to this RFA -- that as

16  propounded, the RFA is vague and irrelevant.  The RFA requests

17  an admission --

18         **THE COURT:**  Okay.  I'm going to stop you for one

19  second.  Please allow me to stop you.  We're going to get to

20  the merits of whether it's relevant or not, whether it's

21  properly written or not in a second.

22         My question to you, Mr. Bhisharat, was -- no, sorry

23  -- Mr. Naoufal.  Sorry -- was, is there -- am I correct in my

24  understanding that there is a dispute as to whether you, as

25  defined by Gao's request for admission, spoke with the -- this

1    particular reporter for purposes of this article?

2              **MR. NAOUFAL:**  Well, Your Honor, there is a dispute as

3    to the existence of this claim in light of the First Amended

4    Complaint.  There is a dispute as to what this RFA is asking

5    Mr. Struck to admit.

6              **THE COURT:**  Okay.  So there's a dispute as to the

7    fact?

8              **MR. NAOUFAL:**  Yes, correct.

9              **THE COURT:**  That's what I'm trying to get to.

10             **MR. NAOUFAL:**  That is correct.

11             **THE COURT:**  That's all I want for now.

12             **MR. NAOUFAL:**  Okay.

13             **THE COURT:**  Thank you.

14             So Mr. Gao's argument is, this is a proper RFA

15   because this is not a disputed fact.  I am hearing testimony --

16   well, not testimony but I am hearing argument that it is a

17   disputed fact.  I am -- I'm convinced it's a disputed fact.  I

18   -- so that it -- that the answer to this interrogatory may

19   provide information that's relevant to the claims and defenses

20   we're going to get to in a moment.

21             I've already told you what I think about that but

22   you'll have an opportunity to disabuse me of that position and

23   that's perfectly fine and that's why we're here.

24             Right now we are arguing -- we are discussing the

25   very limited issue of whether an RFA can or should be used to

1   obtain an admission over a fact that is disputed.

2        MS. HAIDAR:  I'd like to add a few points, Your

3   Honor.  So it's our understanding from not only their

4   objections but the brief that was written that the primary

5   contention is not that the fact that Mr. Struck spoke to the --

6   to Mr. Ivanov, the reporter, that that is in dispute but that

7   the entire subject matter of whether or not there was

8   communications is relevant because they argue that it falls

9   under the umbrella of defamation-related claims.

10        THE COURT:  We're going to get to relevance.  I don't

11   want to hear argument about relevance right now.  My question

12   is very straightforward.  Is the RFA -- is RFA 69 a proper use

13   of the RFA mechanism when the Ninth Circuit has very explicitly

14   stated that RFAs are not to be used to obtain admissions over

15   disputed facts?  That's the only question.  We're going to get

16   to relevance.  I promise you.

17        MR. BHISHARAT:  And we agree with Your Honor's

18   summation of how the Ninth Circuit has viewed it.  I think

19   where there might be this split -- and it would be helpful for

20   Your Honor to weigh in and it's actually quite informative how

21   counsel has articulated this -- is that it's supposed to

22   whether the fact itself is in contest -- is contested, not how

23   that fact may be used or admitted later on down the line.

24        The way I understand Your Honor's question is, is

25   there a dispute as to whether or not information was provided

33

1   to the reporter, yes or no?

2           **THE COURT:**  Right.

3           **MR. BHISHARAT:**  And the question as answered, if I'm

4   understanding, is not that there's a denial that information

5   was provided.  It's not that the fact itself is disputed.  It's

6   that if admitted, the fact's use later on down the line is what

7   will be disputed depending on how it's being utilized.

8           Our understanding is that that isn't what the Ninth

9   Circuit's holding is necessarily stating, that it's supposed to

10  be that if the question of whether the light was red or green

11  is contested, you're not supposed to use the RFA to say, hey,

12  you have to admit that the light was green, right?

13          **THE COURT:**  Correct.

14          **MR. BHISHARAT:**  Our understanding is that that's

15  actually not what's being disputed here, that it's not a denial

16  of the fact that information was provided by Mr. Struck.  It's

17  that there's a concern as to whether or not the use of that

18  down the line will be used for improper purposes or irrelevant

19  purposes.

20          **THE COURT:**  I understand that that's part of what's

21  being addressed here.  I sua sponte -- it wasn't in their

22  brief.  It wasn't in yours.  I sua sponte raised the issue

23  because I must as to the proper use of this discovery vehicle.

24  The answer to whether it is properly used is whether there is a

25  dispute as to the fact.

34

1          I agree with you, Mr. Bhisharat, but I did ask that

2   question and I am hearing from Mr. Struck's counsel that there

3   is a dispute as to whether Mr. Struck spoke to that reporter.

4   That's what I'm hearing.  That's what --

5          Is there a clarification for that, Mr. Naoufal?

6          **MR. NAOUFAL:**  Your Honor, I -- we stood on objections

7   to this RFA.  So I don't -- I cannot as counsel make a fact

8   representation on behalf of my client whether or not he spoke

9   with this reporter.

10          **THE COURT:**  I'm asking if there's a dispute as to

11   this issue.

12          **MR. NAOUFAL:**  There is a dispute, yes, Your Honor.

13          **THE COURT:**  Okay.

14          **MR. NAOUFAL:**  I --

15          **THE COURT:**  Okay.  And let's --

16          **MR. NAOUFAL:**  -- just don't know what the dispute is.

17          **THE COURT:**  -- move on.  Okay.  Well, but, see, here

18   -- therein lies the problem.  With all due respect, this is not

19   why you would use -- this is -- I should say this is why you

20   would use an interrogatory to get to the bottom of this.  This

21   is why you would use a deposition to get to the bottom of this.

22   This is precisely why a request for admission is not the proper

23   way to get to this.

24          But let's move on because, quite frankly, unless you

25   can persuade me that there is relevance anywhere, it doesn't

1   matter.  The answer to this question doesn't matter.  So

2   perhaps it is a better use of everyone's time if the parties

3   agree that we move on to relevance.

4           **MR. BHISHARAT:**  Certainly, Your Honor.

5           **MS. HAIDAR:**  Thank you, Your Honor, yes.

6           **THE COURT:**  Okay.  So now we're going to go to

7   Mr. Gao's first theory of relevance which I understand to be

8   that it is relevant to the declaratory relief that is sought

9   which is that their -- that a contract/partnership was formed

10  -- a 50/50 partnership was formed which also goes to the

11  contract theories.  Right.

12          Was there a partner -- was the partnership formed?

13  Did Mr. Gao perform?  Did Mr. Struck breach?  And I don't think

14  Mr. Gao's argument is that it goes to damages but -- so that

15  appears to be the first theory of relevance on which Mr. Gao

16  rests his argument.

17          So let me hear, please, from Ms. Haidar.

18          **MS. HAIDAR:**  Thank you, Your Honor.  So as to

19  relevance, it relates to several different elements when we're

20  discussing the oral agreement to form a partnership.  So the

21  entire case essentially rests on this business relationship

22  between the two men, between Mr. Gao and Mr. Struck.  And when

23  proving an oral agreement to form a partnership, we look at a

24  wide variety of evidence.

25          We look at -- essentially, we're going to have to go

36

1   to the jury and prove that this oral agreement was made and

2   we're going to have to prove not only was it Mr. Gao's

3   reasonable understanding that he was a partner but that also

4   Mr. Struck's defenses to that are not credible.

5           So if we -- if I can direct you to the exhibits that

6   we provided in Exhibits G through J.  These are statements that

7   Mr. Struck has made to various individuals, investors, people

8   that -- essentially co-workers, colleagues in the industry

9   where he has held out Mr. Gao as his partner.

10          **THE COURT:**  And can I just clarify?  I think you mean

11  starting with Exhibit F which is the dec that's used.

12          **MS. HAIDAR:**  The dec is included in that.  I was

13  specifically --

14          **THE COURT:**  Right.  But you said Exhibits G through

15  J.

16          **MS. HAIDAR:**  Right.  I was specifically referencing

17  the affirmative communications that Mr. Struck has made to

18  various individuals as introducing Mr. Gao as his partner but

19  you're correct, Your Honor.

20          **THE COURT:**  Understood, understood, fair enough.

21          **MS. HAIDAR:**  So when proving whether or not there is

22  this oral agreement for a partnership, we first have to look to

23  whether or not there was an existence of an agreement.  And

24  Mr. Gao's proper understanding of that -- and it's our

25  intention to go to the jury and to show them essentially a tale

1    of two Strucks, if you will.  Right.

2             We have Mr. Struck in 2018 saying that Mr. Gao is his

3    co-GP, he's the partner in San Francisco.  And then we have

4    Mr. Struck later claiming that Mr. Gao has nothing to do with

5    Struck Capital and that he's not a partner.

6             So how it relates specifically to this RFA is we

7    think it's important to establish that Mr. Struck provided this

8    information to Mr. Ivanov, this information that Mr. Gao was

9    allegedly an embezzler, that he had nothing to do with Struck

10   Capital, that he was never a partner in Struck Capital and that

11   this partnership never existed.

12            So going to the existence of that partnership and how

13   Mr. Struck informed his defenses is very relevant.  So any

14   information going to that defense is relevant.  Not only is the

15   existence of the partnership claim relevant to this RFA but

16   it's also breached.

17            So we ask for declaratory relief to show that there

18   was a partnership but in the breach of the oral contract, that

19   breach-of-partnership claim, we see that Mr. Struck violated

20   the basic duties of the partnership and not only -- and I know

21   we're going to get to the fiduciary duties later, the duty of

22   loyalty --

23            **THE COURT:**  Well, that's why I want to make sure

24   you're focusing your argument right now on declaratory relief

25   regarding the formation of the partnership and the elements of

 1   the contract claim.  I promise you we'll get to the fiduciary

 2   duty and duties of good faith and fair dealing.  We'll get

 3   there.  Please focus your argument right now on that first

 4   theory of relevance which is the contract claim.

