ORSUS GATE LLP
Denis Shmidt (Bar No. 267987)
Nabil Bisharat (Bar No. 270305)
Jennifer Haidar (Bar No. 337558)

16 N. Marengo Ave., Suite 505
Pasadena, CA 91101
Telephone: (415) 326-3558
Email: DShmidt@OrsusGate.com
Email: NBisharat@OrsusGate.com
Email: JHaidar@OrsusGate.com

HARDER STONEROCK LLP
Ryan J. Stonerock (Bar No. 247132)
Henry L. Self III (Bar No. 223153)

8383 Wilshire Blvd., Suite 526
Beverly Hills, CA 90211
Telephone: (424) 203-1600
Email: RStonerock@HarderLLP.com
Email: HSelf@HarderLLP.com

*Attorneys for Defendant and
Counter-Claimant Yida Gao and
Defendants Sand Hill Advisors PR
LLC and Shima Capital
Management LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(Western Division – Los Angeles)

| | |
|---|---|
| ADAM STRUCK, individually and doing business as STRUCK CAPITAL, and STRUCK CAPITAL MANAGEMENT LLC, a Delaware Limited Liability Company, <br><br> Plaintiffs, <br><br> v. | Case No. 2:22-cv-02415-HDV-MAA <br><br> **SECOND AMENDED COUNTERCLAIM FOR:** <br><br> **(1) Declaratory Relief;** <br> **(2) Breach of Oral Contract (Partnership Agreement);** <br> **(3) Breach of Fiduciary Duty;** |

| | |
|---|---|
| 1 | |
| 2 | YIDA GAO, an individual, SAND HILL ADVISORS PR LLC, a Puerto Rican limited liability company, SHIMA CAPITAL MANAGEMENT LLC, a Puerto Rican limited liability company, and Does 1-50,<br><br>Defendants |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | YIDA GAO, an individual; |
| 9 | |
| 10 | Counterclaimant, |
| 11 | v. |
| 12 | |
| 13 | ADAM STRUCK, individually and doing business as STRUCK CAPITAL; STRUCK CAPITAL MANAGEMENT, LLC, a Delaware Limited Liability Company; STRUCK CAPITAL FUND GP LLC, a Delaware Limited Liability Company; STRUCK CAPITAL FUND II GP, LLC, a Delaware Limited Liability Company; and ROES 1-50, inclusive,<br><br>Counter Respondents. |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |

**(4)** Breach of Covenant of Good Faith & Fair Dealing (Cal. Corp. Code § 16404(d));

**(5)** Breach of Implied Covenant of Good Faith & Fair Dealing (Partnership Agreement);

**(6)** Accounting (Cal. Corp. Code § 16403);

**(7)** Intentional Misrepresentation (Fraud);

**(8)** Negligent Misrepresentation;

**(9)** Conversion;

**(10)** Theft by False Pretenses (California Penal Code § 496);

**(11)** Unjust Enrichment / Restitution;

**(12)** Promissory Estoppel; and

**(13)** Misappropriation of Name and Identity (California Civil Code § 3344 and Common Law)

**(14)** Unlawful Impersonation (California Penal Code § 528.5)

**DEMAND FOR JURY TRIAL**

1        Counterclaimant Yida Gao ("Mr. Gao" or "Counterclaimant") brings this

2 action against Counter Respondents Adam B. Struck, both individually and doing

3 business as Struck Capital ("Mr. Struck"), Struck Capital Management LLC

4 ("SCM"), Struck Capital Fund GP LLC ("Fund I"), Struck Capital Fund II GP LLC

5 ("Fund II") and Roes 1–50 inclusive (collectively, SCM, Fund I, and Fund II shall

6 be referred to as the "SCM Entities").

7                        **INTRODUCTION**

8      1.     In 2015, Mr. Gao and Mr. Struck formed a partnership focused on

9 structuring special purpose vehicles ("SPVs") to invest in technology companies.

10 They soon found success, and their relationship quickly developed into growing a

11 venture capital enterprise with an investment portfolio focused on investing in the

12 technology and cryptocurrency space.

13      2.     Although their investment vehicles were generally managed under

14 SCM, which bears Mr. Struck's name, their partnership was co-equal and relied on

15 the unique skills each brought to the venture.

16      3.     As an up-and-coming entrepreneur with experience as a mergers and

17 acquisitions banker at Morgan Stanley, experience as a consultant at McKinsey, and

18 venture capital investor experience with one of the largest venture capital firms in

19 the world (New Enterprise Associates, or "NEA"), Mr. Gao provided the

20 knowledge, connections, and experience in the world of venture capital.

21      4.     As a former associate at Kirkland & Ellis working in mergers and

22 acquisitions and private equity, Mr. Struck provided the legal experience to help

23 with structuring deals and drafting the agreements through which those agreements

24 might grow.

25      5.     As time would show, however, Mr. Struck used that legal experience

26 to marginalize Mr. Gao's equity in their joint ventures by falsely placing

27 organizational documents in just his name and maintaining control of the

28 partnership's finances.

6.      Mr. Gao, on the other hand, so trusted his partner that he left his MBA program at Stanford University, moved to Los Angeles to build their presence in the Southern California market, introduced Mr. Struck as his partner to numerous investors, and almost singlehandedly added cryptocurrency and blockchain technologies to the partnership's investment portfolio by building the DDC portfolio.

7.      Starting in 2019, and continuing through 2020, the relationship between Mr. Gao and Mr. Struck began to fall apart.

8.      For the first time, Mr. Struck began claiming that they were not, in fact, 50/50 partners and attempted to direct Mr. Gao away from participating in some of their joint funds.  Mr. Struck also began withholding funds owed to Mr. Gao.

9.      When Mr. Gao attempted to confirm their status as equal partners, rather than acknowledge that Mr. Gao is an equal 50/50 partner who helped bring their businesses success, Mr. Struck instead belittled Mr. Gao's contributions to their businesses, forced Mr. Gao out of their companies by claiming to have "terminated" him "for cause," and besmirched Mr. Gao's good name in their business community.

10.     Worse still, it has become clear that Mr. Struck used his position as legal counsel and principal drafter of incorporation and other operating documents to position himself as the sole principal of all of the defendant companies.[1]  In this way, Mr. Struck has attempted to create the legal fiction that no partnership between himself and Mr. Gao ever existed.

11.     As a direct result of Mr. Struck's actions, the SCM Entities continue to deny Mr. Gao his rightful position as 50/50 owner of said entities and 50% of the management fees, carried interest, incomes, and distributions due to him.

---

[1] Although Mr. Gao is listed as a principal of DDC, Mr. Struck is attempting to unilaterally divest Mr. Gao of his ownership interest in DDC as well via the arbitration proceedings currently pending with JAMS.

12.     As a direct result of Counter Respondents' actions, Mr. Gao has suffered millions of dollars in damages, and those damages continue to accrue as those entities continue to receive management fees and other incomes (including but not limited to carried interest).

13.     As a result, and in addition to being awarded damages, Mr. Gao seeks a declaration from this Court confirming the existence of his partnership with Mr. Struck and a determination by the Court that this partnership entitles him to 50% ownership of the SCM Entities.

## PROCEDURAL HISTORY

14.     On March 25, 2021, Mr. Gao and Sand Hill Advisors LLC (a limited liability company incorporated in Delaware with its principal place of business in Los Angeles, California that is wholly owned by Yida Gao, and was the main vehicle through which Mr. Gao accepted payment of management fees owed to him by the Partnership's various businesses) filed a complaint in California Superior Court, County of Los Angeles, Case Number 21SMCV00555 (the "State Court Litigation").

15.     The State Court Litigation complaint was made against the SCM Entities, as well as the following entities:

a)  Divergence Digital Currency Management LLC ("DDC") and Divergence Digital Currency GP LLC ("DDC GP") (collectively, DDC and DDC LP shall be referred to as the "DDC Entities");

b)  Struck Capital Special Situations Management LLC ("SCSS") and Struck Capital Special Situations GP LLC ("SCSS GP") (collectively, SCSS and SCSS GP shall be referred to as the "SCSS Entities");

c)  Struck Capital Stage Agnostic GP LLC ("SCSA GP"); and

d)  Struck Scratch LLC, Struck Scratch Series B LLC, Struck Scratch Series A LLC, Ignis SPV LLC, Ignis Series B LLC, Probitas SPV LLC, Vectio SPV LLC, Zero SPV LLC, Serico SPV LLC, Struck PF

1  Special Opportunity LLC, Struck OTI Special Opportunity LLC, SC

2  Tectus SPV LLC, Struck Hoco LLC, Struck A43 LLC, Struck AHC

3  Special Opportunity LLC, and Zero Series B SPV LLC (collectively,

4  these sixteen entities shall be referred to as the "SPV Entities")[2]

5  16.  On May 28, 2021, Mr. Struck filed a Cross-Complaint against Mr.

6  Gao, Sand Hill Advisors, as well as Shima Capital LLC, Shima Capital

7  Management LLC, and Shima Capital GP LLC (collectively, the "Shima Entities").

8  17.  On July 8, 2021, Mr. Struck filed a motion to compel arbitration as to

9  the entire Litigation based on Mr. Struck and Mr. Gao's execution of the DDC

10  Entities' Operating Agreements.

11  18.  On August 3, 2021, Los Angeles Superior Court Judge Mark H.

12  Epstein granted in part, and denied in part, Mr. Struck's Motion.  Specifically,

13  Judge Epstein granted the motion as to Mr. Struck, Mr. Gao, and the DDC Entities

14  for claims arising out of or related to the DDC Operating Agreements and denied it

15  as to all of the other named entities and claims.  Judge Epstein then stayed the State

16  Court Litigation pending the resolution of the arbitration concerning the DDC

17  Entities, which is pending before the Hon. James Ware (Ret.) at JAMS.

18  19.  Meanwhile, on April 11, 2022, Counter Respondents filed their

19  Complaint in this Court (the "Federal Complaint").  The Federal Complaint

20  essentially regurgitated the claims Mr. Struck sought to stay in the State Court

21  Action while adding a sole claim based on federal statutory law, which this Court

22  would eventually find satisfied federal jurisdictions standards such that this case

23  remains pending before this Court.  Counterclaimant's Answer to the Federal

24  Complaint and this Amended Counterclaim for damages thus followed.

25

26

27

28

---

[2]  Collectively, the SCM Entities, DDC Entities, SCSS Entities, SCSA Entities, and SPV Entities shall be referred as the "Partnership Entities."  While Mr. Gao is the rightful co-equal owner of all of the Partnership Entities, Mr. Gao only includes the SCM Entities in the federal litigation and reserves the adjudication over the remaining entities in the currently-pending State Court Action and Arbitration.

## THE PARTIES

1

2      20.      Counterclaimant Yida Gao is a Puerto Rico resident living in San Juan,
3  Puerto Rico.  Mr. Gao was a technology investor at New Enterprise Associates
4  (NEA), one of the world's largest venture capital funds, where he led diligence
5  and/or sourced over 20 investments. Mr. Gao was also a deal team member of
6  Morgan Stanley's Mergers & Acquisitions Investment Banking Group in their New
7  York City headquarters where he helped execute over $15 billion in aggregate deal
8  volume. He also held research and programming positions at MIT's Sloan School
9  of Management and at McKinsey & Company in Boston.

10      21.      Counter-Respondent Adam Struck is a California resident living in Los
11  Angeles, California.  He is a former corporate mergers and acquisitions associate
12  attorney at the law firm of Kirkland & Ellis and is barred as a lawyer in the State of
13  New York.

14      22.      Counter-Respondent Struck Capital Management LLC ("SCM") is a
15  limited liability company incorporated in the state of Delaware with its principal
16  place of business at 2908 Colorado Avenue, Santa Monica, California 90404.  It is
17  the main entity through which Mr. Gao and Mr. Struck organized their numerous
18  businesses for purposes of collecting and distributing to the partners the
19  management fees paid by the various investment funds and carried interest
20  payments made from the SPVs.   On information and belief,  Mr. Gao and Mr.
21  Struck are the only members of SCM.