 5          **MS. HAIDAR:**  Thank you, Your Honor.  So in terms of

 6   the contract claim, the existence of the contract, so the -- to

 7   prove that this contract did exist, we want to explore and

 8   we're in the fact-finding stages of the litigation.  We would

 9   like to look at all the different elements, all the different

10   evidence that Mr. Struck has in his possession as it relates to

11   the strength not only of our allegations but our defenses to

12   his claims.

13          **THE COURT:**  Okay.  So let me stop you at formation.

14   We'll get to breach in a second.  How does the answer, "Yes, I

15   spoke to the reporter for purposes of this article" or "No, I

16   did not speak to the reporter for purposes of this article"

17   form contract formation?

18          **MS. HAIDAR:**  Thank you, Your Honor.  So when looking

19   at the contract formation, we also have to see that there was a

20   meeting of the minds.  Right.  And --

21          **THE COURT:**  I'm going to stop you again because

22   you're not answering my question which is the fundamental flaw

23   in Mr. Gao's argument.  There is all sorts of information that

24   will inform the question of whether a contract was formed.  The

25   point that I keep making is whether Mr. Struck spoke to this

1    reporter for purposes of the article, in my mind, doesn't

2    inform contract formation.

3           What he might have said does inform contract

4    formation but that's not what RFA 69 seeks to obtain.  RFA 69

5    seeks one answer and one answer only.  Yes, I did -- no, I

6    didn't -- speak.

7           And I want you to tie that if you can -- not the

8    facts of what he might have said.  I want you to tie that

9    particular response because that's the only thing I'm working

10   with here -- the response to that particular question.  I want

11   you to tell me how that informs contract formation because I'm

12   not convinced.

13           **MS. HAIDAR:**  Thank you, Your Honor.  Oh, please.

14           **MR. BHISHARAT:**  It's up to you.

15           **MS. HAIDAR:**  No, please, go ahead.  No, go ahead.

16           **MR. BHISHARAT:**  Are you sure?

17           **MS. HAIDAR:**  Yes.

18           **MR. BHISHARAT:**  To Your Honor's point, the way that

19   it informs the contract formation element that we have to meet

20   for both the first and second causes of action is this.  We

21   bear the responsibility of establishing that there's an

22   agreement that is not created or bound within a written

23   document that would normally be sort of the pro forma, hey,

24   jury, hey, trier of fact, here it is.

25           So in order to help establish the existence of that

1   formation, we look to the circumstantial evidence of how the

2   parties conducted themselves and we've looked to that

3   particularly because we want to be able to compare how

4   Mr. Struck communicated with certain individuals about the

5   relationship with Mr. Gao prior to the dispute as opposed to

6   how those communications exist now.

7        The reason why that's important for formation

8   purposes is because part of what we have to do is show that

9   there was an understanding between the two men, that they had,

10  in fact, formed a partnership and were employing their work,

11  their business, whatever it would have been, in furtherance of

12  that partnership.

13        So the comparative piece that comes from this, to

14  that point, is we have to establish it.  We -- I think we can

15  all agree that Mr. Struck is going to contest that that exists,

16  that there was, in fact, no -- however you want to phrase it --

17  a meeting of the mind, no existence, that no agreement of that

18  kind existed.

19        We are going to be putting forward evidence showing

20  that here's affirmative evidence that shows that it does.  One

21  of those pieces of affirmative evidence is how the parties

22  conducted themselves as it related to correspondence with the

23  business community and with the press at large.

24        And we want to be able to show you can trust that

25  this is, in fact, the agreement that Mr. Struck agreed with and

41

1    you can disregard his now -- taking the stand now saying that

2    this didn't exist by comparing how he spoke to the press then

3    versus how he spoke to the press now.

4            **THE COURT:**  And I don't disagree with that.  The

5    issue that I have is that this RFA doesn't get you there.  This

6    RFA only establishes that Mr. -- at best -- in the best of

7    cases for you with an unqualified admission, it only

8    establishes that Mr. Struck spoke with this reporter for

9    purposes of the article, whatever that may mean, and we'll get

10   to that in a moment, I'm sure.

11           But that's all it establishes.  It doesn't give you

12   the comparative facts that you want and that you need.  I

13   understand why you need to go there.  This vehicle doesn't get

14   you there.  That's the problem with this RFA.  You -- and,

15   fundamentally, the problem with Mr. Gao's argument throughout.

16   This RFA gets you a piece of information that does not go, in

17   my judgment, to contract formation, Mr. Gao's performance or

18   Mr. Struck's breach of the contract.  It just doesn't.

19           And I understand that the underlying facts may but

20   this particular fact does not.

21           **MR. BHISHARAT:**  And I appreciate that, Your Honor.

22   Let me -- can I address that very briefly?

23           **THE COURT:**  Yes, please.

24           **MR. BHISHARAT:**  So I think the reason why we may be

25   having this difference of opinion -- your sua sponte ruling has

42

1   actually helped highlight that.  The threshold discussion for

2   our purposes of being able to use that evidence in the way that

3   I've described is, in fact, confirmation that Mr. Struck did,

4   in fact, give this information.  If he didn't --

5              **THE COURT:**  But you're -- but, again -- sorry to

6   interrupt.  But that's not what you get from this RFA.  What

7   you get from this RFA in the best of all cases is that

8   Mr. Struck spoke with the reporter for purposes of the article.

9   It doesn't say what he said -- it doesn't tell you what he

10  said, what he didn't say, what his counsel said, what his

11  counsel didn't say.

12             You are looking -- you are trying to use a request

13  for admission to obtain content of that communication and

14  that's not what this RFA does.  Let's say your RFA was, admit

15  that you told Ivanov that Mr. Gao is an embezzler.  That gets

16  you the contact -- the content that you need.  Admit that you

17  spoke with the reporter for purposes of the article doesn't get

18  you the contact that you are -- content that you are telling me

19  is the basis for Mr. Gao's first theory of relevance.  That's

20  the problem that I'm having.

21             **MR. BHISHARAT:**  Okay.  Understood, Your Honor.  I

22  think the approach that we had taken was to confirm that this

23  was, indeed, the communication -- that this information had, in

24  fact, made its way into the article via Mr. Struck --

25             **THE COURT:**  But that -- but your RFA doesn't get you

1   that.

2          MR. BHISHARAT:  Well, it establishes that the article

3   did not appear sort of to -- not to borrow your phrase, but did

4   not appear sua sponte, right, that this is not something --

5          THE COURT:  No, it doesn't establish that either.

6   That's the problem.  It doesn't establish anything about how

7   the article came to be.  It doesn't establish anything about

8   the source of any of the facts other than where the article

9   says, according to Counsel, da, da, da, da, da, right, X, Y, Z.

10          Sorry to whoever is going to transcribe this hearing

11   because that is not transcribable.  So please replace that with

12   X, Y, Z.

13          But it just doesn't do that and that's the problem

14   that I have.  That's the fundamental issue that is -- that

15   prevents me from finding relevance.  I understand -- and here's

16   the thing.  And maybe -- and I heard you folks make this

17   argument at the informal discovery conference which is it's the

18   first step in our -- and I think Ms. Haidar said this earlier.

19   It's our first step in information gathering that may get us

20   there.

21          That theory of relevance, the -- it's likely to lead

22   to the discovery of admissible evidence no longer exists in

23   Rule 26(b).  That was deleted in 2015 with the 2015 amendments.

24   So relevance today is not a piece of the puzzle that will maybe

25   lead us there.  Relevance today is to the claims and defenses

44

1   that exist at this moment.

2          And so I -- so my job is to say -- is to determine

3   whether the particular fact, which is a submission yes or no

4   that you're going to obtain, goes to contract formation.  It

5   does not.  It does not go to Mr. Struck's -- Mr. Gao's

6   performance.  It says nothing about Mr. Gao's performance.

7          Whether Mr. Struck spoke to a reporter says nothing

8   about Mr. Struck's performance.  What he might have said, if he

9   did speak to the reporter, absolutely goes to Mr. Gao's

10  performance but this particular fact does not.  Nor does it go

11  to breach because here's the thing.  Here's the thing about the

12  -- what I am hearing about the theory of breach.

13         And correct me if I'm misunderstanding this theory of

14  relevance but the argument is, if he spoke to the reporter, he

15  breached this contract and --

16         **MR. BHISHARAT:**  No, no.  I apologize if that's how it

17  was coming out, Your Honor.  It's -- this is, in particular,

18  more towards the point of the first element of a breach-of-

19  contract claim which is the existence of the agreement.

20         **THE COURT:**  Okay.  Well, you spent a significant

21  amount of time talking about how it goes to breach in your

22  brief -- and that's fine.  You can withdraw that if you'd like.

23         **MR. BHISHARAT:**  Sure.

24         **THE COURT:**  But you spent a paragraph telling me all

25  the ways that Mr. Struck breached the contract.

1        **MR. BHISHARAT:**  Correct.  But it's -- again, the

2   evidence is not just -- it's not in a vacuum only for one

3   specific purpose.  As we've described it, this also is going to

4   the idea that there was the agreement in its first instance.

5   Now --

6        **THE COURT:**  Well, we talked about agreement.  I

7   addressed agreement.  I now had moved on to breach but if you

8   -- and that's fine.  If you want to go back to formation, I'm

9   happy to do that for a few more minutes.  I mean, we can only

10  do this for so long but what I had said -- what I was trying to

11  say was -- and I apologize if I wasn't clear -- was it doesn't

12  go to formation.  It doesn't go to Gao's performance.  It also

13  doesn't go to the Struck breach.

14       Yes, Ms. Haidar.

15       **MS. HAIDAR:**  Thank you, Your Honor.  So in our first

16  amended counterclaim, if you look at Paragraphs 125 and 126, we

17  provide allegations under breach of oral contract, the

18  partnership agreement in our second cause of action.  And we

19  explain that Mr. Struck had certain obligations to Mr. Gao

20  under the umbrella of the partnership.