22      23.      Counter-Respondent Struck Capital Fund GP LLC ("Fund I") is a
23  limited lability company incorporated in the state of Delaware with its principal
24  place of business at 2908 Colorado Avenue, Santa Monica, California 90404. It is a
25  subsidiary of SCM and was the first venture capital fund that Mr. Gao and Mr.
26  Struck used to collect venture capital investments that were then invested in up-and-
27  coming technology companies. On information and belief, Mr. Gao and Mr. Struck
28  are the only members of Fund I.

1    24.    Counter-Respondent Struck Capital Fund II GP LLC ("Fund II") is a

2  limited lability company incorporated in the state of Delaware with its principal

3  place of business at 2908 Colorado Avenue, Santa Monica, California 90404. It is a

4  subsidiary of SCM and was the second fund that Mr. Gao and Mr. Struck used to

5  collect venture capital investments that were then invested in up-and-coming

6  technology companies.  On information and belief,  Mr. Gao and Mr. Struck are the

7  only members of Fund II.

8    25.    The true names or capacities, whether individual, corporate, associate,

9  or otherwise, of Counter-Respondent Roes 1-50 inclusive, and each of them are

10 unknown to Mr. Gao at this time.  Counterclaimant therefore sue such Counter-

11 Respondents by such fictitious names.  Counterclaimant will further amend the

12 Counterclaim to reflect the true names and capacities of said Counter-Respondents

13 when that information has been ascertained.

14                    **RELEVANT NON-PARTIES**

15    26.    Divergence Digital Currency Management LLC ("DDC") is a limited

16 liability company incorporated in the state of Delaware with its principal place of

17 business at 2908 Colorado Avenue, Santa Monica, California 90404. It is the entity

18 through which Mr. Gao and Mr. Struck managed their investment vehicles focused

19 on the cryptocurrency and blockchain industries.

20    27.    Divergence Digital Currency GP LLC ("DDC GP") is a limited lability

21 company incorporated in the state of Delaware with its principal place of business

22 at 2908 Colorado Avenue, Santa Monica, California 90404. It is a subsidiary of

23 DDC and acts as the general partner to Divergence Digital Currency LP, the entity

24 the partnership used to collect investment funds that are invested in up-and-coming

25 cryptocurrency and blockchain.

26    28.    Struck Capital Special Situations Management LLC ("SCSS") is a

27 limited liability company incorporated in the state of Delaware with its principal

28 place of business at 2908 Colorado Avenue, Santa Monica, California 90404.  It is

1  the management company used by Mr. Gao and Mr. Struck to manage investments

2  in later stage deals, many of which would be sourced via Mr. Gao's network being

3  at NEA and in Silicon Valley.

4         29.     Struck Capital Special Situations GP LLC ("SCSS GP") is a limited

5  liability company incorporated in the state of Delaware with its principal place of

6  business at 2908 Colorado Avenue, Santa Monica, California 90404.  It is a

7  subsidiary of SCSS and is used by Mr. Gao and Mr. Struck to act as the general

8  partner to Struck Capital Special Situations LP, the entity the partnership used to

9  collect investment funds that are invested in later stage deals, many of which were

10  sourced via Mr. Gao's network being at NEA and in Silicon Valley.

11         30.     Struck Capital Stage Agnostic GP LLC ("SCSA GP") is a limited

12  liability company incorporated in the state of Delaware with its principal place of

13  business at 2908 Colorado Avenue, Santa Monica, California 90404.  It is another

14  entity Mr. Gao and Mr. Struck used to act as the general partner to Struck Capital

15  Stage Agnostic LP, the entity the partnership used to collect investment funds that

16  are invested in later stage deals, many of which would be sourced via Mr. Gao's

17  network being at NEA and in Silicon Valley.

18         31.     Struck Scratch LLC, Struck Scratch Series B LLC, Struck Scratch

19  Series A LLC, Ignis SPV LLC, Ignis Series B LLC, Probitas SPV LLC, Vectio

20  SPV LLC, Zero SPV LLC, Serico SPV LLC, Struck PF Special Opportunity LLC,

21  Struck OTI Special Opportunity LLC, SC Tectus SPV LLC, Struck Hoco LLC,

22  Struck A43 LLC, Struck AHC Special Opportunity LLC and Zero Series B SPV

23  LLC (collectively, the "SPV Entities") are all limited liability companies

24  incorporated in the state of Delaware, each with their principal places of business

25  located at 2908 Colorado Avenue, Santa Monica, California 90404.  These "special

26  purpose vehicles" were each used to invest in technology companies.

27

28

## JURISDICTION AND VENUE

32.    This Court has subject matter jurisdiction over this controversy under the "supplemental jurisdiction" provisions of 28 U.S.C. § 1367(a) and Federal Rule of Civil Procedure 13(a) because they arise out of the same transactions and occurrences that are the subject matter of the Plaintiffs/Counter-Respondents' claims, they do not require adding another party over whom the court cannot acquire jurisdiction, and the state law claims pled herein are related to the claims in this action within the original jurisdiction of this Court and thus such claims form part of the same case or controversy, as follows:

a.  Specifically, Mr. Struck and SCM's Federal Complaint generally alleges that Mr. Gao purportedly downloaded "trade secrets" from Mr. Struck and SCM that included investor information related to Fund I and Fund II [Doc. No. 1 ¶¶ 57-59] and other purportedly confidential information that were then allegedly used by Counterclaimant to raise money from investors [Doc. No. 1, ¶¶ 67-69] in purported violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.* [*See* First Claim for Relief, Doc. No. 1, ¶¶ 67-75).

b.  In turn, this Court relied on Mr. Struck and SCM's First Claim for Relief, Trade Secret Misappropriation Under the Defendant Trade Secrets Act to find that this Court has federal question jurisdiction over this claim and supplemental jurisdiction over the rest of Mr. Struck and SCM's claims.  (*See* Doc. No. 26, Order Denying Defendants' Motion to Dismiss or Stay, at pp. 6-8).

c.  Mr. Gao is a 50/50 partner and owner with Mr. Struck in the SCM Entities, Fund I, and Fund II – the same entities from whom Mr. Struck and SCM allege certain trade secrets were stolen.

d.  Meanwhile, the gravamen of all of Counter-Respondents' claims involve some alleged wrongful taking and use of this information (*See* Doc. No. 26 at pp. 9-11).

e.  Because Mr. Gao alleges he is an actual owner of the aforementioned information by way of his ownership of the SCM Entities, Fund I, and Fund II, which includes any alleged trade secrets owned by Fund I and Fund II, an actual case or controversy arising out of the same transactions and occurrences that are the subject matter of the Plaintiffs/Counter-Respondents' claims exists between Counterclaimant on the one hand, and Counter-Respondents on the other.

f.  Compulsory counterclaims fall within the court's "supplemental jurisdiction" [28 USC § 1367(a)], and thus no other basis for jurisdiction (i.e., diversity or federal question) need be established. *See Baker v. Gold Seal Liquors, Inc.*, 417 US 467, 469 (1974); *Lee v. West Coast Life Ins. Co.* 688 F. 3d 1004, 1009-1010 (9th Cir. 2012); *Global NAPs, Inc. v. Verizon New England Inc.* 603 F. 3d 71, 76 (1st Cir. 2010); *Jones v. Ford Motor Credit Co.*, 358 F. 3d 205, 213 (2nd Cir. 2004).

g.  Furthermore, supplemental jurisdiction "include[s] claims that involve the joinder or intervention of additional parties." [28 USC § 1367(a)], and because the claims alleged herein arise from a "common nucleus of operative facts," this Court can adjudicate state law claims against the Counter-Respondents who are not parties to the federal claim (so-called "supplemental party jurisdiction"), i.e., no diversity of citizenship or independent basis for federal jurisdiction need be shown as to such parties. *See Ammerman v. Sween* 54 F. 3d 423, 424-425 (7th Cir. 1995);

ORSUS GATE LLP
A CALIFORNIA
LITIGATION BOUTIQUE

1   *Mendoza v. Zirkle Fruit Co.* 301 F3d 1163, 1172-1173 (9th Cir.

2   2002); *Trustees of Const. Industry & Laborers Health & Welfare*

3   *Trust v. Desert Valley Landscape & Maintenance, Inc.* 333 F. 3d

4   923, 925(9th Cir. 2003) ("Pendent party jurisdiction is

5   constitutional so long as the pendent state law claim is part of the

6   same 'case or controversy' as the federal claim.")

7   33.   Alternatively, this Court also has subject matter jurisdiction over this

8   controversy under the "supplemental jurisdiction" provisions of 28 U.S.C. §

9   1367(a) and Federal Rule of Civil Procedure 13(b), which allow for the filing of

10   "permissive" counterclaims.  Counterclaimant's claims do not require adding

11   another party over whom the court cannot acquire jurisdiction.

12         a.   Specifically, Mr. Struck and SCM's Federal Complaint generally

13            alleges that Mr. Gao purportedly downloaded "trade secrets" from

14            Mr. Struck and SCM that included investor information related to

15            Fund I and Fund II [Doc. No. 1 ¶¶ 57-59] and other purportedly

16            confidential information that were then allegedly used by

17            Counterclaimant to raise money from investors [Doc. No. 1, ¶¶ 67-

18            69] in purported violation of the Defend Trade Secrets Act, 18

19            U.S.C. §§ 1836 *et seq.* [*See* First Claim for Relief, Doc. No. 1, ¶¶

20            67-75).

21         b.   In turn, this Court relied on Mr. Struck and SCM's First Claim for

22            Relief, Trade Secret Misappropriation Under the Defendant Trade

23            Secrets Act to find that this Court has federal question jurisdiction

24            over this claim and supplemental jurisdiction over the rest of Mr.

25            Struck and SCM's claims.  (*See* Doc. No. 26, Order Denying

26            Defendants' Motion to Dismiss or Stay, at pp. 6-8).

27         c.   Mr. Gao is a 50/50 partner and owner with Mr. Struck in the SCM

28            Entities, Fund I, and Fund II – the same entities from whom Mr.

Struck and SCM allege certain trade secrets were stolen.

d.  Meanwhile, the gravamen of all of Counter-Respondents' claims involve some alleged wrongful taking and use of this information (*See* Doc. No. 26 at pp. 9-11).

e.  Because Mr. Gao alleges he is an actual owner of the aforementioned information by way of his ownership of the SCM Entities, Fund I, and Fund II, which includes any alleged trade secrets owned by Fund I and Fund II, an actual case or controversy arising out of the same transactions and occurrences that are the subject matter of the Plaintiffs/Counter-Respondents' claims exists between Counterclaimant on the one hand, and Counter-Respondents on the other.

f.  Permissive counterclaims fall within the court's supplemental jurisdiction where, as is the case here, the permissive counterclaim bears some factual relationship to the complaint. The constitutional requirement of a "case or controversy" is deemed satisfied if the counterclaim is part of the same "common nucleus of operative facts" as the complaint, even though the relationship is not such as would make the counterclaim compulsory.  *See Jones v. Ford Motor Credit Co.*, 358 F. 3d 205, 213 (2nd Cir. 2004); *Rothman v. Emory Univ.*, 123 F. 3d 446, 454 (7th Cir. 1997); *HB Gen. Corp. v. Manchester Partners, L.P.* F. 3d 1185, 1198 (3rd Cir. 1996) 95; *Global NAPs, Inc. v. Verizon New England Inc.* 603 F. 3d 71, 76 (1st Cir. 2010).

g.  Furthermore, supplemental jurisdiction "include[s] claims that involve the joinder or intervention of additional parties." [28 USC § 1367(a)], and because the claims alleged herein arise from a "common nucleus of operative facts," this Court can adjudicate

1          state law claims against the Counter-Respondents who are not

2          parties to the federal claim (so-called "supplemental party

3          jurisdiction"), *i.e.*, no diversity of citizenship or independent basis

4          for federal jurisdiction need be shown as to such parties. (*See*

5          *Ammerman v. Sween* 54 F. 3d 423, 424-425 (7th Cir. 1995);

6          *Mendoza v. Zirkle Fruit Co.* 301 F3d 1163, 1172-1173 (9th Cir.