21       And within those obligations, part of the breach was

22  the fact that he has been claiming that Mr. Gao was terminated.

23  He has been claiming that Mr. Gao was -- he wasn't owed 50

24  percent of these -- of the ownership of the entities.  So it is

25  part of our second cause of action for breach of oral

46

1   partnership.

2           **THE COURT:**  But here's the concern that I have

3   because an even bigger concern with the theory of relevance

4   that this RFA provides information about breach.  The breach

5   has to be a breach of the contract and I don't have any

6   evidence that tells me that Mr. Struck was not allowed under

7   the contract to speak with a reporter.

8           **MS. HAIDAR:**  That --

9           **THE COURT:**  That is not part of the contract.  Now,

10  if you're going to say, he shouldn't have spoken to the

11  reporter and said these horrible things about Mr. Gao because

12  he had a fiduciary duty to his partner, we're going there but

13  this is not where we are right now.  I'm stuck on the contract

14  claim.

15          So for something to go to breach of the contract for

16  discovery to be relevant to the element of breach, you have to

17  show me that the breach is as to a term of the contract and

18  this you have not done.

19          **MS. HAIDAR:**  Understood, Your Honor.  So in terms of

20  fiduciary duty --

21          **THE COURT:**  No, we're not there yet.

22          **MS. HAIDAR:**  Okay.

23          **THE COURT:**  We're not there.  Are we done with breach

24  of -- I am not persuaded that the response I admit or I deny

25  that I spoke with the reporter for purposes of the article

47

1    informed any of the four elements of the contract claim.

2    That's where I'm landing.  Have you given me all and your best

3    arguments?

4         **MR. BHISHARAT:**  At this point, Your Honor, I think

5    we've provided the information that we think is most relevant

6    to establish why the admission does bear on the existence of

7    the agreement as well as what would effectively be the

8    explanation for Mr. Struck as to why he has not acknowledged

9    the partnership or paid out.  I mean, that's kind of the

10   argument with the breach is that the information as being

11   provided to the reporter is providing that context.

12        But we understand your ruling or your interpretation

13   of the RFA itself is effectively -- it's not so much the

14   relevance as much as it's too broadly attenuated to what we're

15   trying to get at and that a more narrowed RFA or other

16   discovery vehicle would be getting at fair game.

17        **THE COURT:**  Yes.  That is exactly my thought.

18        **MR. BHISHARAT:**  And I would say, if we could before

19   our hearing closes, it would be helpful then to hear Your

20   Honor's opinion then as to -- should further discovery go down

21   this route, we anticipate we will probably equally -- we'll be

22   right back here, I think, as to whether or not conversations

23   with third parties like reporters is fair game or if it's

24   germane.

25        And so I just wanted to preview that.  I know we

1    still have other argument but I just wanted to preview that --

2            THE COURT:  Fair enough.

3            MR. BHISHARAT:  -- potential concern we have given

4    this discussion.

5            THE COURT:  Fair enough.  Remind me of that at the

6    end.

7            MR. BHISHARAT:  Of course.  Thank you, Your Honor.

8            THE COURT:  Thank you.  Does Mr. -- do you --

9    Mr. Naoufal, do you have any argument that you want to make

10   with respect to this issue?

11           MR. NAOUFAL:  Unless Your Honor has any questions,

12   I'm prepared to move on to the next issue.

13           THE COURT:  I have no questions.

14           Okay.  All right.  So now -- so my ruling is I have

15   -- I am going to adopt my tentative that there is no relevance

16   as to the -- of this RFA 69 as to the contract claim and as to

17   the declaratory relief claim.  Okay.

18           Moving on to Mr. Gao's second theory of relevance

19   which is that the RFA 69 seeks information that's relevant to

20   the breach of fiduciary duty and implied covenant of good faith

21   and fair dealing and how partners should be dealing with each

22   other that are implied -- well, that are codified in California

23   Government Code but also implied in any agreement.

24           So let me -- I've already stated that I'm not

25   convinced that the particular answer to this RFA goes to those

49

1   theories -- those claims specifically because the allegation

2   that Mr. Gao -- that Mr. Struck -- excuse me -- spoke with a

3   reporter even exists anymore.

4           So I -- Ms. Haidar, if I could hear from you as a

5   starting point, please.

6           **MS. HAIDAR:**  Thank you, Your Honor.  So due to the

7   partnership and the oral contract leading to that agreement to

8   form a partnership between Mr. Gao and Mr. Struck, underlying

9   that partnership are these fiduciary duties which include the

10  duty of loyalty and the duty of care.  And for the purposes of

11  responding, I'm also going to include that in terms of the

12  covenant of good faith and fair dealing under the same

13  umbrella.

14          So Mr. Struck, despite knowing that he was in a

15  partnership with Mr. Gao, has made comments to the public which

16  include, again, colleagues, associates, investors, members of

17  the press.  In particular, I'd like to point you to the

18  comparison that we mentioned earlier which was his statements

19  to the *Forbes* magazine reporter in Exhibit M where he is

20  explaining that Mr. Gao was his co-GP in Struck Capital.

21          So these duties of loyalty and care -- and we allege

22  this in our amended counterclaim.  A breach of that is -- a

23  breach of that occurs when Mr. Struck claims, no, Mr. Gao was

24  never a partner, when Mr. Struck claims that Mr. Gao is an

25  embezzler, that he contributed nothing to Struck Capital.

1              It's our understanding that Mr. Gao -- or Mr. Struck

2    either through his attorney or individually provided

3    information to Mr. Ivanov for his use in the article supporting

4    those claims and allegations which goes to breach.

5              So if it is true that Mr. Struck did provide this

6    information, it goes directly to prove that, yes, this article

7    correctly quotes Mr. Struck.  This information was provided.

8    This article wasn't making anything up in terms of this direct

9    citation.  It goes to show that Mr. Struck in his allegations

10   that Mr. Gao was somehow connected to the Chinese Communist

11   Party in their involvement in Wall Street, that that's part of

12   the breach.

13             Specifically, if I could direct Your Honor to

14   Mr. Struck's amended complaint, they do discuss in Paragraphs

15   41 through 47 --

16             **THE COURT:**  Hold on.  I am there.

17             **MS. HAIDAR:**  -- 48 through 56 and as well as 64

18   through 66 -- they reference these allegations specifically.

19   They say Mr. Gao was an embezzler, he was not a partner, he had

20   nothing to do with Struck Capital and that Mr. Gao was involved

21   in this Aurora SPAC which has ties to the Communist Party.

22             So -- and I know I mentioned this and I think I got

23   ahead of myself in the beginning but I have had the distinct

24   pleasure of reviewing Mr. Struck's productions both in the

25   arbitration, which is incorporated here in the Federal case and

51

1    we are unaware of any piece of evidence going to these

2    allegations.  To our knowledge, the *Zenger News* article is the

3    only supporting evidence to show that -- specifically this

4    Aurora SPAC claim, that he was making this not only in his

5    complaint but that he made it to the reporter as evidence of

6    that breach of fiduciary duty.  And so our intent in

7    propounding the RFA was to understand, again, did he provide

8    this information?  Is it accurate?

9            And if you look at Mr. Struck's brief, he does accept

10   that when it comes to the winding up of a partnership, these

11   fiduciary duties, they don't end.  So even though the

12   partnership, if you find that it did dissolve in February of

13   2021, those duties remain during this winding-up period.

14           And just to clarify and for just background, that

15   winding-up period continues during the process where you --

16   essentially where you split the partnership and you allocate

17   specifically who owns what; and as it stands right now, we are

18   in that winding-up period.

19           We also do allege in our brief and relatedly in

20   the -- in our amended counterclaim generally as to fiduciary

21   duty and breach, that Mr. Struck has intervened with this

22   winding up by claiming now all of a sudden to third parties

23   that -- that Mr. Gao was nothing to Struck Capital.

24           So knowing that these duties do continue to exist

25   during this winding-up period, any allegation that these duties

52

1   no longer exist, it's unpersuasive.  So that is essentially

2   where we were coming at with regards to RFA 69.

3          **THE COURT:**  And I understand that but I have the same

4   problem with the fiduciary du -- well, no, it's a slightly

5   different problem.

6          There is no question in my mind that what Mr. Struck

7   may have said to anybody about Mr. Gao for whatever period, the

8   issue of whether the winding up and winding down and the

9   disassociating and all of that, that's going to go to the

10  merits.  That's not something that I have to be worried about

11  in my decision.

12         I disagree, by the way, with Mr. Struck's argument

13  that because Mr. Struck takes the unilateral position that the

14  winding -- that he owes no fiduciary duties to Mr. Struck, then

15  I shouldn't provide discovery on this.  That's -- my job is to

16  provide discovery to inform the existing claims and then you

17  folks will duke it out in the end as to the merits.

18         I understand the argument that as -- Mr. Struck's

19  argument that as a matter of law there is no fiduciary duty,

20  and I appreciate the argument, but my discovery umbrella is

21  much broader than what ultimately will be used at the merits

22  stage of this case.  So I am not persuaded by that argument.

23         Never the -- in any event, that argument makes no

24  difference to me because where I am stuck is the fact that,

25  number one, as I keep saying, this RFA does not seek the

1   content information of the communication that Mr. Gao keeps

2   saying makes this RFA relevant.  All it does is it seeks the

3   answer to the question, did you speak to this reporter?

4         Now, in -- under the fiduciary duty claims -- and

5   that's just the umbrella for all three.  Hope we all understand

6   that.  Under the fiduciary duty claims, I do believe that it is

7   relevant whether Mr. Struck spoke to the reporter in the first

8   instance for purposes of the article if that claim still

9   existed.  But it does not.