7          2002); *Trustees of Const. Industry & Laborers Health & Welfare*

8          *Trust v. Desert Valley Landscape & Maintenance, Inc.* 333 F. 3d

9          923, 925(9th Cir. 2003) ("Pendent party jurisdiction is

10          constitutional so long as the pendent state law claim is part of the

11          same 'case or controversy' as the federal claim.")

12      34.    This Court has personal jurisdiction over Counter-Respondents under

13  the specific jurisdiction doctrine as the claims asserted herein arose out of Counter-

14  Respondents' contacts with and actions in the forum state, and specifically, within

15  the County of Los Angeles.  Additionally, by bringing the above-captioned lawsuit

16  against Counterclaimant, Counter-Respondents Mr. Struck and SCM have subjected

17  themselves to the jurisdiction of this Court.  Furthermore, all Counter-Respondents

18  are residents of and domiciled in Los Angeles, California (Mr. Struck) or have their

19  principal places of business in Los Angeles County, California (the SCM Entities).

20      35.    As detailed herein, the required joinder of Fund I and Fund II is

21  allowed under Federal Rule of Civil Procedure 19 because Fund I and Fund II are

22  subject to service of process, their joinder will not deprive the court of subject-

23  matter jurisdiction and, in their absence, the court cannot accord complete relief

24  among the existing parties. Counterclaimant claims an interest relating to the

25  subject of the action and disposing of the action in the absence of Fund I and Fund

26  II will, as a practical matter, impair or impede Counterclaimant's ability to protect

27  their interests while leaving the parties subject to a substantial risk of incurring

28  double, multiple, or otherwise inconsistent obligations because of that interest.

36.     Alternatively, as detailed herein, the permissive joinder of Fund I and Fund II is allowed under Federal Rule of Civil Procedure 20 because Counterclaimant asserts relief as against Fund I and Fund II jointly, severally, and in the alternative with respect to the same transactions, occurrences, and series of transactions and occurrences, and the questions of law and fact are common to them, as well as Mr. Struck and SCM.

37.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district and/or were targeted at Los Angeles and/or the County of Los Angeles.  Additionally, by bringing the above-captioned lawsuit against Counterclaimant, Counter-Respondents Mr. Struck and SCM have subjected themselves to the jurisdiction of this Court.  Accordingly, venue is also proper in this Court.

## FACTUAL ALLEGATIONS

### The Partnership Starts and Finds Success in Building SPVs

38.     Mr. Gao and Mr. Struck first met in 2015.  The two found kindred entrepreneurial spirits in one another and decided to leverage their individual skills to form a partnership focused on structuring special purpose vehicles ("SPVs") to invest in various technology companies.

39.     Although the partnership was never distilled into a written document, it was a straightforward 50/50 split. Each retained the right to share equally in the profits, each shared equally in the partnership's management, each shared equally in the partnership's expenses, and each was held out as co-equal partners to the investment community.[3]

---

[3] Mr. Gao owns 50% of each of the SPV Entities except for four: Zero SPV LLC, Serico SPV LLC, and Probitas SPV LLC, all have three partners with an equal equity split, and thus Mr. Gao holds 33.3% of the equity in those three companies.  As for Ignis SPV LLC, Mr. Gao only holds 18% of the equity in that company, with Mr. Struck and the third partner owning the rest. For ease of reference and due to the sheer volume of entities, throughout this Complaint Mr.

40.     Each also brought different but complimentary skills and resources to the partnership.  Mr. Gao provided his knowledge, connections, and experience with the world of technology and venture capital (particularly in Silicon Valley) earned over the years as a computer science graduate of MIT, mergers and acquisitions banker at Morgan Stanley, and consultant at McKinsey to seek up-and-coming technology companies. Mr. Gao also provided access to investment capital from investors in Asia and the United States.

41.     As a former corporate M&A attorney, Mr. Struck provided the partnership with the legal knowledge needed to incorporate the SPVs and draft the legal documents investors would sign to invest in the various SPVs.

42.     Given his legal skills and training, and the fact that Mr. Gao was providing the knowledge, connections and ability/connections to raise capital to help grow the SPVs, Mr. Gao trusted that Mr. Struck was properly documenting the legal formalities of their relationship.

43.     Throughout 2015 to 2018, Mr. Gao and Mr. Struck formed sixteen SPVs, each of which was incorporated into its own LLC (the SPV Entities) by Mr. Struck.[4]

44.     The SPVs began accumulating investors and soon became successful enterprises in their own right.

45.     True to the nature of their 50/50 partnership, Mr. Gao and Mr. Struck split the operating costs for the SPVs 50/50.  Mr. Gao was also issued K-1 tax filing documents for each of the SPVs reflecting his matching ownership in the various entities.

**The Partnership Branches Out and Forms Fund I**

46.     Between 2015 and 2017, while working with Mr. Struck, Mr. Gao

_____

Gao will refer to his 50% ownership in the SPV Entities, but he acknowledges that his ownership share in these four specific companies is as provided in this footnote.

[4] In addition to the 16 SPVs named in the State Court Action Counterclaim, Mr. Gao and Mr. Struck had also together formed a number of other such entities that were later dissolved.

simultaneously continued to sharpen his skills and connections to the world of Silicon Valley venture capital by working as a venture capital investor with NEA in San Francisco and Menlo Park.

47.     While at NEA, Mr. Gao painstakingly built connections throughout the venture capital industry while learning the intricacies, risks, and rewards of investing in early-stage companies.

48.     Mr. Struck was fully aware of this arrangement and even encouraged Mr. Gao to continue working at NEA because it not only increased their partners' knowledge and connection base, but also lent them a considerable amount of credibility when pitching potential investors.

49.     Mr. Gao's hard work paid off: during the time he was at NEA, he developed deep knowledge and an extensive network in the world of venture capital, including with individuals who would go on to invest in Mr. Gao's and Mr. Struck's businesses and to provide key assistance as advisors to their various funds.

50.     In around 2014 or 2015, Mr. Struck quit his job at Kirkland & Ellis LLP and moved from New York to Los Angeles to work full-time as a venture capitalist.

51.     In January of 2016, Mr. Struck began the process of bringing legal structure to their partnership by incorporating SCM.

52.     SCM was intended to act as the main investment management company for the partnership's various enterprises.

53.     The two partners reconvened shortly thereafter and agreed that Mr. Gao's venture capital knowledge and connections to the venture capital world would allow them to begin offering their own investment funds.

54.     To cement their relationship, they orally agreed to the same terms as applied to their previous work on the SPV Entities: they would be 50/50 partners in their first fund, with each taking 50% of any profits (including the management fees earned for managing the fund) and each shouldering 50% of the costs associated

1   with running and managing the fund.

2       55.     The partners further agreed that SCM would act as the management

3   company for their funds.  Trusting in Mr. Struck's legal acumen, Mr. Gao agreed to

4   using SCM rather than starting an entirely separate company.

5       56.     One of Mr. Gao's investor connections decided to anchor a fund that

6   Mr. Gao and Mr. Struck would equally manage together. This single investor –

7   whom Mr. Gao brought to the Partnership – provided the capital that directly led to

8   the formation of the first venture capital fund between Mr. Gao and Mr. Struck in

9   March of 2016 (Fund I).

10      57.     To further structure the investments and hedge against risks, Mr.

11  Struck recommended that the funds be set up with a subsidiary general partnership

12  limited liability company (defendant Fund I) responsible for acting as the manager

13  of investment funds managed by the general partnership limited liability company,

14  of which he and Mr. Gao would be 50/50 partners and members.  Mr. Struck then

15  incorporated Fund I in March of 2016.

16      58.     Relying on Mr. Struck's legal advice, Mr. Gao also agreed for the two

17  of them to establish a limited partnership limited liability company in which

18  investors – including the initial investor Mr. Gao brought to the partnership – would

19  contribute funds.  Mr. Struck incorporated this LP in March of 2016 as well.

20      59.     Mr. Gao did not sign anything formal with Mr. Struck for Fund I

21  because he trusted him fully and because he was still working for NEA at the time.

22      60.     Mr. Struck and Mr. Gao agreed that Mr. Gao would remain at NEA for

23  1-2 years to sharpen his knowledge and skills in the venture capital world and, to

24  avoid any potential conflict with NEA's policies, further agreed that Mr. Gao would

25  be given 1099 tax forms.  To make up for the time he would be focused on his work

26  at NEA (and to offset the fact that Mr. Struck had no other income), Mr. Gao

27  generously agreed to temporarily reduce his percentage of the management fees so

28  that Mr. Gao would take 25% of the fees, and Mr. Struck would take 75%.  This

1  concession was limited to just the time while Mr. Gao remained an employee of

2  NEA and did not include any of the other income earned by funds (including the

3  carried interest) which remained at a 50/50 split.

4         61.    True to the plan, Mr. Gao remained at NEA until 2017, when he left to

5  publicly join Mr. Struck.

6         62.    Yet even while working at NEA, Mr. Gao continued to work with Mr.

7  Struck on Fund I.  The two both understood that while they were using the

8  companies incorporated by Mr. Struck as the legal vehicles for their investment

9  portfolio, their business enterprise was an equal partnership entitling each to an

10  equal half ownership of Fund I.

11         63.    Consistent with this understanding, Mr. Gao and Mr. Struck held

12  themselves out to the public as equal partners in their endeavors.  Each were listed

13  on marketing materials as managers in the fund, and they each contributed to

14  finding additional investors for Fund I. Mr. Gao trusted his partner to handle the

15  legal side of the business and so he had little to no input or insight into the

16  corporate formalities of Fund I.

17         64.    On information and belief, Mr. Struck abused this trust by improperly

18  failing to include Mr. Gao in Fund I's operating agreement.

19         65.    Both Mr. Gao and Mr. Struck paid for the costs for Fund I, including

20  fund formation and operation costs, financial transaction costs, and taxes.  In

21  addition, both Mr. Gao and Mr. Struck were paid 50% of the management fees paid

22  to SCM as generated by Fund I once Mr. Gao left NEA.

23         66.    While Fund I successfully attracted numerous investors, the initial

24  investor Mr. Gao introduced to Fund I's limited partnership ultimately contributed

25  between 80% and 90% of its capital.

26         67.    The success of Fund I led Mr. Gao and Mr. Struck to begin exploring

27  new investment opportunities and industries through three new sets of entities: the

28  SCSS Entities, SCSA GP, and DDC Entities.

1    <u>**The Partnership Continues to Grow Through Establishing the SCSS Entities,**</u>

2    <u>**SCSA GP, and DDC Entities**</u>

3    68.    The SCSS Entities and SCSA GP were incorporated by Mr. Struck in

4    early 2017.  They both focused on late-stage deals that would largely be sourced

5    and financed through the network Mr. Gao developed while living in Silicon Valley

6    and working at NEA. The only investor in the SCSS Entities and SCSA GP was the

7    same major investor Mr. Gao brought to Fund I.

8    69.    Trusting Mr. Struck to handle the legal side of the business, Mr. Gao

9    once again had little to no input or insight into the corporate formalities of these

10   entities.

11   70.    However, by mutual oral agreement, the two partners once again

12   structured their business approach to both the SCSS Entities and SCSA GP as they

13   had done before by extending their usual partnership terms to the SCSS Entities and

14   SCSA GP: 50/50 ownership, with Mr. Struck handling the legal paperwork and

15   incorporating the companies, and evenly splitting all fees and costs.

16   71.    Consistent with this agreement, Mr. Gao was issued a K-1 showing

17   50% ownership for his 2018 tax filings.

18   72.    In late 2017, the partnership decided to focus on the cryptocurrency

19   industry and, to do so, formed the DDC Entities.

20   73.    Unlike their other business endeavors, the DDC Entities started out as

21   a three-person partnership: Mr. Struck, Mr. Gao, and a third individual (one of Mr.

22   Gao's close friends).

23   74.    In fact, the entire idea of investing in the cryptocurrency industry was

24   one that Mr. Gao's close friend had conceived with Mr. Gao, who then included

25   Mr. Struck.

26   75.    The DDC Entities' investment documents – including its Private

27   Placement Memorandum and Limited Partnership Agreement – listed the three

28   individuals as Principles and owners of the management company.