10        Your -- Mr. Gao's fiduciary duty claims now exist

11  only as to what he might he said to investors, directly to the

12  public at large, to whoever.  But the allegation that he

13  breached his fiduciary duties by speaking to a reporter no

14  longer exists; and without that allegation, I find no relevance

15  to this RFA.

16        **MS. HAIDAR:**  May I respond to that, Your Honor?

17        **THE COURT:**  Yes, please.

18        **MS. HAIDAR:**  So if I could first just as a threshold,

19  as a threshold subject, if we could turn to the stipulation

20  itself.

21        **THE COURT:**  No.  And here's why we're not turning to

22  the stipulation.

23        The stipulation is nothing more than a means to an

24  end and it was in the end is the only document that I need to

25  be looking at to determine relevance and that is the first

54

1    amended counterclaim.

2              MS. HAIDAR:  Understood.

3              THE COURT:  If an allegation exists in the first

4    amended counterclaim, then I will find relevance; if it

5    doesn't, I don't know how I could be persuaded to find

6    relevance.  So I understand the entire argument.

7              I think that the argument that both parties went down

8    on the stipulation is -- I don't want to say "red herring"

9    because that adds a pejorative tone to it but it doesn't inform

10   the job that I have to do today.  Because regardless of what

11   the parties agreed to do under the stipulation, if there's a

12   breach of that agreement -- that, to me, is an agreement,

13   right?  If there was some kind of a breach of that agreement,

14   then you've got a whole other issue.  But really, the

15   stipulation was just -- was the avenue to get you folks to the

16   operative counterclaim.  And so I don't need to talk about the

17   stipulation.

18             MS. HAIDAR:  Okay, Your Honor, understood.

19             In that case so I'd like to add that of course you're

20   correct.  We did remove that factual allegation in the

21   counterclaim specifically referencing the article, Mr. Ivanov

22   and the reporter.

23             Now I would -- I would distinguish that act, however,

24   by saying just because that factual statement is no longer in

25   the counterclaim, does not mean that the act of speaking to a

1  reporter and claiming that Mr. Gao was an embezzler and not a

2  partner at Struck Capital, and that Mr. Gao contributed -- or

3  did not contribute to Struck Capital, that that is not

4  connected to our remaining claims which are still live and

5  which weren't removed.

6          So in particular, if you look at our claims and our

7  allegations for breach of fiduciary duty -- and I'd like to

8  direct you in particular to paragraph 145.

9          THE COURT:  I am there.

10         MS. HAIDAR:  So we allege that breach of this

11  fiduciary duty occurred when Mr. Struck claimed that Mr. Gao

12  was terminated, that Mr. Gao was never a partner in the

13  partnership entities, that he was not only terminated but

14  terminated for cause, that he was guilty of embezzlement and

15  that he had not been contributing to the partnership at large.

16         And it is our contention that a singular fact can

17  have an application to different rights, to different causes of

18  action.  So while it is true that the act of speaking to the

19  reporter does speak to those defamation claims that we

20  dismissed, it can also speak to the breach of fiduciary duty

21  claims.  Two things can be true at the same time.  So we allege

22  that, yes, we did remove that but that doesn't preclude a line

23  of inquiry as to whether or not Mr. Struck made these

24  statements under the breach of fiduciary duty claim to

25  Mr. Ivanov.

1          **THE COURT:**  Except that your breach of fiduciary duty

2    claim is now limited to the statements that Mr. Struck did or

3    did not -- who knows -- make to everybody except the reporter.

4          **MR. NAOUFAL:**  So Your Honor, if I may jump in?

5          **THE COURT:**  Uh-huh.

6          **MR. NAOUFAL:**  I think that might be why the parties

7    did have a fairly robust discussion about the scope of the

8    stipulation because -- and I know you don't want to go down

9    that.  I'm not -- I won't get into the details of the back and

10   forth but ultimately what occurred with it was the removal of

11   six defamation-related claims and certain factual allegations

12   that were agreed to be removed in the context of the

13   stipulation removing the six defamation-related claims.

14          The parties maybe have a dispute -- and obviously we

15   do -- as to whether or not that would include inquiring into

16   the facts underlying some of those facts that came out, if

17   they're applicable in other contexts and other ways, and that's

18   what Ms. Haidar is referring to with respect to paragraph 145.

19   Those same kinds of statements are also made in paragraphs 159

20   and 173 with respect to the other remaining sort of breach of

21   fiduciary duty claims.

22          So that, I think, is why we ultimately went down that

23   path was to get to the point that I think Your Honor -- it

24   sounds like Your Honor is falling on which is, it was in the

25   complaint before, it was taken out of the complaint.  And Your

1  Honor interprets that to mean, it is now no longer of relevance

2  to anything in the complaint.  That the removal of it now cuts

3  off inquiry into it.  And that, I don't think was really the

4  intent with respect to -- at least with respect to these

5  claims -- that inquiry into whether or not these things

6  happened or didn't with respect to these claims would suddenly

7  be off the table.  That, I think, is the reason why the parties

8  had such a robust discussion about the scope of the

9  stipulation.

10         But if I'm understanding and that's -- and this is

11  actually the question I was going to ask before Ms. Haidar

12  provided you that additional context -- am I correct then in my

13  interpretation of what Your Honor is finding, that because the

14  allegation, the general allegation about this activity no

15  longer is in the complaint, that its removal now, by default,

16  sort of cuts off inquiry into this -- into this set of facts

17  even if it may have bearing on other causes of action.  That's

18  what I'm trying to sort of wrap my head around; because again,

19  it does inform that question, that ultimate question at the end

20  that I had --

21         **THE COURT:**  Right.  And that is exactly where I went

22  with this.

23         I'm going to start by looking at -- let me find it --

24  the deletion of what was paragraph 114(d).  That, no longer

25  exists.  And that one is -- that's the smear campaign where

 1   Mr. Gao alleged in the original counterclaim on information and

 2   belief, reaching out to multiple public relations firms for the

 3   specific purpose of placing negative and false news articles

 4   against Mr. Gao and Shima.  So that no longer exists.

 5          And then the fiduciary duty claims don't even contain

 6   an allegation about speak -- the original ones don't even

 7   contain an allegation about Mr. Struck speaking with a reporter

 8   so nothing was deleted from there.  But if you go to the causes

 9   of action --

10       **(Pause)**

11          Let me find the -- bear with me because something

12   stuck out to me that I wanted to point out to the parties.

13       **(Pause)**

14          Well I guess that was the point that I was making.

15   The actual allegations about speaking to a reporter are gone

16   from everywhere in the first amended counterclaim.

17          And so, yes, I do believe -- whether you prevail or

18   not is a whole other issue -- but I do believe that Gao does

19   still have, despite the stipulation, a fiduciary duty -- breach

20   of fiduciary duty and good faith and fair dealing and all of

21   that under that umbrella, for what Mr. Struck may have said to

22   people other than the reporter.  And that is precisely the

23   issue of the anti-SLAPP motion that resulted in the stipulation

24   that ultimately resulted in the operative counterclaim that I'm

25   dealing with.  And so the fact that those allegations are now

59

1    gone from the fiduciary duty claims is the basis for my saying

2    I see no relevance here.

3            **MS. HAIDAR:**  So yes.  I mean we did specifically

4    remove the claim that -- that Mr. Struck engaged in a smear

5    campaign against Mr. Gao and directly used public facing

6    organizations like news agencies and et cetera and that is

7    true.  But I would make that distinction that because we

8    removed that factual claim as it relays to the defamation

9    claim, those defamation causes of action -- which are no longer

10   live, that doesn't preclude the remaining factual allegations

11   that Mr. Struck made these -- made these allegations that he

12   was terminated, no longer partner, et cetera, to -- and we say

13   this -- the public at large.

14           So we don't limit our universe of allegation solely

15   to advisors, employees and contractors.  We do say to the

16   public at large.  And while we don't specifically note to

17   reporters, it is within that same category "to the public at

18   large".  Because through Mr. Ivanov, Mr. Struck has

19   communicated to the public in the most broad way possible that

20   he believes or he is claiming and alleging that Mr. Gao had

21   nothing to do with Struck Capital, that he is an embezzler, a

22   Chinese spy, part of the Aurora SPAC.

23           And by maintaining that language, we have reserved

24   that -- that line of inquiry because -- because again, when

25   looking at these statements, yes, originally we did also

60

 1   include these defamation claims and we did say, yes, you know,

 2   we believe this is a smear campaign.  But that doesn't preclude

 3   the fact that these communications can also -- can also support

 4   our claims towards breach of fiduciary duty.

 5           THE COURT:  I don't disagree with that.  I don't

 6   disagree that the fact that Struck may have communicated to the

 7   public these things is relevant to the fiduciary-duty claim.

 8           The problem that I'm having is that there is no

 9   longer any allegation about communicating to the reporter and

10   that's the problem that I'm having.  If those were still there,

11   I would grant your motion to compel but they are not there.

12   And the problem is that you are trying to -- from what I'm

13   seeing in the argument that keeps being repeated is -- well now

14   it's kind of expanded a little bit but you're saying that the

15   way through which Mr. Struck communicated to the public at

16   large was through these publications; and yet, you've deleted

17   that allegation.  And that's the problem that I'm having.

18           I do believe you have a breach of fiduciary duty

19   claim.  If he said all these things, you know, who knows if you

20   can prove it or not and who knows if it will prevail with the

21   trier of fact.  But the fact that you removed -- because of the

22   anti-SLAPP meet and confer that specifically addressed the

23   issues of communicating with the reporter -- because that's all

24   gone, I don't find the link to this RFA.  That's the problem I

25   have.

1          **MR. BHISHARAT:**  So okay.  Thank you, Your Honor.

2          **MR. NAOUFAL:**  Your Honor, may I?

3          **THE COURT:**  Just -- in a moment.