76.     Mr. Gao and Mr. Struck were to have a co-equal ownership interest (37.5% each), with Mr. Gao's friend holding a smaller minority share.  These shares were reflected in the DDC Entities' Operating Agreement, which also stated that both Mr. Gao and Mr. Struck were managers and members of the LLC.

77.     Unfortunately, disagreement arose between the three partners, and Mr. Gao's friend eventually exited the partnership, leaving just Mr. Gao and Mr. Struck.

78.     Shortly after his friend exited, Mr. Gao discussed apportioning his friend's share with Mr. Struck.  Mr. Gao and Mr. Struck orally agreed to reassign the now departed friend's share equally between them, once again leaving them as 50/50 partners in DDC.

79.     As usual, Mr. Gao relied on and trusted Mr. Struck to memorialize the legal formalities of this agreement.

80.     In the meantime, Mr. Gao and Mr. Struck operated the DDC Entities just as they had with all of their other joint endeavors pursuant to their longstanding partnership agreement: they agreed to split the operating costs of the DDC Entities 50/50, agreed to equally split the management fee (after expenses), held themselves out as equals in their marketing materials and in communicating with potential and current investors, and Mr. Gao was issued K-1 tax documents reflecting his 50% ownership.

81.     On around February 10, 2018, Mr. Struck sent Mr. Gao DDC Entity corporate documents for his review and signature.  While these documents stated that Mr. Gao's equity in DDC was 37.5% and Mr. Struck's equity was 62.5%,  Mr. Struck previously assured Mr. Gao that they were in-fact 50/50 partners and that Mr. Gao could safely sign the agreements with the knowledge that the equity numbers would later be adjusted to 50% and 50% to reflect this fact.

82.     Relying on Mr. Struck's legal opinion and representation, on or around February 13, 2018, Mr. Gao executed the DDC Entities Operating Agreements.

83.     Although Mr. Gao and Mr. Struck were equal partners, the practical

1   reality of how Mr. Struck structured the legal entities meant that he alone controlled

2   finances, management, and distribution of the management fees, as well as the

3   financial accounts the partners used to cover costs and take their draws.

4   **The Partnership Establishes Fund II**

5       84.    As the partnership continued to find success in 2017 and 2018, Mr.

6   Gao and Mr. Struck began laying the groundwork needed to establish a second

7   venture capital fund (Fund II).

8       85.    In 2017, and in order to further the value he added to the partnership,

9   Mr. Gao began attending the prestigious Stanford Graduate School of Business. At

10  Mr. Struck's insistence, Mr. Gao again agreed to reduce his share of the Fund I

11  management fees to 25% for the duration of his time at Stanford. All other aspects

12  of Fund I, including all other income, profits, and costs remained 50/50.

13      86.    Shortly after Mr. Gao began his studies at Stanford, Mr. Struck began a

14  campaign to convince him to quit to work full-time on the partnership. As part of

15  this campaign, Mr. Struck threatened to reevaluate their partnership if Mr. Gao did

16  not agree to devote himself to it entirely.

17      87.    While Mr. Gao wished to remain in the Bay Area, he appreciated that

18  his partner needed his help. Relying on Mr. Struck's entreaties, Mr. Gao left

19  Stanford at the start of 2018 to work full-time on the partnership.

20      88.    At Mr. Struck's urging, Mr. Gao then left his Bay Area home and

21  moved to Los Angeles in early 2019 specifically to work on the launch of Fund II.

22  This was done under the explicit agreement and understanding that Mr. Struck and

23  Mr. Gao would remain 50/50 partners in all of their entities, including Fund II.

24      89.    By March of 2019, Mr. Gao was living permanently in Los Angeles

25  and was working tirelessly to get Fund II in order by partaking in every aspect of

26  the fund's investment raise: from reaching out to attract limited partners and

27  meeting with potential limited partners, to building the limited investor deck, to

28  successfully recruiting four of the fund's seven advisors.

90.     Consistent with their 50/50 arrangement, the partners were presented together in marketing materials to investors as co-equal managers (Mr. Gao was referred to as Managing General Partner), they were listed as managers of Fund II in the limited partnership agreement and the company website, and Mr. Gao's background and contacts in Silicon Valley were prominently used to solicit investors.  Both Mr. Gao and Mr. Struck's management fees from Fund I were used to fund the setup and initial operating costs of Fund II, including paying for office space and advertising materials.  Other expenses, including translating of the investor presentations to Mandarin in order to solicit Mr. Gao's Asian investors, were also split 50/50.

91.     As was the case with their other endeavors, Mr. Gao trusted Mr. Struck to handle the legal aspects of Fund II and not to abuse his position as legal counsel to the partnership.  Once again, Mr. Struck drafted the operating agreements and other fund-related paperwork without Mr. Gao's involvement.

**The Partnership Begins to Unravel**

92.     Despite Mr. Gao's and Mr. Struck's best efforts, Fund II struggled to attract investors throughout a majority of 2019, and Mr. Struck began to assert he had authority beyond that of an equal partner.

93.     For example, in July 2019, Mr. Struck told Mr. Gao he would not discuss splitting equity in Fund I (which had started to mature) until the Fund I portfolio companies had completely exited the fund and he saw more "chips on the table" from Mr. Gao, implying that Mr. Gao needed to bring more capital/deals/other value to their partnership.

94.     Mr. Gao expressed surprise at this position, noting that he was entitled to a 50/50 split of all Fund I revenues consistent with their agreement.

95.     Mr. Struck also used his control of SCM to cease paying Fund I management fees to Mr. Gao.

96.     At the same time, Mr. Struck effectively marginalized Mr. Gao from

Fund II: despite continuing to highlight Mr. Gao's involvement and credentials to investors, Mr. Struck sidelined him from Fund II, insisting he should focus on the DDC Entities, and unilaterally demoted him from "Managing General Partner" to "Partner" on marketing materials.  Meanwhile, Mr. Gao never received any of the management fees owed to him for Fund II.

97.    Had Mr. Gao known he would have been marginalized from Fund II, he would never have given up his seat at Stanford's business school and would not have moved from the Bay Area to Los Angeles.

98.    Despite these personal attacks, throughout 2019, Mr. Gao continued to push the DDC Entities and the partnership's other investments forward.

**Mr. Gao Realizes He Is Being Forced Out, and the Partnership Comes Apart**

99.    As the partnership conducted its business throughout 2020, it became clear to Mr. Gao that Mr. Struck had no intention of honoring the partnership the two men had built over the last five years.

100.    Instead, Mr. Struck seemed committed to using the leverage he built for himself by acting as the partnership's in-house legal counsel to deny that Mr. Gao had any ownership interests in any of their enterprises beyond the 37.5% ownership share in the DDC Entities – which had never been updated by Mr. Struck to reflect Mr. Gao's true 50% ownership.

101.    Starting in August 2020, in a series of oral discussions and communications via email and text message, Mr. Struck falsely claimed that Mr. Gao was not a partner and that no partnership even existed.  Instead, he belligerently implied that Mr. Gao was merely a contractor assisting him in building his investment portfolio.

102.    Mr. Struck then essentially shut Mr. Gao out from continuing to work on any of their portfolios beyond the DDC Entities.

103.    When withholding Mr. Gao's payments proved insufficient, Mr. Struck began searching for any excuse to completely sever the relationship.

104.   In early February 2021, Mr. Gao attempted to set up a wire transfer so as to pay himself DDC Entities management fees owed to him.  Due to an error, this transfer was not successful.

105.   Feigning outrage by this unilateral effort, Mr. Struck purported to "terminate" Mr. Gao "for cause." Mr. Struck then immediately revoked Mr. Gao's access to joint bank accounts, removed him from the website, removed his email access, and began telling employees and third-party investors not to communicate with Mr. Gao because he had been terminated "for cause."  In total, Mr. Struck finished the job of freezing Mr. Gao out of the very companies he founded.

106.   Nothing about Mr. Gao's actions were improper.  Mr. Struck would regularly and unilaterally transfer monies owed to himself from the DDC Entities' accounts.  For example, the same week as when Mr. Gao attempted to make this transfer, Mr. Struck unilaterally transferred to himself funds from the DDC Entities' account, both funds that were actually owed to him and funds that were owed to Mr. Gao.

107.   Nor was Mr. Gao's transfer a violation of the DDC Entities' operating agreements because both Mr. Gao and Mr. Struck were listed as the entities' managers.

**Mr. Struck Has Caused Mr. Gao And Mr. Gao's Businesses Great Damage**

108.   All told, Mr. Gao has spent his own money by way of investments in the partnership's companies, costs paid on the company's behalf for which he has not been reimbursed, and tax payments on behalf of the company for which he has not been reimbursed.

109.   Moreover, Mr. Struck has withheld certain of Mr. Gao's payments that are owed on the management fees collected by the SCM Entities.

110.   As a result of Mr. Struck's duplicitous and fraudulent conduct, Mr. Gao has experienced millions of dollars in damages in amounts to be determined at trial in the form of unpaid management fees, unpaid carried interest, and other

1  unpaid income received by the Counter-Respondents but not shared with Mr. Gao.

2      111.   Additionally, given the nature of their business, Mr. Gao's portion of

3  the management fees and carried interest earned by SCM Entities will only increase

4  over the next five-to-ten years and is expected to be worth tens of millions of

5  dollars.

6  **Mr. Struck Unlawfully Impersonates Mr. Gao to Obtain Confidential**

7  **Financial Information**

8      112.   Compounding the harm that he has caused to Mr. Gao, after purporting

9  to "terminate" Mr. Gao "for cause," Mr. Struck impersonated Mr. Gao by logging

10  in to Mr. Gao's Struck Capital email address, yida@struckcapital.com, without his

11  consent.

12      113.   Mr. Gao discovered Mr. Struck's brazen scheme when the founder and

13  CEO of a start-up company that Mr. Gao had previously backed forwarded him an

14  email chain including an email from yida@struckcapital.com dated after Mr. Gao's

15  purported "termination" and which Mr. Gao never sent.  In the email, sent from

16  yida@struckcapital.com, Mr. Struck requested confidential personal investment

17  information from Mr. Gao's contact and signed the email, "Best, Yida."  Mr. Struck

18  also sent this email as a reply to a prior email exchange between Mr. Gao and his

19  contact as a means to enhance the credibility of his impersonation.  Believing that

20  the email was, in fact, sent by Mr. Gao, Mr. Gao's contact responded by sending

21  Mr. Struck the requested confidential information as an attachment to an email

22  beginning, "Hi Yida," and also including a personal note to Mr. Gao.

23      114.   On information and belief, Mr. Struck also sent other emails to Mr.

24  Gao's contacts, posing as Mr. Gao, including to obtain confidential financial

25  information and otherwise harm Mr. Gao.

26

27

28

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Declaratory Relief

### (By Mr. Gao Against all Counter-Respondents)

115.   Counterclaimant incorporates and alleges by reference each and every allegation contained in the preceding paragraphs.

116.   An actual controversy has arisen and now exists between Mr. Gao and the Counter-Respondents: Mr. Gao is owed 50% ownership in the SCM Entities.

117.   A partnership was formed between Mr. Gao and Mr. Struck wherein they each retained the right to receive profits and losses, each shared equally in the management of the Partnership Entities, each equally paid the Partnership Entities' expenses, and both held themselves out as co-equal partners to the investment community.

118.   Mr. Gao and Mr. Struck orally agreed that they would be 50/50 partners in their partnership's endeavors, which included the SCM Entities, DDC Entities, SPV Entities, SCSS Entities, and SCSA GP (collectively, the "Partnership Entities").

119.   As 50/50 partners, Mr. Gao and Mr. Struck were each entitled to half ownership of the Partnership Entities, including the SCM Entities.

120.   Mr. Struck has refused to acknowledge and honor: (1) the existence of the partnership, (2) that Mr. Gao is his 50/50 partner, and (3) that Mr. Gao is entitled to half ownership of the SCM Entities' assets, holdings, and revenues.