4          **MR. BHISHARAT:**  I think then that it does then get to

5     the -- that ultimate question that I know we're reserving for

6     the end of what then future discovery -- what future discovery

7     would or would not be warranted because the -- the removal of

8     fact-allegations, as related to the agreement via the

9     stipulation to take out the defamation-related claims -- did in

10    fact did remove those fact allegations.  But evidence of the

11    ongoing breach can include a wide variety of conduct and

12    activity unrelated to the defamation-related claims.  And so --

13         **THE COURT:**  I understand that.  I understand how it

14    goes to your breach of fiduciary duty claim.

15         **MR. BHISHARAT:**  Yeah.

16         **THE COURT:**  I have no doubt -- and that's why I said,

17    if we were dealing with the original counterclaim, I would

18    grant your motion to compel.  I just can't right now because I

19    am finding -- I am not finding the connective tissue, if you

20    will, to any allegation in the operative counterclaim.  That's

21    the concern I have.

22         And we're going to get to future discovery, I promise

23    you.  I'm not sure I'm going to give you a ruling on it but

24    we'll get to a discussion about it so that we can tee up.  I

25    understand that you've had discovery cutoff extended, right?

62

1    And so now you have significant more time to address it so I

2    understand you're going to go there.  That's fair.  We'll get

3    to that in a moment but let's resolve this.

4            Okay.  Mr. Naoufal?

5            **MR. NAOUFAL:**  Just as a preliminary matter for the

6    record, I'd like to note that Exhibit M is not at all how

7    Ms. Haidar has characterized it.  She stated in Exhibit M that

8    Mr. Struck stated to Forbes that Mr. Gao was a co-GP of Struck

9    Capital.  That is not what that exhibit says.  And the

10   reference to Mr. Gao being a co-GP makes sense in the context

11   of DDC (phonetic), which the parties have recognized that

12   Mr. Gao was a minority general partner of.  So I'd like to just

13   put that on record.

14           With respect to RFA 69 and its relation to the breach

15   claim, what we have before the court, Your Honor, is the

16   language of the RFA 69 in particular, whether Mr. Gao spoke to

17   this reporter for his use -- "his," being the reporter -- in

18   the Zenger News article.

19           The allegations following the anti-SLAPP briefing,

20   meet and confers and ultimately at this -- the stipulation and

21   ultimately the first amended counterclaim, was to eliminate

22   paragraphs in the complaint that precede the causes of action.

23   The allegations were not eliminated from individual causes of

24   action, including defamation and false light.  Rather, those

25   causes of action were removed entirely in light of the

1    stipulation.  But also the allegations upon which those and

2    other causes of action were based were eliminated from the

3    complaint.

4            So I would disagree with Mr. Gao's counsel that the

5    removal of these allegations related to Mr. Struck's alleged

6    conduct from February or March 2021 to the date the stipulation

7    was entered -- which was in September or Novem -- September

8    2022, that conduct was subject to the stipulation and the

9    amended counterclaim reflects that agreement which was to

10   remove the conduct that was alleged during that time period

11   from the first amended counterclaim.

12           So the implication of course of that is that RFA 69

13   and potentially any others -- though before us is the specific

14   wording of this RFA -- are not relevant to anything that

15   currently exists in the first amended counterclaim.

16           During the IDC leading up to this hearing, Your

17   Honor, I noted on several occasions that all we have is the

18   allegations that are made in the first-amended counterclaim.

19           Mr. Bhisharat speculated on numerous occasions what

20   this conduct that they are seeking to uncover through discovery

21   might be relevant to and I continually referred back, as I do

22   now, to this complaint.  And based on what is in it, RFA, as

23   written, is not relevant.

24           With respect -- I hesitate, Your Honor, to go too far

25   beyond the discovery that's before the Court at this moment.

64

1          I note that to the extent we will discuss future

2     discovery and whether Your Honor will issue a specific order

3     regarding future discovery, I would note that Mr. Gao, as

4     alleged in the complaints, was terminated in February 2021.

5     Only days later, counsel for Mr. Gao communicated to Mr. Struck

6     and his counsel that there was litigation pending.

7          The first complaint in State Court was filed the next

8     month.  Arbitration was commenced shortly thereafter.

9          It was not until April 2022, over a year later --

10    over a year after Mr. Gao was terminated, that the federal

11    complaint was filed and that the Zenger News article was

12    written.  So the timing is incredibly important for an

13    assessment of breach of fiduciary duty.

14         There -- we make an argument in our papers that the

15    dissolution of the partnership occurred as early as August 2020

16    which is when Mr. Gao alleges it occurs.  The termination in

17    February 2021 which is when Mr. Gao was terminated.  The filing

18    of the State Court action, arbitration action; and finally in

19    April '22, the federal action.

20         During that time, Your Honor, Mr. Gao opened and is

21    currently operating a competing fund.  He opened a competing

22    fund only months after his termination.  So the argument that

23    these duties continue to exist and Mr. Struck is not permitted

24    to conduct his action and affairs of Struck Capital -- which he

25    contends Mr. Gao was never a part -- does not comport with the

1   timeline of the partnership itself and its dissolution.

2          So again, I don't want to go too far ahead of this

3   RFA in question but to the extent we are discussing future

4   discovery in the confines of that, I would just like to preface

5   that argument.

6          **THE COURT:**  Okay well thank you for that.

7          We're not discussing future discovery at this point,

8   we are discussing the relevance of RFA 69 to Claims 3

9   through 5.  So we'll get there but as I said, I'm not sure I

10  will issue an order on it but that's fine.  I think we need to

11  have a conversation to tee up what the issues may be but then

12  everything has to play itself out before you folks come back to

13  me.

14         That said, I want to repeat, I disagree with the

15  merits of Mr. Struck's argument about whether the fiduciary

16  duties' existence today, under whatever theory Mr. Struck is

17  arguing it doesn't exist, is relevant to my question.  I think

18  that that goes to merit.  I have to assume that there is going

19  to be an argument from the other side saying it exists until

20  today as we are continuing to dissolve this partnership.

21         And I would say to you, Mr. Naoufal, that somebody

22  can leave one partnership, start a competing business and still

23  be minding the business of dissolving the prior partnership.

24  So I'm just -- number one, I don't think the argument is

25  relevant to the task at hand before me; and number two, I'm not

1    sure that I agree with the argument on its merits.

2            Nevertheless, nevertheless, it doesn't matter to you

3    because I'm not finding relevance and I won't grant on the

4    basis of Mr. Gao's second theory of relevance which is that the

5    answer to RFA 69 is relevant or provides information that

6    informs the breach of fiduciary duty claims as they are stated

7    in the first amended counterclaim.

8            So has Mr. Gao given me now his best argument and

9    final argument?  Because at some point we're going to need to

10   move on but I want to make sure that you folks are given an

11   opportunity to give me the best you've got.

12           MR. BHISHARAT:  No, Your Honor, we respect your

13   position on the scope of the amended complaints and the removal

14   of those allegations.  And obviously we will abide by them and

15   that kind of gets to the point of that.

16           I would just very briefly note, I was a little thrown

17   off by Mr. Naoufal's comment that Exhibit M doesn't say that

18   Mr. Struck -- I mean I'm looking at Exhibit M.  The bottom of

19   it is an email from Mr. Struck to the individual at Forbes

20   saying, "I want to bring my partner and co-GP, Yida Gao, to

21   your attention."  So I don't know what that -- just to clarify

22   for the record, I'm not sure what that comment was meant to be

23   about.

24           MR. NAOUFAL:  (inaudible) clarify, Your Honor.

25           MR. BHISHARAT:  Yeah, I'm confused as to --

1        **THE COURT:**  Well let me just say that I'm happy to

2   hear what everybody has to say but it's irrelevant to me.  What

3   Exhibit M says is completely irrelevant to me because whatever

4   Mr. Struck may have said, the content of what he may have said

5   to this Forbes reporter I think is not even a part of the

6   counterclaim anymore or the fiduciary duty claim.  It's just

7   not.  Not under the allegations that exist.  So because the

8   allegations no longer in this counter -- in the first amended

9   counterclaim no longer include communications to reporters.

10       **MS. HAIDAR:**  Understood, Your Honor.  And I would

11  just like to make one last attempt to perhaps rephrase our

12  position on the breach of fiduciary duty element of the

13  discussion.

14       So in rephrasing, I would just like to highlight that

15  when looking at the fact allegations and the facts that we will

16  be presenting to the jury, we would like to highlight that one

17  specific act by Mr. Struck can have multiple -- multiple

18  eventualities in terms of multiple violations of different

19  rights.  So the fact that Mr. Struck spoke to let's say --

20  let's say Mr. Struck spoke to an investor.  His conversation

21  with an investor in terms of our first -- our first

22  counterclaim, we would have alleged, yes, an allegation of

23  breach of fiduciary duty, defamation, et cetera, et cetera,

24  breach of contract, and those underlying duties of loyalty and

25  care, that would apply to different violations of different

68

1    rights.  And you are correct, we've gotten rid of those

2    defamation claims.

3            Stipulation, however, has not touched our claims for

4    breach of fiduciary duty.  And we allege that the act of

5    speaking to Mr. Ivanov, it reaches a breach of different

6    rights.  And so while we are precluded from applying it to

7    defamation, it can still relate to breach of fiduciary duty.

8            **THE COURT:**  You said that already.  This is not a

9    restatement.  You said that already and I appreciate that and

10   it's good to have it in the forefront and thank you very much.

11           But my response is the same which is, you still have

12   a breach of fiduciary duty claim but it excludes communications

13   to a reporter.  Done.  That's how I see it.

14           If you -- if Mr. Gao wants to somehow, you know,

15   renegotiate the stipulation or file a motion with the district

16   judge to set it aside and put, you know, put back in the

17   communications to the reporter, I'm golden.  I understand that

18   and that gives me a whole different universe of allegations

19   that I'm dealing with.  Right now, you just don't have the

20   allegations for me to find the relevance on the fiduciary duty

21   theory of relevance.