121.   A judicial determination is necessary and appropriate at this time because there exists an actual and present controversy regarding the existence and effect of the partnership.

122.   A judicial determination is also necessary and appropriate at this time because there exists an actual and present controversy regarding Mr. Gao's percentage ownership of each of the SCM Entities, and thus a judicial

ORSUS GATE LLP
A CALIFORNIA
LITIGATION BOUTIQUE

1  determination of these issues and of the respective duties of Mr. Gao and Mr.

2  Struck is necessary and appropriate at this time.

3  ### SECOND CAUSE OF ACTION

4  **Breach of Oral Contract – Partnership Agreement**

5  **(By Mr. Gao Against Counter-Respondent Adam B. Struck)**

6  123.   Counterclaimant incorporates and alleges by reference each and every

7  allegation contained in the preceding paragraphs.

8  124.   Mr. Gao and Mr. Struck entered into an oral contract to form a

9  partnership in or around 2015.

10  125.   Under their partnership agreement, Mr. Gao and Mr. Struck agreed to

11  be 50/50 partners in their business endeavors and 50/50 owners of the partnership

12  and Partnership Entities, including splitting all business revenues, costs, and

13  expenses, an equal right to management of the partnership and Partnership Entities,

14  and an agreement to hold both of themselves out as co-equal partners to the

15  investment community.

16  126.   Mr. Gao and Mr. Struck re-confirmed their agreement to an equal

17  50/50 partnership when creating Fund I and Fund II.

18  127.   Mr. Gao has fulfilled all his obligations under the partnership,

19  including spending years working to build up the partnership; leaving gainful

20  employment to focus full time on the partnership; leaving a prestigious university to

21  focus full time on the partnership; allowing his name and experience to be used in

22  marketing the partnership's endeavors; introducing and recruiting investors and

23  advisers to the partnership; and shouldering half the costs, expenses, and tax

24  liabilities for the Partnership Entities.

25  128.   Mr. Struck has failed to perform his required obligations under the

26  partnership agreement in numerous ways, including but not limited to failing to

27  provide Mr. Gao with equal possession, access, and control over the Partnership

28  Entities; failing to pay Mr. Gao 50% of the management fees collected by the SCM

1  Entities; and failing to provide Mr. Gao 50% of the profits earned by the SCM

2  Entities.

3         129.   Mr. Struck has further harmed Mr. Gao by unilaterally, and without

4  authority or factual basis, claiming to have "terminated" Mr. Gao from his

5  association with the Partnership Entities; removing Mr. Gao's access to the

6  Partnership Entities, including bank access and his own email account; removing

7  Mr. Gao from the Partnership Entities' public-facing documents (such as its

8  website, LinkedIn page, and other marketing materials); and falsely claiming to

9  investors, portfolio company founders, advisors, employees, contractors, and the

10  public at large that Mr. Gao has never been a partner in the Partnership Entities, that

11  Mr. Gao has been terminated "for cause", that Mr. Gao is guilty of embezzlement,

12  and that Mr. Gao has not been contributing to the Partnership Entities for several

13  years.

14         130.   Mr. Struck has improperly withheld distributions and payments owed

15  by Mr. Gao based on the fees and revenues earned by the SCM Entities, in an

16  amount to be determined at trial, plus costs and interest.

17         131.   At the same time, Mr. Struck has required Mr. Gao to pay 50% of the

18  SCM Entities' expenses, costs, and tax liabilities.

19         132.   As a result of Defendants' actions, Plaintiff has sustained damages in

20  an amount to be determined at trial, but which is estimated to be in the tens of

21  millions of dollars, plus costs and interest.

22         133.   Additionally, Mr. Gao seeks judicial confirmation of his partnership

23  rights by way of an order confirming his 50% ownership interests in each of the

24  SCM Entities and a further order granting him access to the SCM Entities' accounts

25  and properties.

26

27

28

# THIRD CAUSE OF ACTION

## Breach of Fiduciary Duty

### (By Mr. Gao Against Counter-Respondent Adam B. Struck)

134.   Counterclaimant incorporates and alleges by reference each and every allegation contained in the preceding paragraphs.

135.   Mr. Gao and Mr. Struck entered into an oral contract to form a partnership in or around 2015.

136.   Under their partnership agreement, Mr. Gao and Mr. Struck agreed to be 50/50 partners in their business endeavors and 50/50 owners of the partnership and Partnership Entities, including splitting all business revenues, costs, and expenses, an equal right to management of the partnership and SCM Entities, and an agreement to hold both of themselves out as co-equal partners to the investment community.

137.   Mr. Gao and Mr. Struck re-confirmed their agreement to an equal 50/50 partnership in creating each new entity, including each of the SCM Entities.

138.   Partners must deal with each other in good faith.

139.   Mr. Gao has fulfilled all his obligations under the partnership, including spending years working to build up the partnership; leaving gainful employment to focus full time on the partnership; leaving a prestigious university to focus full time on the partnership; allowing his name and experience to be used in marketing the partnership's endeavors; introducing and recruiting investors and advisers to the partnership; and shouldering half the costs, expenses, and tax liabilities for the Partnership Entities.

140.   Mr. Gao has acted in good faith by always working to the benefit of the partnership and never putting his personal gain above that of the partnership or his partner (Mr. Struck).

141.   The fiduciary duties of partners are codified in California Corporations Code section 16404 and consist of the duties of loyalty and care set forth in subdivisions (b) and (c), respectively.

142.   The duty of loyalty includes: (i) to account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity; (ii) to refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership; and (iii) to refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.

143.   The duty of care in the conduct and winding up of the partnership business includes refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

144.   Section 16404(d) also provides that a partner shall discharge the duties to the partnership and the other partners under the Corporations Code or under the partnership agreement and exercise any rights consistently with the obligation of good faith and fair dealing.

145.   Mr. Struck has failed to perform his required obligations under the partnership agreement in numerous ways, including but not limited to failing to provide Mr. Gao with equal possession, access, and control over the Partnership Entities; failing to pay Mr. Gao 50% of the management fees collected by the Partnership Entities; and failing to provide Mr. Gao 50% of the profits earned by the Partnership Entities.

146.   Mr. Struck has improperly withheld distributions and payments owed by Mr. Gao based on the fees and revenues earned by the SCM Entities, in an amount to be determined at trial, plus costs and interest.

147.   At the same time, Mr. Struck has required Mr. Gao to pay 50% of the

1    SCM Entities' expenses, costs, and tax liabilities in amounts to be determined at

2    trial.

3        148.   Mr. Struck has breached his fiduciary duty Mr. Gao by unilaterally,

4    and without authority or factual basis, claiming to have "terminated" Mr. Gao from

5    his association with the Partnership Entities; removing Mr. Gao's access to the

6    Partnership Entities, including bank access and his own email account; removing

7    Mr. Gao from the Partnership Entities' public-facing documents (such as its

8    website, LinkedIn page, and other marketing materials); and falsely claiming to

9    investors, portfolio company founders, advisors, employees, contractors, and the

10   public at large that Mr. Gao has never been a partner in the Partnership Entities, that

11   Mr. Gao has been terminated "for cause", that Mr. Gao is guilty of embezzlement,

12   and that Mr. Gao has not been contributing to the Partnership Entities for several

13   years.

14       149.   Mr. Struck's actions of preventing Mr. Gao from continuing to

15   perform his duties has harmed the partnership, its investors, its portfolio companies,

16   its employees, and has damaged the overall Partnership Entities, and specifically

17   the SCM Entities—and by extension, Mr. Gao's interest in those businesses has

18   been injured.

19       150.   As an attorney, Mr. Struck also owed a fiduciary duty of loyalty and

20   care above and beyond that of a lay person.  Mr. Struck affirmatively took on the

21   legal aspects of the partnership and then used his legal expertise to benefit himself

22   to Mr. Gao's disadvantage. At no time did Mr. Struck recommend that Mr. Gao

23   seek independent legal counsel to secure his own interests.  Instead, Mr. Struck

24   consistently represented that he would take care of all legal formalities in a way that

25   would protect Mr. Gao and his interests.

26       151.   Mr. Struck's actions were purposefully done with the knowledge that

27   they were wrong and unlawful, or at the very least, grossly negligent or reckless

28   constituting intentional misconduct.

152.    As a result of Mr. Struck's breach of his fiduciary duties, Mr. Gao has sustained damages in an amount to be determined at trial, but which are estimated to be in the tens of millions of dollars, plus costs and interest.

153.    Additionally, as a result of Mr. Struck's breach of his fiduciary duties, Mr. Gao has been denied his 50% ownership interests in the SCM Entities.

## FOURTH CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing

### (Cal. Corp. Code § 16404(d))

### (By Mr. Gao Against Counter-Respondent Adam B. Struck)

154.    Counterclaimant incorporates and alleges by reference each and every allegation contained in the preceding paragraphs.

155.    The California Uniform Partnership Act provides that a partner has an obligation of good faith and fair dealing in the discharge of his or her duties—as well as in the exercise of any rights—under the Act and under the partnership agreement. Cal. Corp. Code § 16404(d).

156.    Mr. Gao and Mr. Struck entered into an oral contract to form a partnership in or around 2015.

157.    Under their partnership agreement, Mr. Gao and Mr. Struck agreed to be 50/50 partners in their business endeavors and 50/50 owners of the partnership and Partnership Entities, including splitting all business revenues, costs, and expenses, an equal right to management of the partnership and SCM Entities, and an agreement to hold both of themselves out as co-equal partners to the investment community.

158.    Mr. Gao and Mr. Struck re-confirmed their agreement to an equal 50/50 partnership in creating each new entity, including each of the SCM Entities.

159.    Mr. Gao has fulfilled all his obligations under the partnership, including spending years working to build up the partnership; leaving gainful employment to focus full time on the partnership; leaving a prestigious university to

ORSUS GATE LLP
A CALIFORNIA
LITIGATION BOUTIQUE

1  focus full time on the partnership; allowing his name and experience to be used in

2  marketing the partnership's endeavors; introducing and recruiting investors and

3  advisers to the partnership; and shouldering half the costs, expenses, and tax

4  liabilities for the Partnership Entities.

5       160.   Mr. Gao has acted in good faith by always working to the benefit of

6  the partnership and never putting his personal gain above that of the partnership or

7  his partner (Mr. Struck).

8       161.   Mr. Struck violated his fiduciary duty by (i) failing to account to the

9  partnership and hold as trustee for it any property, profit, or benefit derived by the

10  partner in the conduct of the partnership's business or derived from a use by the

11  partner of partnership property or information, including the appropriation of a

12  partnership opportunity; (ii) failing to refrain from dealing with the partnership in

13  the conduct or winding up of the partnership business as though he were a party

14  having an interest adverse to the partnership; and (iii) failing to refrain from

15  competing with the partnership in the conduct of the partnership business before the

16  dissolution of the partnership.

17       162.   Mr. Struck has further breached the covenant of good faith and fair

18  dealing to Mr. Gao by unilaterally, and without authority or factual basis, claiming

19  to have "terminated" Mr. Gao from his association with the Partnership Entities;

20  removing Mr. Gao's access to the Partnership Entities, including bank access and

21  his own email account; removing Mr. Gao from the Partnership Entities' public-

22  facing documents (such as its website, LinkedIn page, and other marketing

23  materials); and falsely claiming to investors, portfolio company founders, advisors,

24  employees, contractors, and the public at large that Mr. Gao has never been a

25  partner in the Partnership Entities, that Mr. Gao has been terminated "for cause",

26  falsely accusing Mr. Gao of embezzlement, falsely accusing Mr. Gao of stealing the

27  Partnership's trade secrets, and that Mr. Gao has not been contributing to the

28  Partnership Entities for several years.

163.   Mr. Struck has improperly withheld distributions and payments owed by Mr. Gao based on the fees and revenues earned by the SCM Entities, in an amount to be proven at trial in the form of unpaid management fees, and unpaid carried interest, plus interest.

164.   At the same time, Mr. Struck has required Mr. Gao to pay 50% of the SCM Entities' expenses, costs, and tax liabilities.