22           Okay.  May we move on?

23           Okay.  The next theory of relevance advanced by

24   Mr. Gao is that the information sought by RFA 69 is relevant to

25   Mr. Struck's claims against Mr. Gao and Mr. Gao's defenses

69

1   thereto.  I think we're back in the same -- it's the same

2   general argument.

3           But I want to say that I've looked through

4   Mr. Struck's operative complaint and I don't find any

5   allegations involving communications with a reporter so I'm

6   just not -- I'd like for Mr. Gao's team to point me to

7   specifically what the answer to this RFA:  "Did you or did you

8   not speak to a reporter for purposes of an article," what

9   specifically it informs in Mr. Struck's claims against Mr. Gao?

10  I'm having trouble finding that.

11          **MS. HAIDAR:**  Thank you, Your Honor.

12          So in terms of the first amended complaint, the

13  operative complaint, if you look at paragraphs 64 through 66,

14  Mr. Struck alleges that Mr. Gao has engaged in unscrupulous

15  conduct which continues to today.  So this continuing

16  allegation that is not foreclosed into a 2018 analysis, but

17  rather an analysis up to the present day, an ongoing allegation

18  that Mr. Gao has engaged in impermissible activities with his

19  relationship with the Aurora SPAC; i.e., his relationships with

20  Chinese spies, just to put it briefly.  So in every single

21  cause of action in the first amended complaint, Mr. Struck does

22  incorporate these allegations.

23          So for each cause of action it's -- it's unclear to

24  us, specifically which cause of action he will use this factual

25  allegation for.  We believe taking those generously, it's

1   probably relevant towards the unfair competition claim, that

2   Mr. Gao has engaged in this relationship with the Chinese

3   Communist Party to engage in unfair competition.  It's still

4   quite unclear but we assume that it's relevant because it's

5   incorporated and it's stated in the complaint and that it will

6   be used as evidence to support their claims.

7           And so as noted earlier, the only affirmative

8   evidence that Mr. Struck has provided -- or I should say the

9   only evidence that we are just aware of in the complete

10  universe of documents related to this case is this article.  So

11  this article is the only instance that I am personally aware of

12  and that my firm in general is aware of that references this

13  SPAC and Mr. Gao's relationship to the SPAC.

14          So when looking at these allegations and assuming

15  that because they are incorporated to every cause of action,

16  that they will either be used as supporting evidence for every

17  cause of action or specifically for that unfair competition

18  claim.  And understanding as a threshold question, whether or

19  not Mr. Struck provided the information to Mr. Ivanov is useful

20  in knowing, you know, if that information is -- is part of

21  their evidence to support their allegations.

22          THE COURT:  Okay.  But explain to me how the answer,

23  "Did you or did you not speak to the reporter for purposes of

24  the article," tells you whether Mr. Struck provided the

25  information in the article to the reporter.  That's the link

1  that I continue to have a problem making.

2          What you want -- and if I were sitting your

3  seat -- of course I don't give legal advice anymore -- but if I

4  were sitting in your seat, I would want to take some discovery

5  as to what Struck may have said, the content of his

6  communication to the reporter.

7          Whether he spoke to the reporter does not tell you

8  that whatever is in the content of the communication is

9  something that Mr. Struck said to the reporter.  There is

10  nothing in that article -- and I've read it multiple times --

11  that says Mr. Struck said anything.  At best it does say I

12  think it purports to quote Mr. Struck's attorney.  It certainly

13  quotes the -- or refers to the allegations in the litigation.

14  Understood.  But the RFA itself doesn't give you the content

15  information that you need for this relevance argument.  It just

16  -- it just doesn't.  That's -- we just keep coming back to

17  that.

18          **MR. BHISHARAT:**  May I make just one small point on

19  that, Your Honor?

20          **THE COURT:**  Yes, of course.

21          **MR. BHISHARAT:**  What the RFA would do, however, is

22  establish that Mr. Zenger -- or rather the -- Mr. Ivanov -- is

23  now a percipient witness (inaudible) provided information about

24  those allegations, allegations that are specifically referenced

25  as currently ongoing, meaning that this person now is not just,

1   Oh, hey, here's some stuff, why don't you write something.  Now

2   this is somebody who has relevant information about what is an

3   allegation that is an ongoing act or violation that they claim

4   our client is doing to cause their client harm, thereby making

5   that person somebody who is now a witness to the information

6   that Mr. Struck is going to bring to trial to support

7   presumably all of the causes of action; but like we've said, we

8   think it probably fits best in -- we assume it'll fit into

9   their UCL claim.

10          Regardless, we have to be able to conduct discovery

11  on it because they've alleged it against us in the complaint.

12  So this is the starting point given that this is the only place

13  that we've really seen information regarding these particular

14  allegations coming to light.

15          **THE COURT:**  But see, this is where I differ with you.

16  I continue to differ in how I see this.

17          Whether Mr. Struck spoke to the reporter about the

18  allega -- or no -- for purposes of the article -- whatever that

19  may mean -- And we can go down that discussion which I think we

20  already had in the informal discovery conference -- of the

21  problems with this RFA asking two different things but let's

22  set that aside for the moment -- doesn't tell you anything

23  about what Mr. Struck said.  It just doesn't.  And so -- and so

24  while I agree with you that it would be very helpful to Mr. Gao

25  to have information about what Mr. Struck may have said to this

1    reporter, this allegation doesn't get you there, nor does it

2    make the reporter a percipient witness to Mr. Struck having

3    said something to him.

4         If you want -- if what Gao wants is information about

5    what Struck said or didn't say to this reporter, you have a

6    subpoena.  We have all sorts of -- well you do, you have

7    subpoena power, right?  I mean you can issue a subpoena and

8    then and then the fight will be fought over whether that

9    information itself is discoverable under many other rules that

10   we're not discussing today, and which may be part of future

11   discovery as we -- you know, as we talk about.

12        But I just -- I am not making the connection of --

13   and I want to go back to the issue of, we are no longer under

14   the Rule 26(b) standard of likely to lead to the information --

15   likely to lead to the discovery of admissible evidence.  Sorry,

16   it's been so long since I've used that, I've forgotten it.  It

17   used to just roll off the tip of my tongue once upon a time.

18        And so I'm just I'm not -- just like I can't connect

19   it for the same reasons this RFA is seeking content -- no.

20        Mr. Gao's theory of relevance is based upon content

21   of the communication, not upon whether Mr. Struck spoke to the

22   reporter to begin with.  And that's all that you get from this

23   and that's the problem that I continue to have.

24        I think there are other ways of you folks getting

25   that information.  Other ways.  This is not it.

74

1          **MR. BHISHARAT:**  Understood, Your Honor, and we will

2   certainly be pursuing that.

3          Just as a caveat, we've been trying to abide by our

4   prior IDC discussions where we go to the parties first before

5   we burden the third parties with subpoenas, so we've been

6   hoping to try and abide by that.  Again, if we had an admission

7   to this, I would be happy to send a subpoena out to Mr. Ivanov

8   and we would be able to kind of conduct that there.  The

9   admission actually provides great grounds for that.

10         But we hear -- we hear your point on the position

11  that this particular RFA is not getting at the content and that

12  an admission to it is neither here nor there with respect to

13  the content that would actually provide light and shed light on

14  the allegations.

15         And again, just preferencing it as it comes, that

16  then gets to the question of, should future discovery along

17  these lines be propounded, are we going to end up in a fight

18  right back where we are today?  And I know we'll get to that at

19  the end but --

20         **THE COURT:**  Okay.

21         **MR. BHISHARAT:**  -- that's an example of our concern,

22  given how the hearing is going and sort of --

23         **THE COURT:**  Fair enough.

24         **MR. BHISHARAT:**  -- the positioning that's being taken

25  currently.

1          **THE COURT:**  Fair enough.  So has Defendant given me

2    their best and final argument on this issue?

3          **MR. BISHARAT:**  Yes, Your Honor.  I think --

4          **THE COURT:**  Okay.

5          **MR. BISHARAT:**  -- we've heard your ruling on it and

6    we'll abide by it.

7          **THE COURT:**  Well, I haven't --

8          **MR. BISHARAT:**  Well, your --

9          **THE COURT:**  -- I haven't adopted, I haven't adopted

10   my tentative yet.

11         Oh, I should go back though and say that for the

12   reasons stated on the record I'm adopting my tentative as to

13   the theory of relevance related to the fiduciary duty claims.

14         Okay, let me hear from Plaintiff if Plaintiff has

15   anything to add.

16         **MR. NAOUFAL:**  No, nothing, Your Honor.

17         **THE COURT:**  Okay.  All right.  Based on the

18   information contained in the record I am adopting my tentative

19   to deny the Motion to Compel on the theory of relevance that

20   this RFA provides information that is relevant to Mr. Struck's

21   claims against Mr. Gao and Mr. Gao's defenses thereto.

22         That takes us to what I believe to be the final,

23   although maybe in two parts, theory of relevance, which is the

24   credibility of Mr. Gao -- well which is, let me start again and

25   have a clear record, that the answer to this Request for

1   Admissions informs the credibility of Mr. Gao and of

2   Mr. Struck.  As I said earlier, I am not persuaded that it

3   informs either credibilities, it only answers whether

4   Mr. Struck spoke with the reporter and it is a non sequitur in

5   my mind what Mr. Gao speaking to a reporter somehow informs or

6   makes Mr. Gao suddenly more credible and Mr. Struck somehow

7   less credible.

8           And I understand that this -- that there is an issue

9   of, you know, it's an oral agreement and you're going to -- and

10  the trier of fact may look at who he or she or it believes

11  more, but I just don't see that the answer to this particular

12  RFA informs anybody's credibility.  And credibility, other than

13  general credibility and believability as to what you would

14  eventually say to -- what each side eventually will say to the

15  trier of fact, there is no credibility element in any of your

16  claims.