165.   Due to his wrongful acts, Mr. Struck has profited and has been unjustly enriched at Mr. Gao's expense and has effectively and illegally seized complete control of the Partnership Entities.

166.   Alternatively, due to his wrongful acts, Mr. Struck has profited by using Mr. Gao's own money to pay for the SCM Entities costs, expenses, and tax liabilities for which Mr. Gao has not been reimbursed.

167.   As a result of Mr. Struck's breach of the covenant of good faith and fair dealing, Mr. Gao now seeks restitution from Mr. Struck and seeks an order disgorging all profits, benefits, and other compensation obtained by Mr. Struck, in an amount to be determined at trial, but which are estimated to be in the tens of millions of dollars, plus costs and interest.

168.   Additionally, as a result of Mr. Struck's breach, Mr. Gao has been denied his 50% ownership interests in the SCM Entities.

**FIFTH CAUSE OF ACTION**

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**(By Mr. Gao Against Counter-Respondent Adam B. Struck)**

169.   Counterclaimant incorporates and alleges by reference each and every allegation contained in the preceding paragraphs.

170.   Mr. Gao and Mr. Struck entered into an oral contract to form a partnership in or around 2015.

171.   Under their partnership agreement, Mr. Gao and Mr. Struck agreed to be 50/50 partners in their business endeavors and 50/50 owners of the partnership

and Partnership Entities, including splitting all business revenues, costs, and expenses, an equal right to management of the partnership and SCM Entities, and an agreement to hold both of themselves out as co-equal partners to the investment community.

172.   Mr. Gao and Mr. Struck re-confirmed their agreement to an equal 50/50 partnership in creating each new entity, including each of the SCM Entities.

173.   Mr. Gao has fulfilled all his obligations under the partnership, including spending years working to build up the partnership; leaving gainful employment to focus full time on the partnership; leaving a prestigious university to focus full time on the partnership; allowing his name and experience to be used in marketing the partnership's endeavors; introducing and recruiting investors and advisers to the partnership; and shouldering half the costs, expenses, and tax liabilities for the Partnership Entities.

174.   Mr. Gao has acted in good faith by always working to the benefit of the partnership and never putting his personal gain above that of the partnership or his partner (Mr. Struck).

175.   Mr. Struck violated his fiduciary duty by (i) failing to account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct of the partnership's business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity; (ii) failing to refrain from dealing with the partnership in the conduct or winding up of the partnership business as though he were a party having an interest adverse to the partnership; and (iii) failing to refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.

176.   Mr. Struck has further breached the covenant of good faith and fair dealing to Mr. Gao by unilaterally, and without authority or factual basis, claiming to have "terminated" Mr. Gao from his association with the Partnership Entities;

1   removing Mr. Gao's access to the Partnership Entities, including bank access and

2   his own email account; removing Mr. Gao from the Partnership Entities' public-

3   facing documents (such as its website, LinkedIn page, and other marketing

4   materials); and falsely claiming to investors, portfolio company founders, advisors,

5   employees, contractors, and the public at large that Mr. Gao has never been a

6   partner in the Partnership Entities, that Mr. Gao has been terminated "for cause",

7   falsely accusing Mr. Gao of embezzlement, falsely accusing Mr. Gao of stealing the

8   Partnership's trade secrets, and that Mr. Gao has not been contributing to the

9   Partnership Entities for several years.

10         177.   Mr. Struck has improperly withheld distributions and payments owed

11   by Mr. Gao based on the fees and revenues earned by the SCM Entities, in an

12   amount to be determined at trial, plus costs and interest.

13         178.   At the same time, Mr. Struck has required Mr. Gao to pay 50% of the

14   Partnership Entities' expenses, costs, and tax liabilities.

15         179.   Due to his wrongful acts, Mr. Struck has profited and has been unjustly

16   enriched at Mr. Gao's expense and has effectively and illegally seized complete

17   control of the SCM Entities.

18         180.   Alternatively, due to his wrongful acts, Mr. Struck has profited by

19   using Mr. Gao's own money to pay for the SCM Entities costs, expenses, and tax

20   liabilities for which Mr. Gao has not been reimbursed.

21         181.   As a result of Mr. Struck's breach of the covenant of good faith and

22   fair dealing, Mr. Gao now seeks restitution from Mr. Struck and seeks an order

23   disgorging all profits, benefits, and other compensation obtained by Mr. Struck, in

24   an amount to be determined at trial, but which are estimated to be in the tens of

25   millions of dollars, plus costs and interest.

26         182.   Additionally, Mr. Gao seeks judicial confirmation of his partnership

27   rights by way of an order confirming his 50% ownership interests in each of the

28   SCM Entities.

**SIXTH CAUSE OF ACTION**

**Accounting (Cal. Corp. Code § 16403)**

**(By Mr. Gao Against All Counter-Respondents)**

183.   Counterclaimant incorporates and alleges by reference each and every allegation contained in the preceding paragraphs.

184.   Mr. Gao is a current partner and 50/50 owner of the Partnership Entities.

185.   Mr. Gao and Mr. Struck entered into an oral contract to form a partnership in or around 2015.

186.   Under their partnership agreement, Mr. Gao and Mr. Struck agreed to be 50/50 partners in their business endeavors and 50/50 owners of the partnership and Partnership Entities, including splitting all business revenues, costs, and expenses, an equal right to management of the partnership and SCM Entities, and an agreement to hold both of themselves out as co-equal partners to the investment community.

187.   Mr. Gao and Mr. Struck re-confirmed their agreement to an equal 50/50 partnership when creating each new entity, including each of the SCM Entities.

188.   Mr. Struck and the SCM Entities are withholding equity and profits from Mr. Gao and are refusing to provide Mr. Gao access to the SCM Entities' books and records.

189.   Pursuant to California Corporations Code § 16403, demand is hereby made for an accounting of the partnership's books and records, including but not limited to an accounting of the capital contributions, profits, losses, expenses, and equity in the partnership's companies, which include the SCM Entities.

## SEVENTH CAUSE OF ACTION

### Intentional Misrepresentation (Fraud)

### (By Mr. Gao Against Counter-Respondent Adam B. Struck)

190.   Counterclaimant incorporates and alleges by reference each and every allegation contained in the preceding paragraphs.

191.   Mr. Gao and Mr. Struck entered into an oral contract to form a partnership in or around 2015.

192.   Under their partnership agreement, Mr. Gao and Mr. Struck agreed to be 50/50 partners in their business endeavors and 50/50 owners of the partnership and Partnership Entities, including splitting all business revenues, costs, and expenses, an equal right to management of the partnership and SCM Entities, and an agreement to hold both of themselves out as co-equal partners to the investment community.

193.   Mr. Gao and Mr. Struck re-confirmed their agreement to an equal 50/50 partnership when creating each new entity, including each of the SCM Entities.

194.   Specifically, each and every time Mr. Gao and Mr. Struck formed a new business—starting in 2015 with the SPV Entities, continuing into early 2016 with the SCM Entities for Fund I, continuing into early 2017 with the SCSS Entities and SCSA GP, continuing into late 2017 with the DDC Entities, and ending in 2019 with the SCM Entities for Fund II—Mr. Struck told Mr. Gao that the terms of their partnership remained intact: they were 50/50 partners in their business endeavors and 50/50 owners of the partnership, including splitting all business profits and expenses.

195.   Taking on the legal aspects of the partnership, Mr. Struck assured Mr. Gao that he would handle all legal formalities necessary to memorialize their 50/50 partnership and that each of them would be equally protected in case of any dispute. Mr. Struck never advised Mr. Gao to seek independent counsel to represent his

1  interests, but instead assured Mr. Gao that Mr. Struck could be trusted to represent

2  both of their interests.

3      196.   These representations were false.  Mr. Struck never intended on

4  honoring their 50/50 partnership and rather than drawing up the necessary legal

5  documents to memorialize their partnership, Mr. Struck purposely structured each

6  of the businesses to his own advantage.  He did this by avoiding drafting

7  partnership agreements that would, in writing, memorialize his and Mr. Gao's

8  verbal agreements.  To the extent corporate documents were filed, Mr. Struck

9  would consistently name himself as the only owner without even mentioning Mr.

10  Gao's involvement.  For the only document to actually acknowledge Mr. Gao, the

11  DDC Operating Agreements, Mr. Struck still took advantage of his position as the

12  attorney and sole drafter by granting himself all of the equity of their departing third

13  partner.

14      197.   At the same time, Mr. Struck continued to claim to Mr. Gao that they

15  were 50/50 partners; held Mr. Gao out as an equal partner to employees, investors,

16  advisers, and the general public; required Mr. Gao to pay 50% of the Partnership

17  Entities' costs, expenses, and tax liabilities; issued Mr. Gao distributions amounting

18  to 50% of the Partnership Entities' profits; and issued Mr. Gao K-1 tax documents

19  indicating that Mr. Gao was a 50% partner.

20      198.   Mr. Struck made these misrepresentations specifically to induce Mr.

21  Gao to contribute his name, experience, connections, time, and hard work towards

22  the partnership. These misrepresentations were also intended to induce Mr. Gao

23  into pay for 50% of all the SCM Entities' costs, expenses, and tax liabilities.

24      199.   Mr. Gao justifiably and reasonably relied on the statements from Mr.

25  Struck that the two were 50/50 partners and had no reason to believe that Mr.

26  Struck was lying to him, let alone that he was drawing up the corporate paperwork

27  to exclude him as an owner.

28      200.   As a result of Mr. Struck's misrepresentations, Mr. Gao spent years

1  working on behalf of the partnership and gave up numerous other opportunities,

2  including leaving a lucrative and prestigious job, leaving Stanford business school,

3  and moving from the Bay Area to Los Angeles all in reliance on Mr. Struck's false

4  claims of partnership.  Mr. Gao also paid 50% of the SCM Entities' expenses, costs,

5  and tax liabilities.

6      201.   As a result of his justifiable reliance on Mr. Struck's

7  misrepresentations, Mr. Gao has effectively been denied his 50% equity share in

8  each of the Partnership Entities and incurred damages in an amount to be

9  determined at trial, but which are estimated to be in the tens of millions of dollars,

10  plus costs and interest.

11      202.   In committing these wrongful acts, Mr. Struck acted intentionally, with

12  malice and in conscious disregard of Mr. Gao's rights and resulting damages.  As a

13  result, Mr. Gao is entitled to an award of punitive and exemplary damages.

14                    **EIGHTH CAUSE OF ACTION**

15                    **Negligent Misrepresentation**

16      **(By Mr. Gao Against Counter-Respondent Adam B. Struck)**

17      203.   Counterclaimant incorporates and alleges by reference each and every

18  allegation contained in the preceding paragraphs.

19      204.   Mr. Gao and Mr. Struck entered into an oral contract to form a

20  partnership in or around 2015.

21      205.   Under their partnership agreement, Mr. Gao and Mr. Struck agreed to

22  be 50/50 partners in their business endeavors and 50/50 owners of the partnership

23  and Partnership Entities, including splitting all business revenues, costs, and

24  expenses, an equal right to management of the partnership and SCM Entities, and

25  an agreement to hold both of themselves out as co-equal partners to the investment

26  community.

27      206.   Mr. Gao and Mr. Struck re-confirmed their agreement to an equal

28  50/50 partnership when creating each new entity, including each of the SCM

ORSUS GATE LLP
A CALIFORNIA
LITIGATION BOUTIQUE

1  Entities.

2      207.   Specifically, each and every time Mr. Gao and Mr. Struck formed a

3  new business—starting in 2015 with the SPV Entities, continuing into early 2016

4  with the SCM Entities for Fund I, continuing into early 2017 with the SCSS Entities

5  and SCSA GP, continuing into late 2017 with the DDC Entities, and ending in 2018

6  with the SCM Entities for Fund II—Mr. Struck told Mr. Gao that the terms of their

7  partnership remained intact: they were 50/50 partners in their business endeavors

8  and 50/50 owners of the partnership, including splitting all business profits and

9  expenses.

10      208.   Taking on the legal aspects of the partnership, Mr. Struck assured Mr.