17          So that's my tentative so I'd like to hear from

18  Defendant first.

19          MR. BISHARAT:  I'll just briefly jump in.  So for us

20  the credibility argument really comes down to the inconsistency

21  in the positioning that Mr. Struck has taken with respect to

22  communications and interactions with Mr. Gao, with investors,

23  with the public, and in particular with the press.

24          So it's not again so much that liability attaches due

25  to the inconsistent statements as much as it would be that

77

 1   Mr. Struck is going to, we assume, present to the trier of fact

 2   that no partnership existed, that nothing that came before

 3   would be indicative of that, and that, you know, the jury

 4   should find in his favor.  And one way that we are able to

 5   bolster the argument that that position is not credible and

 6   should be disregarded by the trier of fact is to compare and

 7   contrast how things were held out before versus now.  And so

 8   that's where that admission would come in, that when presenting

 9   previous to their dispute Mr. Struck held Mr. Gao out in one

10   way and then the dispute arises and he's being held out to the

11   same class, the same types of individuals, in a different way

12   and allow the trier of fact to draw the conclusion which of

13   those makes sense.  Is it the latter statements that are

14   indicative of the relationship or the former?  That is what we

15   mean when we talk about those inconsistent statements.  And,

16   you know, we provided the case law in which courts have found

17   that inconsistent statements that are being made to the press

18   are fertile grounds by which credibility can be tested.

19           But that's where we were going with it.  It wasn't

20   necessarily, it wasn't necessarily tied to let's say a specific

21   element so much as it was that the overall claims and defenses

22   that are being alleged come down to this question of what

23   evidence are we putting forward that establishes the

24   partnership versus evidence that would undermine it and

25   allowing the jury to weigh that.

 1          So I just wanted to, you know, make that point clear

 2     because I hear -- but I hear Your Honor on the points made

 3     previous.

 4          **THE COURT:**  I understand what you're saying.  You're

 5     going to a general theory of credibility that then Mr. Gao can

 6     rely on to establish his claims in general.  The problem with

 7     that argument and what makes it not persuasive to me is that

 8     that argument then makes everything relevant.  Right?  If you

 9     can argue that anything that Mr. Struck has done, regardless of

10     whether there is a related allegation in the First Amended

11     Counterclaim or the Complaint, something that Mr. Struck has

12     done that has nothing to do with this case, it did once upon a

13     time but it no longer does, right, the statements to the press,

14     if you can take -- taking that argument to its logical extreme

15     makes everything relevant.

16          And that's not what Rule 26 does.  In fact, Rule 26

17     specifically was -- in 2015 reduced the scope of what is

18     relevant to that which is -- which informs the claims and

19     defenses of the acts.  And that's the problem with a general

20     credibility statement.  And I don't recall the years of the

21     cases that you provided, but, you know, to the extent that they

22     predate the amendment to Rule 26(b) they're not persuasive at

23     all.  I can look at what years they are, but -- but even

24     without that finding, I just, I don't find -- I think that a

25     general credibility argument undermines the confines of

79

1    Rule 26(b).

2         **MR. BISHARAT:**  Understood, Your Honor.  I would just

3    note, and this is more for the record because I understand now

4    we're getting into discovery that's not even before you, but we

5    do believe that part of how an oral agreement and the existence

6    of a partnership is proven informed is by how the parties

7    conduct their business, that conducting business involves,

8    especially in this arena, involves public facing interactions

9    with the press and with investors in which you are effectively

10   convincing folks to invest with you based on the credibility of

11   the leadership of those who will be managing the fund.

12         And so if Mr. Struck has held out Mr. Gao in the past

13   as his co-GP, a partner in this endeavor, and pushed to have

14   publications calling Mr. Gao a partner in the past, part of how

15   then that credibility of those arguments now no longer being

16   applicable or undermining that evidence as circumstantial

17   evidence of the relationship, part of how we would be able to

18   do that is to show that this type of communication from

19   Mr. Struck only ended when the dispute arose.  And that is

20   something that the trier of fact would be able to use to

21   determine is this consistent or inconsistent with the other

22   facts that they will be viewing to determine whether or not the

23   partnership as a whole existed.

24         That's what we were -- that's what we were going

25   with.

80

1          **THE COURT:**  Well, I understand.  But again I think

2     that that theory of relevance relies on the content of the

3     communication --

4          **MR. BISHARAT:**  Understood.

5          **THE COURT:**  -- not whether there was a communication.

6          **MR. BISHARAT:**  Understood.

7          **THE COURT:**  And that's where I'm stuck.

8          **MR. BISHARAT:**  And we hear you.

9          **THE COURT:**  And to the extent that whether there was

10    a communication with a reporter is where you were going, that

11    allegation is gone.

12         **MR. BISHARAT:**  Understood.

13         **THE COURT:**  Okay.  All right.  Do I have Defendant's

14    best and final argument on the credibility of both Gao and

15    Struck?

16         **MS. HAIDAR:**  Yes, Your Honor.

17         **THE COURT:**  Okay.  Thank you.

18         Mr. Naoufal, would you like to be heard?

19         **MR. NAOUFAL:**  If Your Honor has no questions, no

20    argument.

21         **THE COURT:**  Okay.  All right, so that takes care of

22    all the issues.  So I adopt my tentative ruling with respect to

23    the theories of relevance based on Mr. Gao's credibility and

24    Mr. Struck's credibility and on that basis I deny the Motion to

25    Compel response to RFA 69.

 1          That leaves us with Mr. Struck's affirmative request

 2   for a stay and for leave to file a motion before Judge Garnett.

 3   For the reasons that I've stated -- well, let me hear from you,

 4   Mr. Naoufal, for -- it's moot, but if you have anything to add

 5   to that.

 6          **MR. NAOUFAL:**  Your Honor, I agree that the motion is

 7   moot in light of the Court's decision.  It may have some

 8   bearing on future discovery and that conversation is something

 9   we may have on or off the record but separate from this RFA in

10   particular.

11          I think the relevance of the motion goes to the

12   difference between the first Counterclaim and the First Amended

13   Counterclaim.  We are not here to engage in a debate over what

14   the parties intents were in terms of the stipulation and I

15   certainly understand that, but to the extent Mr. Gao seeks to

16   discover -- seeks to obtain through discovery what he was

17   denied on the face of his Complaint, through the stipulation,

18   and as evident in the First Amended Counterclaim, he should not

19   be permitted to do so.  And to the extent, again this point is

20   mooted, that Your Honor was going to find that this line of

21   discovery was relevant, we have moved for an opportunity to yet

22   again bring our anti-SLAPP to the extent the Courts, Mr. Gao,

23   Your Honor, or Judge Garnett had needed clarification that the

24   anti-SLAPP motion and the following stipulation did indeed

25   cover more than just a one-time statement as applied to a very

82

1  specific defamation claim.

2         And to the extent that would be required in the

3  future and there's a different procedural avenue to pursue it,

4  we will -- we'll make note of that and pursue that as the time

5  is appropriate and in the way that's appropriate.

6         **THE COURT:**  Okay.  Based on the arguments of the

7  party and what's on the record then I adopt my tentative to

8  deny as moot Mr. Struck's request for a stay of discovery and

9  for leave to file an anti-SLAPP motion.

10         Okay, that takes care of the Motion to Compel.  Any

11  party who would like a transcript of our two and a half hours

12  of argument is welcome to request one, but that is my order.

13  I'm adopting my tentative throughout and so there is no -- I am

14  not compelling any further discovery on RFA 69.

15         Okay.  Now, let's take a moment to discuss future

16  discovery because I understand that this is something that now

17  is open again, or it would have been closed next week but it is

18  now open for I think another three months.  Is that correct?

19      **(Multiple response heard confirming December date)**

20         **THE COURT:**  December 15th?

21         **MS. HAIDAR:**  Uh-huh.

22         **THE COURT:**  Oh, wow.

23         **MR. BISHARAT:**  Not getting rid of us yet.

24      **(Laughter)**

25         **MR. NAOUFAL:**  We may very well be back.

1          **THE COURT:**  The playground is vast.

2          Okay, so -- well, look, let me just say to the extent

3    that there are further discovery disputes, I want to commend

4    both sides for your cooperation, even if you disagree with each

5    other, and your civility toward each other and it has been

6    nothing but a pleasure to work with both of you.  So please

7    feel free to bring me whatever other dispute you may find

8    yourselves in in the future, though I hope you don't.  But I am

9    happy to assist the parties in any way that I can.

10          Okay, let's talk very briefly about Mr. Gao's

11    concerns, I guess, or whatever questions Mr. Gao may have for

12    the Court regarding where do the parties go from here, but I

13    will preface it with I'm not sure I'm going to be able to

14    answer everything, so….  But thank you for giving me a heads up

15    of what may be forthcoming.

16          **MR. BISHARAT:**  Yeah, and I'll be very brief, Your

17    Honor.  And on behalf of all parties, I assume, but on behalf

18    of ourselves in particular, we appreciate the time that you've

19    spent.  We know it's a lot and so we appreciate it.

20          And I think, if I'm understanding then where sort of

21    things have fallen from the ruling, effectively your holding

22    today, the order today is not precluding as a blanket rule

23    further discovery that may be related to these communications

24    or similar ones, given that the scope of the RFA as we

25    requested it was broad and sort of the relevance of its answer

84

1    wasn't going to get anywhere, but the content of certain

2    communications may, in fact, if propounded and then answered

3    and we get into a debate about that before you, may still be

4    found independently relevant depending on what discovery is

5    sought in particular with respect to communications that

6    Mr. Struck may have had with third parties, and in this

7    instance Mr. Ivanov or others who are reporters.

8            The reason why we're asking is because we know that

9    so far discovery has somewhat broadly allowed for

10   communications with third parties relating to the allegations

11   and the claims, communications relating between the opposing

12   party and a third party.  These have generally been granted and

13   parties have generally conducted that discovery.  In fact, I

14   think we received a subpoena just a few days ago in which one

15   of the requests to a third party was something like all

16   communications between you and Gao related to the litigation.