11  Gao that he would handle all legal formalities necessary to memorialize their 50/50

12  partnership and that each of them would be equally protected in case of any dispute.

13  Mr. Struck never advised Mr. Gao to seek independent counsel to represent his

14  interests, but instead assured Mr. Gao that Mr. Struck could be trusted to represent

15  both of their interests.

16      209.   These representations were false.  Mr. Struck never intended on

17  honoring their 50/50 partnership and rather than drawing up the necessary legal

18  documents to memorialize their partnership, Mr. Struck purposely structured each

19  of the businesses to his own advantage.  He did this by avoiding drafting

20  partnership agreements that would, in writing, memorialize his and Mr. Gao's

21  verbal agreements.  To the extent corporate documents were filed, Mr. Struck

22  would consistently name himself as the only owner without even mentioning Mr.

23  Gao's involvement.  For the only document to actually acknowledge Mr. Gao, the

24  DDC Operating Agreements, Mr. Struck still took advantage of his position as the

25  attorney and sole drafter by granting himself all of the equity of their departing third

26  partner.

27      210.   At the same time, Mr. Struck continued to claim to Mr. Gao that they

28  were 50/50 partners; held Mr. Gao out as an equal partner to employees, investors,

1   advisers, and the general public; required Mr. Gao to pay 50% of the Partnership

2   Entities' costs, expenses, and tax liabilities; issued Mr. Gao distributions amounting

3   to 50% of the Partnership Entities' profits; and issued Mr. Gao K-1 tax documents

4   indicating that Mr. Gao was a 50% partner.

5       211.   Mr. Struck made these misrepresentations specifically to induce Mr.

6   Gao to contribute his name, experience, connections, time, and hard work towards

7   the partnership. These misrepresentations were also intended to induce Mr. Gao

8   into paying for 50% of all the Partnership Entities' costs, expenses, and tax

9   liabilities.

10      212.   Mr. Gao justifiably and reasonably relied on the statements from Mr.

11  Struck that the two were 50/50 partners and had no reason to believe that Mr.

12  Struck was lying to him, let alone that he was drawing up the corporate paperwork

13  to exclude him as an owner.

14      213.   As a result of Mr. Struck's misrepresentations, Mr. Gao spent years

15  working on behalf of the partnership and gave up numerous other opportunities,

16  including leaving a lucrative and prestigious job, leaving Stanford business school,

17  and moving from the Bay Area to Los Angeles all in reliance on Mr. Struck's false

18  claims of partnership.  Mr. Gao also paid 50% of the SCM Entities' expenses, costs,

19  and tax liabilities.

20      214.   As a result of his justifiable reliance on Mr. Struck's

21  misrepresentations, Mr. Gao has effectively been denied his 50% equity share in

22  each of the Partnership Entities and incurred damages in an amount to be

23  determined at trial, but which are estimated to be in the tens of millions of dollars,

24  plus costs and interest.

25      215.   In committing these wrongful acts, Mr. Struck acted intentionally, with

26  malice and in conscious disregard of Mr. Gao's rights and resulting damages.  As a

27  result, Mr. Gao is entitled to an award of punitive and exemplary damages.

28

# NINTH CAUSE OF ACTION

## Conversion

### (By Mr. Gao Against Counter-Respondent Adam B. Struck)

216.    Counterclaimant incorporates and alleges by reference each and every allegation contained in the preceding paragraphs.

217.    Mr. Gao and Mr. Struck entered into an oral contract to form a partnership in or around 2015.

218.    Under their partnership agreement, Mr. Gao and Mr. Struck agreed to be 50/50 partners in their business endeavors and 50/50 owners of the partnership and Partnership Entities, including splitting all business revenues, costs, and expenses, an equal right to management of the partnership and SCM Entities, and an agreement to hold both of themselves out as co-equal partners to the investment community.

219.    Mr. Gao and Mr. Struck re-confirmed their agreement to an equal 50/50 partnership when creating each new entity, including each of the SCM Entities.

220.    Mr. Gao has fulfilled all his obligations under the partnership, including spending years working to build up the partnership; leaving gainful employment to focus full time on the partnership; leaving a prestigious university to focus full time on the partnership; allowing his name and experience to be used in marketing the partnership's endeavors; introducing and recruiting investors and advisers to the partnership; and shouldering half the costs, expenses, and tax liabilities for the Partnership Entities.

221.    Mr. Struck substantially interfered with Mr. Gao's equity rights to the Partnership Entities by knowingly and intentionally preventing Mr. Gao from accessing, possessing or controlling the Partnership Entities and taking possession and withholding payments owed to Mr. Gao amounting to 50% of the Partnership Entities' management fees and other profits.

222.   Mr. Struck acted intentionally and without Mr. Gao's consent.  Mr. Gao's demands to regain access and to be paid his fair portion of the SCM Entities fees and profits have all been ignored.

223.   As a result of Mr. Struck's actions, Mr. Gao has sustained damages in an amount to be determined at trial, but which are estimated to be in the tens of millions of dollars, plus costs and interest.

224.   In committing these wrongful acts, Mr. Struck acted intentionally, with malice and in conscious disregard of Mr. Gao's rights and resulting damages.  As a result, Mr. Gao is entitled to an award of punitive and exemplary damages.

225.   Additionally, Mr. Gao seeks judicial confirmation of his partnership rights by way of an order confirming his 50% ownership interests in each of the SCM Entities and a further order granting him access to the Partnership Entities' accounts and properties.

<div align="center">

**TENTH CAUSE OF ACTION**

**Theft by False Pretenses (Penal Code § 496)**

**(By Mr. Gao Against Counter-Respondent Adam B. Struck)**

</div>

226.   Counterclaimant incorporates and alleges by reference each and every allegation contained in the preceding paragraphs.

227.   Mr. Gao and Mr. Struck entered into an oral contract to form a partnership in or around 2015.

228.   Under their partnership agreement, Mr. Gao and Mr. Struck agreed to be 50/50 partners in their business endeavors and 50/50 owners of the partnership and Partnership Entities, including splitting all business revenues, costs, and expenses, an equal right to management of the partnership and SCM Entities, and an agreement to hold both of themselves out as co-equal partners to the investment community.

229.   Mr. Gao and Mr. Struck re-confirmed their agreement to an equal 50/50 partnership when creating each new entity, including each of the SCM

1   Entities.

2        230.   Specifically, each and every time Mr. Gao and Mr. Struck formed a

3   new business—starting in 2015 with the SPV Entities, continuing into early 2016

4   with the SCM Entities for Fund I, continuing into early 2017 with the SCSS Entities

5   and SCSA GP, continuing into late 2017 with the DDC Entities, and ending in 2019

6   with the SCM Entities for Fund II—Mr. Struck told Mr. Gao that the terms of their

7   partnership remained intact: they were 50/50 partners in their business endeavors

8   and 50/50 owners of the partnership, including splitting all business profits and

9   expenses.

10       231.   Taking on the legal aspects of the partnership, Mr. Struck assured Mr.

11  Gao that he would handle all legal formalities necessary to memorialize their 50/50

12  partnership and that each of them would be equally protected in case of any dispute.

13  Mr. Struck never advised Mr. Gao to seek independent counsel to represent his

14  interests, but instead assured Mr. Gao that Mr. Struck could be trusted to represent

15  both of their interests.

16       232.   Mr. Struck also insisted that he maintain primary control over the

17  Partnership Entities' bank accounts, including those of the SCM Entities.

18       233.   These representations were false.  Mr. Struck never intended on

19  honoring their 50/50 partnership and rather than drawing up the necessary legal

20  documents to memorialize their partnership, Mr. Struck purposely structured each

21  of the businesses to his own advantage.  He did this by avoiding drafting

22  partnership agreements that would, in writing, memorialize his and Mr. Gao's

23  verbal agreements.  To the extent corporate documents were filed, Mr. Struck

24  would consistently name himself as the only owner without even mentioning Mr.

25  Gao's involvement.  For the only document to actually acknowledge Mr. Gao, the

26  DDC Operating Agreements, Mr. Struck still took advantage of his position as the

27  attorney and sole drafter by granting himself all of the equity of their departing third

28  partner.

234.   At the same time, Mr. Struck continued to claim to Mr. Gao that they were 50/50 partners; held Mr. Gao out as an equal partner to employees, investors, advisers, and the general public; required Mr. Gao to pay 50% of the Partnership Entities' costs, expenses, and tax liabilities; issued Mr. Gao distributions amounting to 50% of the Partnership Entities' profits; and issued Mr. Gao K-1 tax documents indicating that Mr. Gao was a 50% partner.

235.   Relying on these deceptions, Mr. Gao has spent years working to build up the partnership; left gainful employment to focus on the partnership; left a prestigious university to focus on the partnership; allowed his name and experience to be used in marketing the partnership's endeavors; introduced and recruited investors and advisers to the partnership; and shouldered 50% the costs, expenses, and tax liabilities for the Partnership Entities, including the SCM Entities.

236.   Mr. Struck made these representations specifically so that he could benefit from Mr. Gao's efforts, contacts, reputation and money, while simultaneously withholding Mr. Gao's true equity interest and withholding the monies owed to Mr. Gao based on his 50% ownership of the SCM Entities.

237.   Using these deceptions, Mr. Struck has substantially interfered with Mr. Gao's equity rights to the SCM Entities by knowingly and intentionally preventing Mr. Gao from accessing, possessing or controlling the SCM Entities and has illegally withheld payments owed to Mr. Gao amounting to 50% of the SCM Entities' management fees and other profits.

238.   Mr. Struck acted intentionally and without Mr. Gao's consent.  Mr. Gao's demands to regain access and to be paid his fair portion of the SCM Entities fees and profits have all been ignored.

239.   As a result of Mr. Struck's actions, Mr. Gao has sustained damages in an amount to be determined at trial, but which are estimated to be in the tens of millions of dollars, plus costs and interest.

240.   In committing these wrongful acts, Mr. Struck acted intentionally and

1  criminally.  As a result, Mr. Gao is entitled to statutory treble damages, plus costs

2  and attorneys' fees.

3  <center>**ELEVENTH CAUSE OF ACTION**</center>

4  <center>**Unjust Enrichment / Restitution**</center>

5  <center>**(By Mr. Gao Against All Counter-Respondents)**</center>

6  241.   Counterclaimant incorporates and alleges by reference each and every

7  allegation contained in the preceding paragraphs.

8  242.   In the alternative to the breach of contract claims asserted above, and

9  in the event that any contract between the parties is found to be unenforceable, or in

10  the event the trier of fact finds that there were no contracts, Mr. Gao asserts a claim

11  for relief for promissory estoppel.

12  243.   The Parties entered into an oral contract to form a partnership in or

13  around 2015.

14  244.   Under their partnership agreement, Mr. Gao and Mr. Struck agreed to

15  be 50/50 partners in their business endeavors and 50/50 owners of the partnership

16  and Partnership Entities, including splitting all business revenues, costs, and

17  expenses, an equal right to management of the partnership and SCM Entities, and

18  an agreement to hold both of themselves out as co-equal partners to the investment

19  community.

20  245.   Mr. Gao and Mr. Struck re-confirmed their agreement to an equal

21  50/50 partnership when creating each new entity, including each of the SCM

22  Entities.

23  246.   Mr. Gao has fulfilled all his obligations under the partnership,

24  including spending years working to build up the partnership; leaving gainful

25  employment to focus full time on the partnership; leaving a prestigious university to

26  focus full time on the partnership; allowing his name and experience to be used in

27  marketing the partnership's endeavors; introducing and recruiting investors and

28  advisers to the partnership; and shouldering half the costs, expenses, and tax

1    liabilities for the Partnership Entities, including the SCM Entities.

2         247.   Mr. Struck and the SCM Entities have failed to perform their required

3    obligations, including but not limited to failing to provide Mr. Gao with equal

4    possession, access, and control over the SCM Entities; failing to pay Mr. Gao 50%

5    of the management fees collected by the SCM Entities; and failing to provide Mr.

6    Gao 50% of the profits earned by the SCM Entities.

7         248.   Mr. Struck has improperly withheld distributions and payments owed

8    by Mr. Gao based on the fees and revenues earned by the SCM Entities, in amounts

9    to be proven at trial in the form of unpaid management fees, and unpaid carried

10   interest, plus interest.