17   These really broad type of requests.  Of which we would assume

18   that this is the kind of similar communication.  Right?  Third

19   parties discussing the allegations with the other parties.

20           So that is sort of a long way of saying what we were

21   concerned with was whether today's hearing would foreclose our

22   ability to conduct further discovery along these lines.  It's

23   sounding like that is not the case.  And obviously without the

24   discovery in front of you there's no way for you to rule on the

25   specifics of it, but that was the concern that I had.  And I

1  just wanted to confirm that my understanding is correct, that

2  we're not being precluded from conducting further discovery,

3  not necessarily through the means of an RFA, but through

4  whether it's a deposition or an interrogatory, an RFP, or a

5  more targeted RFA regarding similar communications.  That's --

6  that was the concern that I had, Your Honor.

7          **THE COURT:**  I'm going to give Mr. Naoufal an

8  opportunity to speak on that.  But I mean generally -- I ruled

9  on RFA 69.  You now have six more months of discovery.  I can't

10  give you, you know, a quasi-advisory opinion on whether I would

11  compel any discovery that you issue because I don't know what

12  the discovery is.

13          If you're asking me would I allow discovery that I

14  imagine would be opposed by Mr. Struck's side to the reporter

15  or any reporter, I don't -- I mean that goes into Mr. Struck's

16  anti-SLAPP issue.  Right?  And so to the extent that Mr. Struck

17  is going to make an anti-SLAPP argument as to potential --

18  well, let me go back.  Maybe I'm not being very clear.  As

19  words are flowing out of my mouth I'm saying to myself you are

20  making no sense, so let me start again.

21          Discovery right now is limited to what is in the

22  First Amended Complaint and the First Amended Counterclaim.

23  Whatever is there is fair game for discovery and the defenses

24  thereto.  Right?  Mr. Struck may seek to file a motion, an

25  anti-SLAPP motion.  I am not sure what you would seek to strike

1   from the First Amended Counterclaim.  Right?  Not potential.

2   You can't do an anti-SLAPP motion on potential allegations that

3   may exist.  Right?  The claim -- the anti-SLAPP motion, or the

4   motion to dismiss, depending on which way you go, is as to what

5   is in the operative pleading.

6           It seems to me that Mr. Struck is perfectly fine with

7   the operative First Amended Counterclaim.  It's the possibility

8   that Mr. Gao is going to somehow through discovery create new

9   claims.  Trust me, as you can see from today, that's not going

10  to happen under my watch.

11          And so the only purpose of an anti-SLAPP motion would

12  be if somehow the First Amended Counterclaim is amended further

13  to include more allegations that Struck, Mr. Struck believes

14  would be subject to anti-SLAPP.

15          Until then the operative complaint, which is the

16  First Amended Complaint, and the operative counterclaim, which

17  is the First Amended Counterclaim, is what governs my decisions

18  about relevance.

19          **MR. BISHARAT:**  Understood, Your Honor.  Thank you.

20          **THE COURT:**  And if I could -- okay, so Mr. Naoufal.

21          **MR. NAOUFAL:**  Your Honor, with respect to

22  Mr. Bisharat's comment about expansive discovery to third

23  parties, the most recent discovery was to an individual who

24  submitted a declaration in support of Mr. Gao in this case and

25  it was catered to that specifically.  I don't want --

87

1           THE COURT:  Can you turn on your mike?

2           MR. NAOUFAL:  Oh.

3           THE COURT:  Or speak into it.

4           MR. NAOUFAL:  Of course.  My apologies.

5           THE COURT:  Yes, thank you.

6           MR. NAOUFAL:  Shall I repeat or were you able to hear

7    me?

8           THE COURT:  I did, but I don't know if the court

9    reporter who one day may be transcribing this did, so….

10          MR. NAOUFAL:  Mr. Bisharat rose an issue with the

11   expansive nature of discovery with respect to propounding

12   discovery requests and subpoenas on third parties.  I just

13   wanted to clarify that, although I'm not sure which subpoena

14   he's referencing in particular, I will note that the most

15   recent subpoenas were issued to individuals who issued

16   declarations in support of Mr. Gao with respect to this case.

17          So we have taken a very co-compliant and case law

18   compliant approach to discovery and we have not been expansive.

19   We've operated off of the first -- Mr. Struck's Complaint

20   itself and the Counterclaim, First Amended, as it exists today.

21          With respect to Your Honor's note that a anti-SLAPP

22   motion would be appropriate in the event an amended -- a second

23   amended counterclaim is filed perhaps, there is no issue, Your

24   Honor, there.  My understanding is that the claims as they

25   exist today are as written in the First Amended Complaint and

1    nonetheless take into account how it differs from the original

2    Counterclaim.  And it is very clear which allegations have been

3    removed from the Counterclaim, from the First Amended

4    Counterclaim and that existed in the original Counterclaim.

5    And that includes conduct that is referenced in the primary

6    allegations that are in the Complaint and then specifically in

7    support of specific causes of action and it refers to conduct

8    that started in early 2021 and "continued for the next

9    18 months."

10          And so we are not able to engage in a thorough

11   argument with respect to whether this has precluded the

12   relevance of a certain discovery that's not before us.  And so

13   we will take that up at the appropriate time and, as Your Honor

14   has stated and demonstrated, it would take into account the

15   difference between the original Counterclaim and the First

16   Amended Counterclaim.  So….

17          **THE COURT:**  Okay.  All right.  I think that takes

18   care of the purpose for today.  It sounds like, Ms. Haidar, you

19   would like to add something.

20          **MS. HAIDAR:**  Yes, I would just like to add two

21   additional points.

22          So the first in response to the most recent subpoena

23   discussion that we're having now, I do have a copy of it for

24   Your Honor's review, if you would like to see it.  If not,

25   that's fine as well.  In particular, that subpoena requests

1   (indisc.) RFP Number 6, all communications with Gao relating to

2   the federal action pending in the Federal Court for the Central

3   District of California with the case number there.  So a

4   communication like -- a request for production like that,

5   something broadly asking any communications relating to the

6   pending federal litigation in our view is indicative of the

7   type of broad requests that we're discussing.

8           My second, it's more of a clarifying point with a

9   housekeeping issue.  So would it be an accurate summary to say

10  that despite the determination of Request for Admission

11  Number 69, Defendants are not foreclosed from seeking future

12  discovery relating to substantive production of documents

13  relating to Mr. Struck's claims and our defenses to those

14  claims as we have communicated them or provided supporting

15  documentation to third parties?

16          **THE COURT:**  Okay.  As to the first issue, I don't

17  need to see it.  If there is a problem or a dispute that arises

18  over it, certainly bring it to my attention.

19          You know, sometimes third parties aren't aware that

20  they have the benefit of the informal discovery process, right,

21  to resolve any dispute the third party itself may have.

22  Certainly the parties, to the extent that Mr. Gao wants to --

23  you know, has a dispute regarding the subpoena, you know, that

24  you're -- you may participate through the informal discovery

25  conference process and we can hopefully resolve things easily

1   that way.  But I would encourage the parties to let the third

2   parties know that if there is a dispute, you know, kind of pull

3   in the reins a little bit, don't file a motion right away, we

4   can resolve this with very little expense to everybody else.  I

5   believe we have so far.

6           So that's a little bit off of the topic, Ms. Haidar,

7   that you raised, but I would encourage the parties to let third

8   parties know that they can avail themselves of the informal

9   discovery process.

10          But, no, I mean right now I don't need to see that

11  particular subpoena because I don't know what the issue is

12  about it, other than I understand Mr. Gao's counsel believe

13  that it's too broad.

14          **MS. HAIDAR:**  Understood, Your Honor.  Thank you.

15          **THE COURT:**  Okay, so with respect to your

16  housekeeping issue, Ms. Haidar, it is accurate to say that with

17  discovery open either party can conduct further discovery

18  relating the operative allegations and claims.

19          **MR. BISHARAT:**  Thank you, Your Honor.

20          **MS. HAIDAR:**  Thank you, Your Honor.

21          **THE COURT:**  Okay.  And before we go off the record I

22  want to say two things.  Number one, thank you for the

23  excellent example that you have provided for the future

24  attorneys, the externs.  It is always nice to have them watch

25  how it should be done and this has been an excellent example of

91

1   the cooperation and civility and actually the level of

2   preparation that has gone into this.  So thank you very much

3   for providing that excellent example.

4              And secondly, Ms. Haidar, kudos to you.  You did an

5   excellent job.  You should be very proud of yourself --

6              **MS. HAIDAR:**  Thank you, Your Honor.

7              **THE COURT:**  -- your firm should be very proud of

8   yourself.

9              Mr. Bisharat, give the woman a bonus.

10      **(Laughter)**

11             **MR. BISHARAT:**  Are we off the record?

12             **MS. HAIDAR:**  No, we're not.  We're not off the

13  record.

14      **(Laughter)**

15             **THE COURT:**  That is not an order.  But

16  congratulations, you did an excellent job.  I think maybe

17  hopefully your opponent will agree with that because you really

18  did do an excellent job.

19             **MS. HAIDAR:**  Thank you, Your Honor.

20             **THE COURT:**  You're very welcome.

21             Okay, anything else from the parties?

22             **MR. BISHARAT:**  No, Your Honor.  Thank you for your

23  time again.

24             **THE COURT:**  Okay.  You're very welcome.  Have a good

25  afternoon.

1          **MR. BISHARAT:**  You as well.

2          **MR. NAOUFAL:**  Thank you, Your Honor.

3          **THE CLERK:**  This Court is adjourned.

4       **(This proceeding was adjourned at 12:48 p.m.)**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>June 14, 2023</u>

Signed                                                  Dated


*TONI HUDSON, TRANSCRIBER*