11        249.   At the same time, Mr. Struck has required Mr. Gao to pay 50% of the

12   SCM Entities' expenses, costs, and tax liabilities.

13        250.   Mr. Struck and the SCM Entities have unjustly profited from Mr.

14   Gao's work and financial outlays.

15        251.   Mr. Gao now seeks restitution from the Defendants and seeks an order

16   disgorging all profits, benefits, and other compensation obtained by Defendants in

17   an amount to be determined at trial, but which are estimated to be in the tens of

18   millions of dollars, plus costs and interest.

19        252.   Additionally, Mr. Gao seeks judicial confirmation of his partnership

20   rights by way of an order confirming his 50% ownership interests in each of the

21   SCM Entities and a further order granting him access to the SCM Entities' accounts

22   and properties.

23                          **TWELFTH CAUSE OF ACTION**

24                               **Promissory Estoppel**

25                  **(By Mr. Gao Against All Counter-Respondents)**

26        253.   Counterclaimant incorporates and alleges by reference each and every

27   allegation contained in the preceding paragraphs.

28        254.   In the alternative to the breach of contract claims asserted above, and

in the event that any contract between the parties is found to be unenforceable, or in the event the trier of fact finds that there were no contracts, Mr. Gao asserts a claim for relief for promissory estoppel.

255.   The Parties entered into an oral contract to form a partnership in or around 2015.

256.   Under their partnership agreement, Mr. Gao and Mr. Struck agreed to be 50/50 partners in their business endeavors and 50/50 owners of the partnership and Partnership Entities, including splitting all business revenues, costs, and expenses, an equal right to management of the partnership and SCM Entities, and an agreement to hold both of themselves out as co-equal partners to the investment community.

257.   Mr. Gao and Mr. Struck re-confirmed their agreement to an equal 50/50 partnership when creating each new entity, including each of the SCM Entities.

258.   Specifically, each and every time Mr. Gao and Mr. Struck formed a new business—starting in 2015 with the SPV Entities, continuing into early 2016 with the SCM Entities for Fund I, continuing into early 2017 with the SCSS Entities and SCSA GP, continuing into late 2017 with the DDC Entities, and ending in 2019 with the SCM Entities for Fund II—Mr. Struck told Mr. Gao that the terms of their partnership remained intact: they were 50/50 partners in their business endeavors and 50/50 owners of the partnership, including splitting all business profits and expenses.

259.   Taking on the legal aspects of the partnership, Mr. Struck assured Mr. Gao that he would handle all legal formalities necessary to memorialize their 50/50 partnership and that each of them would be equally protected in case of any dispute. Mr. Struck never advised Mr. Gao to seek independent counsel to represent his interests, but instead assured Mr. Gao that Mr. Struck could be trusted to represent both of their interests.

260.   These representations were false.  Mr. Struck never intended on honoring their 50/50 partnership and rather than drawing up the necessary legal documents to memorialize their partnership, Mr. Struck purposely structured each of the businesses to his own advantage.  He did this by avoiding drafting partnership agreements that would, in writing, memorialize his and Mr. Gao's verbal agreements.  To the extent corporate documents were filed, Mr. Struck would consistently name himself as the only owner without even mentioning Mr. Gao's involvement.  For the only document to actually acknowledge Mr. Gao, the DDC Operating Agreements, Mr. Struck still took advantage of his position as the attorney and sole drafter by granting himself all of the equity of their departing third partner.

261.   At the same time, Mr. Struck continued to claim to Mr. Gao that they were 50/50 partners; held Mr. Gao out as an equal partner to employees, investors, advisers, and the general public; required Mr. Gao to pay 50% of the Partnership Entities' costs, expenses, and tax liabilities; issued Mr. Gao distributions amounting to 50% of the Partnership Entities' profits; and issued Mr. Gao K-1 tax documents indicating that Mr. Gao was a 50% partner.

262.   Mr. Struck made these misrepresentations specifically to induce Mr. Gao to contribute his name, experience, connections, time, and hard work towards the partnership. These misrepresentations were also intended to induce Mr. Gao into pay for 50% of all the Partnership Entities' costs, expenses, and tax liabilities, including for the SCM Entities.

263.   Mr. Gao justifiably and reasonably relied on the statements from Mr. Struck that the two were 50/50 partners and had no reason to believe that Mr. Struck was lying to him, let alone that he was drawing up the corporate paperwork to exclude him as an owner.

264.   As a result of Mr. Struck's misrepresentations, Mr. Gao spent years working on behalf of the partnership and gave up numerous other opportunities,

1  including leaving a lucrative and prestigious job, leaving Stanford business school,

2  and moving from the Bay Area to Los Angeles all in reliance on Mr. Struck's false

3  claims of partnership.  Mr. Gao also paid 50% of the SCM Entities' expenses, costs,

4  and tax liabilities.

5       265.   As a result of his justifiable reliance on Mr. Struck's

6  misrepresentations, Mr. Gao has effectively been denied his 50% equity share in

7  each of the SCM Entities and incurred damages in an amount to be determined at

8  trial.

9       266.   Due to their wrongful acts, the Counter-Respondents have been

10  unjustly enriched at Mr. Gao's expense.

11       267.   Mr. Gao now seeks restitution from the Counter-Respondents and

12  seeks an order disgorging all profits, benefits, and other compensation obtained by

13  Counter-Respondents in an amount to be determined at trial, but which are

14  estimated to be in the tens of millions of dollars, plus costs and interest.

15  **THIRTEENTH CAUSE OF ACTION**

16  **Misappropriation of Name and Identity**

17  **(Cal. Civ. Code § 3344, *et seq.* and Common Law)**

18  **(By Mr. Gao Against All Counter-Respondents)**

19       268.   Counterclaimant incorporates and alleges by reference each and every

20  allegation contained in the preceding paragraphs.

21       269.   In the alternative Mr. Gao's other causes of action, and in the event

22  that the Court finds that no partnership exists or has ever existed, Mr. Gao is

23  entitled to relief based on Counter-Respondents continued use of his name and

24  identity.

25       270.   From 2015 through early 2021, Mr. Struck and the SCM Entities held

26  Mr. Gao out to the general community, and specifically to potential and actual

27  investors, as being a partner in "Struck Capital."

28       271.   Counter-Respondents touted Mr. Gao's accomplishments, education,

1  and work experience as belonging to Struck Capital.

2      272.   Mr. Gao did not consent to the use of his name and identity absent the

3  understanding that he was an actual 50/50 partner in Struck Capital, the SCM

4  Entities, or the Partnership Entities.

5      273.   Using Mr. Gao's good name, Mr. Struck and the SCM Entities were

6  successfully able to raise millions of dollars from investors and realize millions of

7  dollars in management fees and carried interest from those investments.

8      274.   Counter-Respondents has been unjustly enriched by using Mr. Gao's

9  name and by refusing to share the benefits of that use with Mr. Gao in an amount to

10  be determined at trial.

11      275.   Counter-Respondents' actions were willful and malicious because

12  while simultaneously holding Mr. Gao out as a partner in the Partnership Entities,

13  he was also telling Mr. Gao that Mr. Gao was his 50/50 partner.

14      276.   Based on his actions, it is clear that Mr. Struck was either lying to Mr.

15  Gao at the outset, or was telling the truth and is now improperly withholding

16  partnership proceeds due to him.

17      277.   As such, Mr. Gao is entitled to punitive damages and attorneys' fees

18  purchase to California Civil Code section 3344.

19  <center>**FOURTEENTH CAUSE OF ACTION**</center>

20  <center>**Unlawful Impersonation**</center>

21  <center>**(Cal. Penal Code § 528.5)**</center>

22  <center>**(By Mr. Gao Against Counter Respondent Adam B. Struck)**</center>

23      278.   Counterclaimant incorporates and alleges by reference each and every

24  allegation contained in the preceding paragraphs.

25      279.   Mr. Struck has knowingly and without consent impersonated Mr. Gao

26  through or on an Internet Web site or by other electronic means, including through

27  the use of Mr. Gao's email address, yida@struckcapital.com.

28

1    280.   Mr. Struck's unlawful impersonation of Mr. Gao was credible.  Mr.

2   Gao previously used the email address, yida@struckcapital.com, before Mr. Struck

3   purported to "terminate" Mr. Gao "for cause," and the recipient of Mr. Struck's

4   email sent from yida@struckcapital.com believed that the email was, in fact, sent

5   by Mr. Gao.

6    281.   Mr. Struck falsely impersonated Mr. Gao for purposes of harming,

7   intimidating, threatening, or defrauding Mr. Gao and the third party that he

8   contacted while posing as Mr. Gao.  In one instance of Mr. Struck's unlawful

9   impersonation, Mr. Struck requested and received confidential personal investment

10   information from one of Mr. Gao's contacts.

11    282.   Mr. Gao has suffered damage and loss by reason of Mr. Struck's

12   unlawful impersonation of him, and is entitled to compensatory damages, attorneys'

13   fees and costs, injunctive relief, and other equitable relief, pursuant to Cal. Penal

14   Code §§ 528.5(e) and 502(e).

15    283.   Mr. Struck's unlawful impersonation of Mr. Gao was willful and

16   conducted with oppression, fraud, and malice.  Mr. Gao is therefore also entitled to

17   punitive damages, pursuant to Cal. Penal Code §§ 528.5(e) and 502(e) and Cal.

18   Civil Code § 3294.

19                            **PRAYER FOR RELIEF**

20    Counterclaimant prays for judgment and relief against Counter-

21   Respondents as follows:

22    1.    Declaratory relief by way of a declaration and order of this Court

23   determining that a partnership agreement between Mr. Gao and Mr. Struck exists;

24    2.    Declaratory relief by way of a declaration and order of this Court

25   determining that the Mr. Gao is a member and 50% owner of the SCM Entities;

26    3.    Declaratory relief by way of a declaration and order of this Court

27   determining that Mr. Gao is entitled to half of all management fees, carried interest,

28   income or any other profits collected by the SCM Entities from their inception and

1    moving forward;

2         4.      Monetary damages in an amount to be proven at trial;

3         5.      An order disgorging all profits, benefits, or other compensation

4    obtained by Cross-Respondents from their wrongful conduct and restitution of those

5    profits to the Counterclaimant;

6         6.      An order imposing a constructive trust over the profits—including

7    management fees, carried interest, and all other income—received by the SCM

8    Entities so that they can be preserved and ultimately divided equally between Mr.

9    Gao and Mr. Struck, consistent with their intent in creating these entities;

10        7.      An order awarding Counterclaimant punitive damages;

11        8.      An order awarding Counterclaimant statutory treble damages;

12        9.      An order awarding Counterclaimant costs of suit;

13        10.     Pre- and post-judgment interest, as required by contract or law,

14   whichever is greater;

15        11.     Attorneys' fees, as authorized by contract or statute, whichever is

16   greater; and

17        12.     Such other relief as the Court may deem just and proper.

18

19   Dated: September 6, 2023              ORSUS GATE LLP
20                                         Denis Shmidt
21                                         Nabil Bisharat
                                           Jennifer Haidar
22
23                                   By: /s/ Denis Shmidt
24                                       Denis Shmidt

25                                       *Attorneys for Defendant and*
26                                       *Counter-Claimant Yida Gao and*
                                         *Defendants Sand Hill Advisors PR*
27                                       *LLC, and  Shima Capital*
                                         *Management LLC*
28

ORSUS GATE LLP
A CALIFORNIA
LITIGATION BOUTIQUE

## **DEMAND FOR JURY TRIAL**

Counterclaimant demands a trial by jury on each of its claims that are triable before a jury.


Dated:  September 6, 2023

ORSUS GATE LLP
    Denis Shmidt
    Nabil Bisharat
    Jennifer Haidar

By: /s/ Denis Shmidt
    Denis Shmidt

*Attorneys for Defendant and Counter-Claimant Yida Gao and Defendants Sand Hill Advisors PR LLC, and  Shima Capital Management LLC*